William Leiner, State Bar No. 255528
william.leiner@disabilityrightsca.org
Salma E. Enan, State Bar No. 271336
salma.enan@disabilityrightsca.org
Ali L. Nicolette, State Bar No. 314825
ali.nicolette@disabilityrights.org
Elissa Gershon, State Bar No. 169741
elissa.gershon@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
1330 Broadway, Suite 500
Oakland, CA  94612
Tel.:  (510) 267-1200
Fax:  (510) 267-1201

Rebecca Yang, State Bar No. 306400
rebecca.yang@disabilityrightsca.org
Maria del Pilar Gonzalez Morales, State Bar No. 308550
pilar.gonzalez@disabilityrightsca.org
Maria Iriarte, State Bar No. 150704
maria.iriarte@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
1111 Sixth Avenue, Suite 200
San Diego, CA  92104
Tel.:  (619) 239-7861
Fax:  (619) 239-7906

*(Counsel continued on next page)*

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ivory N., a minor, by and through her mother and *Guardian ad Litem*, Z. F.; James B., a minor, by and through his mother and *Guardian ad Litem*, A. B., <br><br> Plaintiffs, <br> v. <br><br> JENNIFER KENT, Director of the Department of Health Care Services; State of California DEPARTMENT OF HEALTH CARE SERVICES, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** <br><br> CLASS ACTION |

1   Allen L. Lanstra, State Bar No. 251510
    allen.lanstra@probonolaw.com
2   Richard A. Schwartz, State Bar No. 267469
    richard.schwartz@probonolaw.com
3   Rachael Schiffman, State Bar No. 292005
    rachael.schiffman@probonolaw.com
4   300 S. Grand Avenue, Suite 3400
    Los Angeles, CA  90071
5   Tel.:  (213) 687-5000
    Fax:  (213) 687-5600
6

7   Robert D. Newman, State Bar No. 86534
    rnewman@wclp.org
8   Mona Tawatao, State Bar No. 128779
    mtawatao@wclp.org
9   WESTERN CENTER ON LAW AND POVERTY
    3701 Wilshire Boulevard, Suite 208
10  Los Angeles, CA  90010-2826
    Tel.:  (213) 487-7211
11  Fax:  (213) 487-0242

12  Sarah Somers, State Bar No.170118
    somers@healthlaw.org
13  Martha Jane Perkins, State Bar No. 104784
    perkins@healthlaw.org
14  NATIONAL HEALTH LAW PROGRAM
    200 N. Greensboro Street, Ste. D-13
15  Carrboro, NC  27510
    Tel.:  (919) 968-6308
16  Fax:  (919) 968-8855

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................... 1

II.     JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT ................... 2

III.    THE PARTIES ......................................................................................... 3

IV.     CLASS ACTION ALLEGATIONS .............................................................. 4

V.      IN-HOME SHIFT NURSING STATUTORY AND REGULATORY
        FRAMEWORK ......................................................................................... 7

        A.     The Medicaid Act and EPSDT .................................................... 7

        B.     Anti-Discrimination Laws ........................................................ 10

VI.     FACTUAL ALLEGATIONS ...................................................................... 12

        A.     DHCS' Methods of Administering In-Home Nursing for Children .......... 12

               1.     EPSDT ........................................................................ 12

               2.     Home and Community Based Alternatives (HCBA) Waiver ......... 12

        B.     DHCS' Failure to Arrange for In-Home Shift Nursing ............................ 14

        C.     Plaintiff Ivory N. ...................................................................... 16

        D.     Plaintiff James B. ..................................................................... 19

VII.    PRAYER FOR RELIEF ........................................................................... 28

*Ivory N., et al. v. Kent, et al.;* Case No.:
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

# I.    INTRODUCTION

1.    This class action lawsuit seeks declaratory and injunctive relief requiring Defendants California Department of Health Care Services and its Director, Jennifer Kent, to arrange for in-home skilled nursing care necessary to meet the undisputed needs of medically fragile Medi-Cal eligible children under the age of 21 in the most integrated setting appropriate.  Defendants have determined that in-home shift nursing services are medically necessary for the named Plaintiffs and other Medi-Cal eligible children like them, but Defendants have failed to arrange for these services as required by federal law. Defendants' systemic failures have placed Plaintiffs and members of the proposed Class at serious risk of injury, hospitalization, or institutionalization and, in some instances, have even resulted in the institutionalization of Class members.

2.    Plaintiffs Ivory N. and James B.[1] and Class members are children under the age of 21 residing in California who are beneficiaries of Medi-Cal, California's Medicaid program, a state and federally-funded health insurance program for individuals with limited income and resources.  The two named Plaintiffs are dependent on medical technologies for survival.  They cannot move, turn, feed, dress, bathe, or otherwise take care of themselves.  Plaintiffs are incontinent and each of them needs care to engage in activities of daily life.  Plaintiffs require in-home skilled nursing services, also known as in-home shift nursing or private duty nursing, to live safely in their homes and with their families in the community.

3.    Defendants are responsible for administering the Medi-Cal program, and are required by federal law to ensure that Plaintiffs and Class members receive all medically necessary care covered by the Medicaid Act and that they receive this care in the most integrated setting appropriate.

4.    The Medicaid Act expressly requires that Defendants "arrang[e] for (directly or through referral to appropriate agencies, organizations, or individuals) corrective

---

[1] Plaintiffs and their *Guardians ad Litem* seek to proceed pseudonymously as set forth in the Administrative Motion to Proceed Using Fictitious Names filed concurrently herewith.

*Ivory N., et al. v. Kent, et al.;* Case No.:
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

treatment" covered by the Early and Periodic, Screening Diagnostic and Treatment (EPSDT) provisions of the Medicaid Act, which includes in-home or "private duty" skilled nursing for Medicaid beneficiaries under the age of 21.  42 U.S.C. § 1396a(a)(43)(C); 42 U.S.C. § 1396d(r); 42 U.S.C. § 1396d(a)(8.

5.     Defendants have approved and authorized coverage for in-home skilled nursing services for Plaintiffs, but Plaintiffs have not been able to receive this medically necessary care because Defendants have systemically failed to arrange for these nursing services as mandated by federal law.

6.     The Medicaid Act also requires that medically necessary in-home shift nursing services be provided with reasonable promptness.  42 U.S.C. § 1396a(a)(8). However, due to systemic deficiencies in their policies, practices, and procedures, Defendants have failed to fulfill these legal obligations; therefore, Plaintiffs and Class members have not received medically necessary services in a timely manner.

7.     Defendants' deficient policies, practices, and procedures related to arrangement of in-home skilled nursing services violate not only these provisions of the Medicaid Act, but also provisions of the Americans with Disabilities Act, 42 U.S.C. § 12132, Section 504 of the federal Rehabilitation Act, 29 U.S.C. § 794(a), and California Government Code § 11135.  These violations have left Plaintiffs and Class members without medically necessary services, placing Plaintiffs at a serious risk of injury, hospitalization, and institutionalization.

8.     This class action lawsuit asks the Court to order Defendants to take all steps necessary to arrange for previously-approved, medically necessary in-home shift nursing services for Plaintiffs and Class members.

## II.     JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

9.     This is an action for declaratory and injunctive relief to enforce Plaintiffs' rights under the EPSDT and reasonable promptness mandate of Title XIX of the Social Security Act (Medicaid Act); the Americans with Disabilities Act (ADA), 42 U.S.C.

*Ivory N., et al. v. Kent, et al.;* Case No.:
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

§ 12132; Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794(a); and California Government Code § 11135.

10.    Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343 for a violation of 42 U.S.C. § 1983, Title II of the ADA, and Section 504.

11.    At all times relevant to this action, Defendants have acted under color of state law.

12.    This Court is authorized to award Plaintiffs' requested declaratory, and preliminary and permanent injunctive relief under 28 U.S.C. §§ 2201-2202, 42 U.S.C. § 1983, and Fed. R. Civ. P. 65.

13.    This Court also has supplemental jurisdiction over Plaintiffs' state claim pursuant to 28 U.S.C. § 1367 and California Government Code section 11139 in that this claim for violations of California law concerns the same actions and omissions that form the basis of Plaintiffs' claims under federal law.

14.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) because the Defendants operate and perform their official duties therein and thus reside therein for purposes of venue, and because a substantial part of the events and omissions giving rise to the claims herein occur in counties that are part of the Northern District of California.

15.    <u>Intradistrict Assignment</u>:  Pursuant to Local Rule 3-2(d), this action shall be assigned to the San Francisco Division or the Oakland Division because a substantial part of the events or omissions which give rise to the claims occurred in Alameda County.

## III.    THE PARTIES

16.    Plaintiff Ivory N. is seven years old and is a Medi-Cal beneficiary.  As a result of her medical conditions, Defendants have determined that Ivory N. needs 63 hours per week of Licensed Vocational Nursing (LVN) skilled nursing at home.  Ivory N. only receives about 56 hours per week of in-home shift nursing services.  She resides at home with her adoptive parents, two siblings, and two cousins in Castro Valley, California. Pursuant to Fed. R. Civ. P. 17(c), Ivory N. brings this action through her mother.

17.     Plaintiff James B. is five years old and is a Medi-Cal beneficiary.  As a result of his medical conditions, Defendants have determined that James B. needs 135 hours per week of LVN skilled nursing at home.  James B. only receives about 50-60 hours per week of in-home nursing services.  He resides at home with his parents, older brother, and younger sister in San Diego, California.  Pursuant to Fed. R. Civ. P. 17(c), James B. brings this action through his mother.

18.     Each individual Plaintiff is a "qualified person with a disability" within the meaning of all applicable statutes, including 42 U.S.C. § 12131(2) and 29 U.S.C. § 705(20)(B).

19.     Defendant California Department of Health Care Services (DHCS) is the single state agency responsible for administering California's Medicaid program, called "Medi-Cal."

20.     Defendant Jennifer Kent is DHCS' current Director and is sued only in her official capacity.  Director Kent is responsible for directing, organizing, and administering DHCS' medical programs and contractual arrangements.  Her responsibilities in this role include the responsibility to ensure DHCS' compliance with federal and state laws.

## IV.     CLASS ACTION ALLEGATIONS

21.     Plaintiffs bring this action as a statewide class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2) on behalf of:

> All Medi-Cal beneficiaries under the age of 21 in California who have been approved for in-home shift nursing or private duty nursing services by the Defendants, but are not receiving the nursing services at the level approved by the Defendants.

22.     The Class is so numerous that joinder of all persons is impracticable.  Upon information and belief, there are approximately 4,000 children eligible to receive in-home shift nursing services through the Medi-Cal program, and hundreds, if not thousands, of them are unable to receive all the in-home shift nursing services they are authorized by Defendants to receive.

4

*Ivory N., et al. v. Kent, et al.;* Case No.:
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

23.     Plaintiffs and Class members have severe disabilities and limited financial resources.  They are unlikely to institute individual actions.

24.     The claims of Plaintiffs and Class members raise common questions of law and fact.  The factual questions common to the entire Class include whether Defendants' system-wide policies, practices, and procedures have resulted in Medi-Cal beneficiaries under the age of 21 being unable to obtain the levels of Medicaid-covered, medically necessary in-home shift nursing services they have been approved to receive.  The legal questions common to Plaintiffs and all Class members include:

(a)     Whether Defendants have failed to "arrange for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment [in-home shift nursing services]" to Plaintiffs and Class members as mandated by the EPSDT provisions of the Medicaid Act pursuant to 42 U.S.C. § 1396a(a)(43)(C) and 42 U.S.C. § 1396d(r)(5);

(b)     Whether Defendants have failed to furnish medical assistance with reasonable promptness to Plaintiffs and Class members pursuant to 42 U.S.C. § 1396a(a)(8);

(c)     Whether Defendants have violated the ADA, Rehabilitation Act, and Section 11135 by failing to arrange for Medicaid-covered, medically necessary in-home shift nursing services thereby placing them at risk of unnecessary institutionalization;

(d)     Whether Defendants have violated the ADA, Rehabilitation Act and/or Section 11135 by failing to ensure that in-home shift nursing services are administered to Plaintiffs and Class members in the most integrated setting appropriate to their needs;

(e)     Whether Defendants have violated the ADA, Rehabilitation Act and/or Section 11135 by failing to make reasonable modifications to their programs and policies, which would result in the availability of in-home shift nursing services; and

(f)     Whether Defendants have violated the ADA, Rehabilitation Act and/or Section 11135 by utilizing criteria or methods of administration that have the effect of subjecting Plaintiffs and Class Members to discrimination on the basis of disability, or

*Ivory N., et al. v. Kent, et al.;* Case No.:
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1  defeating or substantially impairing accomplishment of the objectives of Defendants'
2  program.

3      25.    Plaintiffs' claims are typical of the Class members' claims.  None of the
4  Plaintiffs and Class members are receiving in-home shift nursing services at the level that
5  Defendants found to be medically necessary to correct or ameliorate their conditions.

6      26.    Plaintiffs are adequate representatives of the Class because they suffer from
7  the same deprivations as the other Class members and have been denied the same federal
8  rights that they seek to enforce on behalf of the other Class members.

9      27.    Plaintiffs will fairly and adequately represent the interests of the absent Class
10 members.

11     28.    Plaintiffs' interest in obtaining injunctive relief for the violations of their
12 rights and privileges are consistent with and not antagonistic to those of any person within
13 the Class.

14     29.    Plaintiffs' counsel are qualified, experienced, and able to conduct the
15 proposed litigation.

16     30.    Prosecution of separate actions by individual Class members would create a
17 risk of inconsistent or varying adjudication with respect to individual Class members,
18 which would establish incompatible standards of conduct for the party opposing the Class
19 or could be dispositive of the interests of the other members or substantially impair or
20 impede the ability to protect their interests.

21     31.    A class action is superior to other available methods for the fair and efficient
22 adjudication of the controversy in that:

23     (a)    A multiplicity of suits with consequent burden on the courts and Defendants
24 should be avoided; and

25     (b)    It would be virtually impossible for all Class members to intervene as
26 parties-plaintiffs in this action.

27

28

*Ivory N., et al. v. Kent, et al.;* Case No.:
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

32.     Defendants have acted or refused to act, and continue to act or refuse to act, on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief with respect to the Class as a whole.

## V.   IN-HOME SHIFT NURSING STATUTORY AND REGULATORY FRAMEWORK

### A.   The Medicaid Act and EPSDT

33.     The Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396w-5, establishes a medical assistance program cooperatively funded by federal and state governments.  The purpose of the Medicaid program is to enable states to furnish, as far as practicable, "(1) medical assistance on behalf of . . . aged, blind or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services," and "to help such families and individuals to attain or retain capability for independence or self-care . . . ." 42 U.S.C. § 1396-1.

34.     Participation by states in this program is voluntary; however, once a state elects to participate, it must comply with all requirements of the federal Medicaid Act and its implementing regulations.

35.     California has elected to participate in and receive federal funding through the Medicaid program.  Its Medicaid program, Medi-Cal, is codified at California Welfare & Institutions Code §§ 14000 *et seq.* with implementing regulations found in 22 California Code of Regulations §§ 51000 *et seq.*

36.     States participating in the Medicaid program must designate a single state agency to administer or supervise the administration of the Medicaid program and ensure the program complies with all relevant laws and regulations. *See* 42 U.S.C. § 1396a(a)(5); *see also* 42 C.F.R. § 431.10 (2013).

37.     Defendant DHCS is the single state agency that administers Medi-Cal.  *See* Cal. Welf. & Inst. Code § 14100.1.  As its Director, Defendant Kent "shall have those powers and duties necessary to conform to requirements for securing approval of a state [Medicaid] plan under the provisions of the applicable federal law."  Cal. Welf. & Inst.

7

Code § 14100.1; *see also* Cal. Welf. & Inst. Code § 14154(d) (the "department is responsible for the Medi-Cal program in accordance with state and federal law"). These duties are non-delegable.  *See, e.g.*, 42 U.S.C. § 1396a(a)(5); 42 C.F.R. § 431.10 (2013).

38.     Medi-Cal does not itself provide health care services to beneficiaries, nor does Medi-Cal provide those beneficiaries with money to purchase health care services directly.  Rather, Medi-Cal is a vendor payment program, wherein DHCS, or managed health care organizations with whom DHCS contracts, reimburse participating providers— including in-home shift nursing providers—for the services they provide to Medi-Cal recipients.

39.     Each state's Medicaid program must make medical assistance available "with reasonable promptness to all eligible individuals."  42 U.S.C. § 1396a(a)(8).  "The term 'medical assistance' means payment of part or all of the cost of the . . . care and services or the care and services themselves, or both."  42 U.S.C. § 1396d(a).

40.     States must assure that Medicaid services will be provided consistent with the best interests of recipients.  *See* 42 U.S.C. § 1396a(a)(19).

41.     Federal law requires states participating in Medicaid to cover certain mandatory services.  One mandatory service is EPSDT for children under age 21.  *See* 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(43), 1396d(a)(4)(B), 1396d(r).

42.     EPSDT requires that any of the services that are covered under 42 U.S.C. § 1396d(a) must be provided if they are "necessary health care, diagnostic services, treatment and other measures . . . to correct or ameliorate defects and physical and mental illnesses and conditions . . . regardless of whether or not such services are covered" for adults. 42 U.S.C. § 1396d(r)(5).  Services must be covered if they correct, compensate for, improve a condition, or prevent a condition from worsening, even if the condition cannot be prevented or cured.  U.S. Dep't of Health & Human Servs., Ctrs. for Medicare & Medicaid Servs. (CMS), *EPSDT: A Guide for States: Coverage in the Medicaid Benefit for Children and Adolescents* at 10 (June 2014), https://www.medicaid.gov/medicaid/benefits/downloads/epsdt_coverage_guide.pdf.

8

43.     Private duty nursing is a service category listed under Section 1396d(a); accordingly, the EPSDT benefit includes in-home shift nursing necessary to ameliorate, correct, or maintain a child's condition.  *See* 42 U.S.C. § 1396d(a)(8).

44.     Private duty nursing is defined as "nursing services for recipients who require more individual and continuous care than is available from a visiting nurse or routinely provided by the nursing staff of the hospital or skilled nursing facility . . . ."  42 C.F.R. § 440.80 (2012).

45.     Private duty nursing must be provided by a registered nurse (RN) or a licensed practical nurse (LPN).  *See* 42 C.F.R. § 440.80 (2012).  LPNs are also referred to as LVNs.  RNs and LVNs are licensed to provide skilled nursing care in many settings including hospitals.  *See* 42 C.F.R. § 409.31(a) (2005); *see also* 22 C.C.R. §§ 70055(a)(16) & 70217(a).

46.     Case management services, including Targeted Case Management, covered under the Medicaid Act must be comprehensive and ensure the coordination of medically necessary health care services.  42 U.S.C. §§ 1396d(a)(19), 1396n(c)(2)(A); 42 C.F.R. § 440.169(d)(1)-(4) (2009).  Federal Medicaid regulations define case management, *inter alia*, as the development of a specific plan of care, referral to services, scheduling appointments, and monitoring and follow-up.  42 C.F.R. § 440.169(d)(1)-(4) (2009).  Monitoring and follow-up activities are meant to ensure that the plan of care is implemented and services are being furnished in accordance with the care plan.  42 C.F.R. § 440.169(d)(4) (2009).

47.     The EPSDT mandate requires Defendants to "provide for . . . arranging for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment the need for which is disclosed by such child health screening services."  42 U.S.C. § 1396a(a)(43)(C).

48.     Defendants "must set standards for the timely provision of EPSDT services which meet reasonable standards of medical and dental practice. . . and must employ

9

1    processes to ensure timely initiation of treatment, if required, generally within an outer

2    limit of six months after the request for screening services."  42 C.F.R. § 441.56(e) (2012).

3        49.    DHCS is obligated to "design and employ methods to assure that children

4    receive . . . treatment for all conditions identified as a result of examination or diagnosis."

5    CMS, *State Medicaid Manual* § 5310.

6        50.    Defendants must "make available a variety of individual and group providers

7    qualified and willing to provide EPSDT services."  42 C.F.R. § 441.61(b) (2012).

8        **B.    Anti-Discrimination Laws**

9        51.    Qualified individuals with disabilities are protected from disability

10   discrimination, including segregation in institutions, by the Americans with Disabilities

11   Act (ADA) and Section 504 of the Rehabilitation Act (Section 504).

12       52.    In enacting the ADA, Congress found that, "[i]ndividuals with disabilities

13   continually encounter various forms of discrimination, including . . . segregation . . . ."  42

14   U.S.C. § 12101(a)(5).  Title II of the ADA provides that "no qualified individual with a

15   disability shall, by reason of disability, be excluded from participation in or be denied the

16   benefits of services, programs, or activities of a public entity or be subjected to

17   discrimination by such entity."  42 U.S.C. § 12132. Section 504 imposes the same

18   prohibition on programs or activities that receive federal funds. *See* Section 504, 29 U.S.C.

19   §§ 794-794a.

20       53.    Regulations implementing Title II of the ADA provide:  "[a] public entity

21   shall administer services, programs, and activities in the most integrated setting

22   appropriate to the needs of qualified individuals with disabilities."  *See* 28 C.F.R.

23   § 35.130(d) (2016); *see also* Section 504, 29 U.S.C. §§ 794-794a; 28 C.F.R. § 41.51(d)

24   (1981).  Further, "[t]he most integrated setting appropriate to the needs of a qualified

25   individual with a disability means a setting that enables individuals with disabilities to

26   interact with non-disabled persons to the fullest extent possible."  28 C.F.R. part 35, App.

27   A (2010).

28

*Ivory N., et al. v. Kent, et al.;* Case No.:
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

54.    The United States Supreme Court in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581; 119 S.Ct 2176 (1999) held that the unnecessary institutionalization of individuals with disabilities is a form of discrimination under Title II of the ADA.  In doing so, the Court interpreted the ADA's "integration mandate" as requiring persons with disabilities to be served in the community when:  (1) the state determines that community-based treatment is appropriate; (2) the individual does not oppose community placement; and (3) community placement can be reasonably accommodated.  *Olmstead*, 527 U.S. at 607.

55.    Regulations implementing Title II of the ADA and Section 504 also provide: "[a] public entity may not, directly or through contractual or other arrangements, utilize criteria or other methods of administration:  (i) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; [or] (ii) That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the entity's program with respect to individuals with disabilities . . . ."  *See* 28 C.F.R. § 35.130(b)(3) (2016); *see also* 28 C.F.R. § 41.51(b)(3)(I) (1978); 45 C.F.R. § 84.4(b)(4) (2005).

56.    ADA regulations further provide:  "[a] public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered."  *See* 28 C.F.R. § 35.130(b)(8) (2016); *see also* 45 C.F.R. § 84.4(b)(1)(iv) (2005).

57.    As set forth in federal regulations:  "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." *See* 28 C.F.R. § 35.130(b)(7) (2005).

*Ivory N., et al. v. Kent, et al.;* Case No.:
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

58.     Similar to the ADA, California's anti-discrimination statute prohibits discriminatory actions by the state and state-funded agencies or departments, and provides civil enforcement rights for violations. *See* Cal. Gov't. Code §§ 11135-11139.

## VI.   FACTUAL ALLEGATIONS

### A.   DHCS' Methods of Administering In-Home Nursing for Children

#### 1.   EPSDT

59.     Oversight and responsibility for administering the EPSDT benefit in California, including in-home shift nursing, rests with Defendants.

60.     The Medi-Cal program provides health care to beneficiaries either on a Fee-for-Service (FFS) basis or through a Medi-Cal Managed Care Plan (MCP).

61.     With FFS, the beneficiary seeks care from any provider who is participating in the Medi-Cal program, willing to treat the particular beneficiary, and willing to accept reimbursement at a set amount from DHCS for the medical services provided.  *See, e.g.*, Cal. Welf. & Inst. Code § 14016.5.  With a MCP model, DHCS contracts with health plans to provide health care to Medi-Cal beneficiaries within a managed care system.  *See* Cal. Welf. & Inst. Code §§ 14087.3, 14089.

62.     California Children's Services (CCS) is a state program administered by DHCS for Medi-Cal eligible children who have certain diseases or health problems. CCS is responsible for, *inter alia*, authorizing in-home shift nursing and providing case management for Medi-Cal eligible children enrolled in that program. Medi-Cal eligible children who do not qualify for CCS receive authorization for in-home shift nursing directly through DHCS if they are receiving Medi-Cal on a FFS basis or through their MCP if they are enrolled in one.

#### 2.   Home and Community Based Alternatives (HCBA) Waiver

63.     California also includes Home and Community-Based Services (HCBS) "waivers" as part of its Medi-Cal program.  These programs provide an expanded array of Medi-Cal home and community-based services to individuals who would otherwise be eligible for placement in an institution, including nursing homes and hospitals.  *See* 42

U.S.C. § 1396n(c)(1).  Thus, waiver enrollees have very high medical needs and serious disabilities.

64.     These programs are called waivers because they allow California to waive certain Medicaid requirements that would otherwise apply to Medi-Cal services, which allows the state to have different eligibility requirements and provide a different scope of services to different categories of beneficiaries.

65.     In California, one HCBS waiver program is called the Home and Community Based Alternatives (HCBA) Waiver (formerly known as the Nursing Facility/Acute Hospital Waiver).  The HCBA Waiver provides case management services and authorization of in-home nursing and attendant care to persons at risk for nursing home or other institutional placement. The HCBA Waiver also provides for "institutional deeming" Medi-Cal eligibility, which enables children, whose families' income is too high to otherwise qualify for Medi-Cal, to receive benefits under EPSDT.  The In-Home Operations (IHO) Branch of Defendant DHCS administers the HCBA Waiver.

66.     Under the HCBA Waiver, DHCS is responsible for providing case management, ensuring that medically necessary services are provided in accordance with approved plans of treatment, and monitoring delivery of Waiver services, including in-home nursing.

67.     Regardless of the service delivery model, Defendants authorize Medi-Cal in-home shift nursing services only after a finding, with the support of treating physicians, that the services are medically necessary. The treating physician signs a plan of treatment which supports the medical necessity of the services.

68.     Once approved, in-home shift nursing services may be provided by a home health agency or by an INP.

69.     A home health agency is a private organization licensed by the state which recruits, hires and trains health professionals to provide services such as private duty nursing; arranges scheduling of nurses; and ensures that staff are in compliance with licensing and certification requirements.  Home health agencies also develop plans of

*Ivory N., et al. v. Kent, et al.;* Case No.:
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

treatment for review and approval by patients' physicians and provide services in accordance with approved plans of treatment.

70.     An INP is an independent contractor or self-employed LVN or RN who provides private duty nursing services in the home to Medi-Cal beneficiaries. Beneficiaries or their families recruit INPs, who then must become approved by DHCS to provide services—a process which can take several months.  INP case managers are responsible for developing plans of treatment for review and approval by physicians.

**B.     DHCS' Failure to Arrange for In-Home Shift Nursing**

71.     Although Defendants have approved all Plaintiffs and Class members for in-home shift nursing services, Defendants have failed to meet their obligation to arrange for these services with reasonable promptness by failing to establish and implement meaningful and effective policies, practices, and procedures to administer this benefit.

72.     Defendants fail at a systematic level to provide effective case management and otherwise arrange for medically necessary in-home nursing services, thereby placing the burden on families to find medically necessary in-home nursing services and navigate a complex system with little to no support in obtaining necessary services for their children.

73.     Rather than assisting families with securing needed nurses, when DHCS has been informed that a child is not receiving authorized in-home shift nursing hours, it has instead: provided outdated and geographically irrelevant referral lists of home health agencies, independent nurse providers, and pediatric day health care centers, some of whom do not accept Medi-Cal; encouraged families to search online for nurses; and referred families to other programs that do not offer nursing services.

74.     In some instances, case managers are reassigned without notice to families, are not responsive to requests for assistance, and/or do not assist with recruitment or retention of nurses.

75.     Defendants have actual or constructive knowledge of the number of weekly hours of in-home shift nursing services they have found to be medically necessary for each Plaintiff and putative Class Member.

14

76.     Defendants have knowledge of the monthly billing for each Plaintiff's and Class Members in-home shift nursing services.  Therefore, Defendants are or should be aware of their failure to arrange medically necessary in-home shift nursing services when Defendants are not billed for the full amount of in-home shift nursing services.

77.     In December of 2016, DHCS prepared a written study to evaluate access to Medi-Cal private duty nursing services.  This study was based on data from calendar year 2015.  The study identified a 29 percent state-wide gap between the number of hours of services authorized and actually provided across nearly 4,000 eligible beneficiaries under age 21.  Department of Health Care Services, *Access Study to Private Duty Nursing* (Dec. 15, 2016).

78.     Upon information and belief, DHCS has instructed home health agencies, or otherwise led them to understand that, when seeking to recertify a treatment authorization for in-home nursing, the home health agency can only request nursing hours the agency is able to provide, rather than the number of hours the primary care provider determined to be medically necessary.  As a result, the statewide gap between authorized and rendered services is likely significantly larger than 29 percent.

79.     Upon information and belief, DHCS does not monitor, on a systemic basis, when home health agencies are unable to fulfill authorized nursing hours to Medi-Cal-enrolled children, place such children on a waitlist, or reject them altogether as patients based on their inability to staff the in-home nursing shifts.

80.     Defendants fail at a systemic level to identify and authorize children who are in need of in-home nursing services but are not receiving those services.

81.     Defendants fail at a systemic level to effectively track and monitor children who are institutionalized, placed on waiting lists by home health agencies, or who have a shortfall between authorized and staffed nursing hours.

82.     Upon information and belief, Defendants fail to take any action reasonably calculated to arrange for in-home shift nursing services beyond providing referral lists to families.

83.     Defendants have claimed that they arrange for nursing by allowing two nursing agencies to staff individual cases, using certified nursing assistants rather than licensed nurses when the caregiver is in the home, offering individual nurse provider RNs, recruiting and certifying out-of-state providers to help children living in border areas, and working with community college and nursing agencies to encourage nurses to work with children who require in-home shift nursing.

84.     The methods Defendants claim to employ fall short of Defendants' obligations to arrange for in-home shift nursing services and, to the extent they are actually implemented, these practices are unsuccessful.

85.     None of the above methods Defendants claim to employ have been offered or provided to Plaintiffs, except providing them with ineffective lists of individual nurse providers.

**C.     Plaintiff Ivory N.**

86.     Plaintiff Ivory N. is a seven-year-old girl diagnosed with spastic quadriplegic cerebral palsy, epilepsy, cortical visual impairment, dysphagia (problems with feeding, swallowing, and drooling), hypoxic ischemic encephalopathy (brain damage due to oxygen deprivation) and is incontinent. Ivory N. has resided with her adoptive family since she was an infant, first as a foster child. The state was unable to locate a home for Ivory N. and considered placing her in a facility, but Ivory N.'s parents accepted her into their family and later adopted her.

87.     Ivory N.'s father is a firefighter and Ivory N.'s mother is the primary caregiver for Ivory N. along with her four other children. Two of her other children are the biological children of her niece. Ivory N.'s mother accepted responsibility for them approximately three years ago because the children had been placed in the foster care system and placed in different homes. The foster children also have disabilities and require therapy and special education services.  Ivory N.'s mother is also diagnosed with Lupus, an autoimmune disease that causes chronic fatigue and pain in the nerves and joints.

///

*Ivory N., et al. v. Kent, et al.;* Case No.:
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

88.     Ivory N. is non-verbal and uses a wheelchair for mobility and transfers.  She requires total assistance for all activities of daily living.  She receives nutrition, hydration, and medication through her gastronomy tube (G-tube).

89.     As set forth in her Plan of Treatment provided by her physician, Ivory N. has frequent, ongoing, and unpredictable skilled care needs that must be addressed by a licensed nurse.

90.     Defendants have approved Ivory N. for 63 hours per week of Medi-Cal LVN in-home shift nursing based on medical necessity.  Ivory N.'s physician has ordered one-on-one skilled nursing services because her care requires the exercise of judgment informed by experience and expertise in addressing the care needs of persons with severe disabilities and chronic illnesses.

91.     With 63 hours per week of in-home shift nursing, Ivory N. would be able to live safely at home with her family and move about freely in the community.

92.     There are qualified in-home shift nursing care providers in Ivory N.'s geographic area.

93.     Currently, Ivory N. receives approximately 56 hours per week of nursing services staffed; however, on average, nurses miss shifts six times per month due to illness, vacation, or because they are assigned to multiple cases at one time. As a result, the amount of nursing Ivory N. receives is unpredictable, and is often the less than 56 hours per week.

94.     Ivory N. is a recipient of HCBA Waiver services through Defendant DHCS. By definition, she is at serious risk of institutionalization if she does not receive the Medi-Cal services she needs.

95.     Ivory N.'s mother has posted advertisements online and regularly contacted their home health agency and Ivory N.'s DHCS case manager. Ivory N.'s mother called home health agencies and INPs on referral lists provided by DHCS; however, the referral lists did not help Ivory N.'s mother secure more nursing for her daughter. The lists contained nurses who were not in her geographic area, some located hundreds of miles

17

away; phone numbers on the list were disconnected or were a wrong number; and some agencies placed her on a waiting list. Despite her efforts, she has been unable to find nursing to staff all of Ivory N.'s authorized hours.  Some of the reasons she could not find nurses include: available nurses were unable to assist a child with Ivory N.'s personal care and/or nursing needs, or available nurses did not accept Medi-Cal.

96.    When Ivory N. does not have nursing services, her mother assumes the duties of providing her care all day and all night.

97.    Because of the family circumstances, which include Ivory N.'s father's long work hours, her mother's health issues, and the special needs of the other children, the shortfall in hours and nurses missing shifts on a regular basis puts Ivory N.'s health and safety at risk and creates a great deal of stress on Ivory N.'s family. The shortage in reliable nursing hours has impeded the family's ability to take a vacation or enjoy their time together.

98.    On or about November 17, 2017, Ivory N.'s mother sent Defendant Kent a letter notifying her of Ivory N.'s shortage of in-home shift nursing hours and requesting Defendant Kent's immediate assistance in arranging for all authorized nursing hours for Ivory N.

99.    In late December 2017, Ivory N.'s mother received a call from a representative of Defendant DHCS named Georgina "Mimie" Silver inquiring about Ivory N.'s lack of nursing.  No other assistance to find nurses was offered or provided at that time.

100.    Since December 2017, Ivory N.'s mother has received several calls from Ms. Silver.  During those conversations, Ms. Silver inquired about Ivory N.'s lack of nursing and the family's efforts to find nursing.  Other than providing a referral list for independent nurse providers, some of whom were located hundreds of miles away, no other assistance to find nurses was offered or provided.

101.    Although Defendants claim to make efforts to find nursing beyond providing referral lists to families, none of those efforts were offered or provided to Ivory N.'s

18

mother.  As a result, despite sending a letter to Defendant Kent in November 2017 and several calls with Defendants' representative since, Ivory N. continues to experience a shortfall in staffed nursing hours.

102.   Ivory N.'s family has received little to no case management from Defendants.

103.   Defendants have failed to provide meaningful access to services, oversee the implementation of services, or assist with locating, coordinating, and monitoring services for Ivory N.

104.   Ivory N.'s parents strongly desire that she continue to live at home with appropriate nursing services.

105.   If Defendants fail to arrange for the in-home shift nursing services at the level they approved, then Ivory N. may be forced to go into an institution, or, if she remains at home and receives in-home shift nursing at a level which is less than what is medically necessary, then she faces a strong possibility of a life-threatening episode.

106.   Defendants' failure to arrange for medically necessary nursing services puts Ivory N. at serious risk of institutionalization or injury.

**D.    Plaintiff James B.**

107.   Plaintiff James B. is a five-year-old boy, weighing 26 pounds, with Hereditary Motor and Sensory Neuropathy, Neuromuscular Scoliosis, Dysphagia, constipation, milk protein intolerance, and is incontinent. James B. has a seven-year-old brother with a potential learning disability and a two-year-old sister. His mother was an Engineer Corps Officer in the Navy before James B. was born, but has been forced to stay home to care for James B. because they do not have all of the nursing support they need. James B.'s father is a project manager/engineer with the Army Corps of Engineers who commutes many miles each day and works long hours.

108.   James B. is ventilator dependent and unable to breathe on his own.  He has a tracheostomy.  He receives nutrition and medication through his G-tube.  He uses a

19

motorized pediatric wheelchair, stander, a thoracic spine brace, leg braces, ankle-foot orthotics, and wrist splints.  He requires assistance with all activities of daily living.

109.    As set forth in his Plan of Treatment provided by his physician, James B. has frequent, ongoing, and unpredictable skilled care needs that must be addressed by a licensed nurse.

110.    Defendants have approved James B. for 135 hours per week of Medi-Cal LVN in-home shift nursing based on medical necessity.  James B. is also authorized for two hours monthly of RN case management through the HCBA Waiver. James B.'s physician has ordered one-on-one skilled nursing services because James B.'s care requires the exercise of judgment informed by experience and expertise in addressing the care needs of persons with severe disabilities and chronic illnesses.

111.    With 135 hours a week of in-home shift nursing, James B. would be able to live safely at home with his family and move about freely in the community.

112.    There are qualified in-home shift nursing care providers in James B.'s geographic area.

113.    From October 2014 to the present, James B. has never had all of his authorized nursing hours fully staffed.  The amount of nursing services that James B. receives changes from week to week or sometimes month to month.  Currently, James B. receives only 50-60 hours per week of staffed in-home nursing.

114.    James B. is a recipient of HCBA Waiver services through Defendant DHCS. By definition, he is at serious risk of institutionalization if he does not receive the Medi-Cal services he needs.

115.    The family has informed Defendant DHCS several times that James B.'s authorized nursing hours have not been fully staffed.  In response, Defendant DHCS sent James B.'s family two identical lists of home health agencies and independent nurse providers in early 2016 and again in March 2017.  James B.'s father called all of the nursing agencies and nurses on that list and spoke to approximately 30 agencies and

nurses. None would accept James B. as a patient. Despite their efforts, they have been unable to find nursing to staff all of James B.'s authorized hours.

116.   James B.'s mother has advertised online for nurses and have hve also called their home health agency on a regular basis since 2013. Despite these efforts, she has been unable to find nursing to staff all of James B.'s authorized hours

117.   When James B. does not have nursing services, his parents must provide all of his medically necessary care.  His parents take turns caring for James B. at night, and at least one parent must remain in the room with him.  The parent who cares for James B. at night wakes up approximately every three hours to empty the water build-up in his ventilator, or ventilate his G-tube so that gas does not build up, which could cause him to vomit in his tracheostomy and suffocate.

118.   As a consequence of the shortfall in nursing hours, James B.'s parents have been forced to sleep in separate rooms so that one parent remains with him at night to provide lifesaving care.  His mother takes medication for depression and anxiety due to the stress of caring for a child with high medical needs, and his parents' relationship with their other children has suffered.

119.   On or about October 26, 2017, James B.'s family sent Defendant Kent a letter notifying her of James B.'s shortage of in-home shift nursing hours and requesting Defendant Kent's immediate assistance in arranging for all authorized nursing hours for James B.

120.   In late December 2017, DHCS representative Mimie Silver contacted James B.'s father.  James B.'s father informed Ms. Silver that James B.'s hours were not fully staffed.  Although Ms. Silver inquired about the families' efforts to find nursing, no other assistance to find nurses was offered or provided at that time.

121.   James B.'s mother received one additional call from Ms. Silver in or around February 2018.  During that conversation, Ms. Silver inquired about whether there had been any changes to James B.'s nursing services.  No other assistance to find nurses was offered or provided at that time.

*Ivory N., et al. v. Kent, et al.;* Case No.:
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

122.   In or around March 2018, James B. had an annual home assessment by a nurse from Defendant DHCS who inquired about James B.'s condition and his care over the past year, but she did not assist in finding additional nurses to staff James B.'s hours.

123.   Although Defendants claim to make efforts to find nursing beyond providing referral lists to families, none of those efforts were offered or provided to James B.'s family.  As a result, despite sending a letter to Defendant Kent in October 2017 and a few encounters with Defendants' representatives since, James B. continues to experience a significant shortfall in staffed nursing hours.

124.   James B.'s family has received little to no case management from Defendants.

125.   Defendants have failed to provide meaningful access to services, oversee the implementation of services, or assist with locating, coordinating, and monitoring services for James B.

126.   James B.'s parents strongly desire that he continue living at home with appropriate nursing services.

127.   If Defendants fail to arrange for James B. to receive in-home shift nursing services at the level they approved, then James B. may be forced to be either institutionalized in a hospital or, if he remains at home and receives in-home shift nursing at a level which is substantially less than what is medically necessary, then he faces a strong possibility of a life threatening episode.

128.   Defendants' failure to arrange for medically necessary nursing services puts James B. at serious risk of institutionalization or injury.

## FIRST CLAIM FOR RELIEF

### (Against Defendant Director Jennifer Kent)

### Violation of the Federal Medicaid Early and Periodic Screening, Diagnostic and Treatment (EPSDT) Mandate

129.   Plaintiffs re-allege and incorporate herein by reference each and every allegation and paragraph set forth previously.

*Ivory N., et al. v. Kent, et al.;* Case No.:
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1       130.    In violation of the EPSDT provisions of the Medicaid Act, 42 U.S.C.

2  §§ 1396a(a)(10)(A), 1396d(a)(4)(B), and 1396a(a)(43)(C), Defendant Kent, while acting

3  under the color of law, has failed to provide Plaintiffs and Class members with in-home

4  shift nursing services necessary to correct or ameliorate their conditions.

5       131.    In violation of the EPSDT provisions of the Medicaid Act, Defendant Kent,

6  while acting under the color of law, has failed to "arrange for (directly or through referral

7  to appropriate agencies, organizations, or individuals) corrective treatment [in-home shift

8  nursing services]" to Plaintiffs and Class members pursuant to 42 U.S.C.

9  § 1396a(a)(43)(C).

10      132.    Defendant Kent's violations have been repeated and knowing, and entitle

11  Plaintiffs and Class members to relief under 42 U.S.C. § 1983.

12  <div align="center">**SECOND CLAIM FOR RELIEF**</div>

13  <div align="center">(Against Defendant Director Jennifer Kent)</div>

14  <div align="center">**Violation of the Federal Medicaid Reasonable Promptness Requirement**</div>

15      133.    Plaintiffs re-allege and incorporate herein by reference each and every

16  allegation and paragraph set forth previously.

17      134.    Defendant Kent is engaged in the repeated, ongoing failure to arrange for

18  (directly or through referral to appropriate agencies, organizations, or individuals)

19  corrective treatment, despite Defendant's acknowledgment that in-home shift nursing

20  services are medically necessary for all named Plaintiffs and Class members.

21      135.    Defendant Kent has acted under color of law in failing to provide in-home

22  shift nursing services to Plaintiffs with "reasonable promptness," in violation of 42 U.S.C.

23  § 1396a(a)(8).

24      136.    Defendant Kent's violations have been repeated and knowing, and entitle

25  Plaintiffs to relief under 42 U.S.C. § 1983.

26  ///

27  ///

28  ///

*Ivory N., et al. v. Kent, et al.;* Case No.:
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

**THIRD CLAIM FOR RELIEF**

(Against Defendant Director Jennifer Kent)

**Violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131 *et seq.***

137.    Plaintiffs re-allege and incorporate herein by reference each and every allegation and paragraph set forth previously.

138.    Title II of the ADA provides that no qualified person with a disability shall be subjected to discrimination by a public entity.  42 U.S.C. §§ 12131-32.  It requires public entities to administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.  *See* 28 C.F.R. § 35.130(d) (2016).

139.    Plaintiffs and Class members are "qualified individuals with a disability" within the meaning of the ADA in that they have physical and/or mental impairments that substantially limit one or more major life activities, including their ability to live independently without support.

140.    Plaintiffs and Class members meet the essential eligibility requirements for Medi-Cal services, including by requiring services necessary to maintain them in their homes in the community.

141.    Defendant Kent is the Director of Defendant DHCS, which is responsible for administering California's Medicaid program in accordance with state and federal law, and is therefore a government entity subject to Title II of the ADA.  42 U.S.C. §§ 12131(1)(A) and (B) (1990).

142.    Defendant Kent is obligated under the ADA to administer DHCS' programs in a manner that enables qualified individuals with disabilities to live in the most integrated setting appropriate to their needs.  Defendant's failure to arrange for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment (in-home shift nursing services) for qualified individuals with disabilities such as Plaintiffs and Class members has placed them at risk of institutionalization in violation of the ADA's integration mandate.

24

143.    Defendant Kent has discriminated against qualified individuals with disabilities such as Plaintiffs and Class members by failing to provide reasonable modifications to programs and services in order to arrange for medically necessary in-home shift nursing.

144.    Defendant Kent has utilized criteria and methods of administration that subject Plaintiffs, Class members, and other qualified individuals with disabilities to discrimination on the basis of disability, including risk of unnecessary institutionalization, in ways that include failing to take the necessary steps to arrange for medically necessary in-home shift nursing.

145.    Defendant Kent's actions are in violation of Title II of the ADA.

146.    Plaintiffs and Class members are entitled to declaratory and injunctive relief, and reasonable attorneys' fees and costs incurred in bringing this action pursuant to 42 U.S.C. § 12133.

**FOURTH CLAIM FOR RELIEF**

(Against Defendants DHCS and Director Jennifer Kent)

**Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.***

147.    Plaintiffs re-allege and incorporate herein by reference each and every allegation and paragraph set forth previously.

148.    Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits public entities and recipients of federal funds from discriminating against any individual by reason of disability. Public and federally-funded entities must provide programs and activities "in the most integrated setting appropriate to the needs of the qualified individual with a disability." *See* 28 C.F.R. § 41.51(d) (1981). Policies, practices, and procedures that have the effects of unjustifiably segregating persons with disabilities in institutions constitute prohibited discrimination under Section 504.

149.    Plaintiffs and Class members are "qualified individuals with a disability" under Section 504 of the Rehabilitation Act of 1973 in that they have physical and/or

*Ivory N., et al. v. Kent, et al.;* Case No.:
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1 mental impairments that substantially limit one or more major life activities, including
2 their ability to live independently without support.

3      150.   Plaintiffs and Class members meet the essential eligibility requirements for
4 Medi-Cal services, including services necessary to maintain them in their homes in the
5 community.

6      151.   Defendant DHCS is a recipient of federal funds under the Rehabilitation Act
7 and is therefore a government entity subject to Section 504.  29 U.S.C. § 794(b) (2014).

8      152.   Defendants' failure to arrange for (directly or through referral to appropriate
9 agencies, organizations, or individuals) corrective treatment (in-home shift nursing
10 services) to Plaintiffs and Class members places them at risk of institutionalization in
11 violation of Section 504's integration mandate.

12      153.   Defendants have utilized criteria and methods of administration that subject
13 qualified individuals with disabilities such as Plaintiffs and Class members to
14 discrimination on the basis of disability, including risk of unnecessary institutionalization,
15 by Defendants failure to arrange for (directly or through referral to appropriate agencies,
16 organizations, or individuals) corrective treatment (in-home shift nursing services) to
17 Plaintiffs and Class members.

18      154.   Defendants' actions violate Section 504.

19 <center>**FIFTH CLAIM FOR RELIEF**</center>

20 <center>(Against Defendants DHCS and Director Jennifer Kent)</center>

21 <center>**Violation of State Non-Discrimination Law, Government Code Section 11135**</center>

22      155.   Plaintiffs re-allege and incorporate herein by reference each and every
23 allegation and paragraph set forth previously.

24      156.   Pursuant to California Government Code section 11135 any program or
25 activity which receives state financial assistance or that is funded by the state of California,
26 including the state itself, is prohibited from discriminating against a person with a
27 disability.

28

<center>26</center>

157.   Defendants DHCS and Director Kent conduct, operate or administer the state Medicaid program, entitled Medi-Cal, which is directly funded, in part, by state financial assistance within the meaning of California Government Code section 11135(a) and implementing regulations.

158.   Plaintiffs and Class members are individuals with disabilities within the meaning of Government Code section 11135.

159.   Plaintiffs and Class members meet the essential eligibility requirements for Medi-Cal services, including by requiring services necessary to maintain them in their homes in the community.

160.   Defendants are obligated to administer their programs in a manner that enables qualified individuals with disabilities to live in the most integrated setting appropriate to their needs.  Defendants' failure to arrange for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment (in-home shift nursing services) for qualified individuals with disabilities such as Plaintiffs and Class members has placed them at risk of institutionalization in violation of the  integration mandate of California Government Code section 11135.

161.   By administering their programs in ways that deny qualified individuals with disabilities such as Plaintiffs and Class Members access to the medically necessary in-home nursing services they require to live safely in the community, Defendants have discriminated against them, thereby excluding them from participation in, denying them the benefits of, and otherwise subjecting them to discrimination in violation of California Government Code sections 11135 *et seq.* and implementing regulations.

162.   Defendants have discriminated against Plaintiffs and Class members by failing to provide reasonable modifications to programs and services in order to arrange for medically necessary in-home shift nursing.

163.   Defendants have used eligibility criteria and methods of administration that subject Plaintiffs and Class members to discrimination on the basis of disability, in violation of Government Code section 11135, including risk of unnecessary

*Ivory N., et al. v. Kent, et al.;* Case No.:
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

institutionalization, in ways that include failing to take steps to arrange for medically necessary in-home shift nursing.

164.    Plaintiffs further allege that violations of their rights under the Americans with Disabilities Act and implementing regulations contained in the Third Claim for Relief are incorporated herein and constitute a violation of California Government Code section 11135 *et seq.* as well, as set forth in section 11135(b).

**VII.   PRAYER FOR RELIEF**

165.    WHEREFORE, Plaintiffs pray that the Court order the following relief and remedies on behalf of themselves and all others similarly situated:

166.    Certify the proposed Class.

167.    Issue a declaratory judgment in favor of the Plaintiffs and the Class that Defendants have been failing to comply with the requirements of the Medicaid Act, the Americans with Disabilities Act, the Rehabilitation Act, and Government Code § 11135;

168.    Declare unlawful Defendants' failure to arrange directly or through referral to appropriate agencies, organizations, or individuals, corrective treatment (in-home shift nursing services) to Plaintiffs and Class members;

169.    Issue preliminary and permanent injunctive relief enjoining Defendants from subjecting Plaintiffs and Class members to practices that violate their rights under the Medicaid Act, Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and Government Code § 11135;

170.    Issue preliminary and permanent injunctive relief requiring Defendants to arrange directly or through referral to appropriate agencies, organizations, or individuals, corrective treatment (in-home shift nursing services) to Plaintiffs and Class members;

171.    Retain jurisdiction over the Defendants until such time as the Court is satisfied that Defendants' unlawful policies, practices, and acts complained of herein cannot recur;

///

///

28

*Ivory N., et al. v. Kent, et al.;* Case No.:
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

172.   Award Plaintiffs their costs and reasonable attorneys' fees pursuant to 42 U.S.C. §§ 1988, 12133 and 12205; and California Code of Civil Procedure section 1021.5, and any other applicable law or regulation; and

173.   Grant such other and further relief as the Court deems to be just and equitable.

DATED:  May 24, 2018                    Respectfully submitted,

DISABILITY RIGHTS CALIFORNIA

By:  _____/s/ William Leiner_____
            William Leiner


WESTERN CENTER ON LAW AND POVERTY


By:  _____/s/ Robert Newman_____
            Robert Newman

NATIONAL HEALTH LAW PROGRAM


By:  _____/s/ Sarah Somers_____
            Sarah Somers


By:  _____/s/ Allen L. Lanstra_____
            Allen L. Lanstra
            Richard A. Schwartz
            Rachael Schiffman


                    Attorneys for Plaintiffs

## ATTORNEY ATTESTATION

I hereby attest, pursuant to Local Rule 5-1(i)(3), that I obtained the concurrence in the filing of this document from the signatories indicated by the conformed (/s/) of Robert Newman, Sarah Somers, and Allen L. Lanstra.


_____*/s/ William Leiner*_____
            William Leiner

*Ivory N., et al. v. Kent, et al.;* Case No.:
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF