IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

I.N., a minor, by and through her mother and
*Guardian ad Litem*, Zarinah F., and
J.B., a minor, by and through his mother
and *Guardian ad Litem*, Alisa B.,

    Plaintiffs,

v.

JENNIFER KENT, Director of the Department
of Health Care Services, and State of California
DEPARTMENT OF HEALTH CARE
SERVICES,

    Defendants.

No. C 18-03099 WHA

**ORDER RE MOTION TO DISMISS**

## INTRODUCTION

In this putative class action under the Medicaid Act and other federal statutes, defendants move to dismiss the complaint. For the reasons below, the motion is **DENIED**.

## STATEMENT

Suing through their parents, plaintiffs I.N. and J.B. — who are seven and five years old, respectively — have significant physical disabilities. Plaintiffs receive benefits under Medi-Cal, California's Medicaid Act program. Defendants California Department of Health Care Services and DHCS Director Jennifer Kent, who operate Medi-Cal, authorized plaintiffs' receipt of in-home nursing services. According to the complaint, plaintiffs risk health crises and placement in an institutional setting absent in-home nursing (Amd. Compl. ¶¶ 1–2, 15–16, 104–06, 125–27).

I.N. has resided with her adoptive family since infancy. Her father worked as a firefighter and her mother was the primary caregiver for I.N. and four other children. She has required total assistance for all activities of daily living. Defendants authorized I.N. to receive 56 hours of in-home nursing services per week. Nevertheless, I.N. has received fewer hours of services than authorized. Missed nursing shifts occurred for a variety of reasons, including illness, vacation, nurses being assigned to multiple cases, or because I.N.'s parents could not find additional nurses who would accept her as a patient. Over the past year and a half, I.N. has experienced a shortfall of approximately ten percent of her authorized hours (*id.* ¶¶ 84–106).

J.B.'s mother was an Engineer Corps Officer in the Navy before J.B. was born but has since stayed home to care for J.B. His father worked as a project manager/engineer with the Army Corps of Engineers. J.B. has also required assistance with all activities of daily living. Defendants authorized him to receive 135 hours of in-home nursing per week and two hours of monthly RN case management. J.B. has nonetheless experienced a fifty-percent shortfall in such hours for most of his life. Like I.N., J.B.'s parents have been unable to find nurses to staff all of J.B.'s authorized hours (*id.* ¶¶ 107–27).

Defendants knew that plaintiffs were not receiving their authorized amounts of medically-necessary in-home nursing yet failed to arrange for such services or assist their families in seeking such services. Rather, defendants merely provided families with outdated referral lists of home health agencies and independent nurse providers. These lists often included providers outside of the relevant geographic area and some who did not even accept Medi-Cal (*id.* ¶¶ 15–16, 93–105, 114–124).

Plaintiffs initiated this action in May 2018. An order granted plaintiffs' application to appoint their mothers as their *gardian ad litem*. Plaintiffs filed an amended complaint in August 2018, asserting claims for: (1) violation of the Medicaid Act's EPSDT provisions; (2) violation of the Medicaid Act's reasonable promptness requirement; (3) violation of the Americans with Disabilities Act; and (4) violation of Section 504 of the Rehabilitation Act. Defendants now move to dismiss the amended complaint for lack of subject-matter jurisdiction (Dkt. Nos. 1, 31, 45, 51). This order follows full briefing and oral argument.

# ANALYSIS

## 1. THE MEDICAID ACT.

Because plaintiffs' claims stem from their status as Medi-Cal beneficiaries, a review of the statutory framework is helpful. Medicaid is a cooperative federal-state program that directs federal funding to states to assist them in providing medical assistance to low-income individuals. 42 U.S.C. § 1396. The purpose of the Medicaid program is to enable states to furnish, as far as practicable, "medical assistance on behalf of . . . aged, blind or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services," and "to help such families and individuals attain or retain capability for independence or self-care . . . ." 42 U.S.C. § 1396-1. Once a state enters the program, the state must comply with the Medicaid Act and its implementing regulations. *Katie A., ex rel. Ludin v. Los Angeles Cty.*, 481 F.3d 1150, 1154 (9th Cir. 2007) (citation omitted). California has elected to participate in and receive federal funding through the Medicaid program. California's Medicaid program, called "Medi-Cal," is codified in the California Welfare & Institutions Code. States participating in Medicaid must designate a single state agency to administer and supervise the program and ensure compliance with the law. 42 U.S.C. § 1396a(a)(5). Here, DHCS is that designated agency. CAL. WELF. & INST. CODE § 14100.1.

Medi-Cal does not provide health services directly to beneficiaries. Nor does it provide beneficiaries with money to purchase health-care services directly. Rather, DHCS contracts with and reimburses participating providers — such as home health agencies and independent nursing providers — for services. One aspect of the Medicaid program is known as the Early and Periodic Screening, Diagnostic, and Treatment program ("EPSDT"). "California, like all other states participating in Medicaid, is required to provide EPSDT care to eligible children under the age of 21." *Katie A.*, 481 F.3d at 1154. Defendants therefore "must provide all of the services listed in § 1396d(a) to eligible children when such services are found to be medically necessary." *Ibid.* Section 1396d(a), in turn, contains a list of twenty-eight categories of care or services, including "private duty nursing services." 42 U.S.C. §§ 1396d(a)(8). Defendants must also furnish services "with reasonable promptness." 42 U.S.C. § 1396a(a)(8).

3

The amended complaint generally alleges that defendants have failed to arrange for such nursing services for plaintiffs. With this background in mind, this order now turns to defendants' argument that plaintiffs lack Article III standing to bring their claims.

### 2. ARTICLE III STANDING.

Lack of Article III standing requires dismissal for lack of subject-matter jurisdiction under FRCP 12(b)(1). *Simmonds v. Credit Suisse Sec.*, 638 F.3d 1072, 1087 n.6 (9th Cir. 2011). To establish standing, Article III of our United States Constitution requires plaintiffs to show that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). For purposes of ruling on a motion to dismiss for lack of standing, all well-pled material allegations of the complaint are accepted as true and the complaint must be construed in favor of the complaining party. *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

Defendants do not dispute that plaintiffs have alleged an injury in fact. Rather, defendants argue the complaint fails to allege facts plausibly suggesting that plaintiffs' injuries are fairly traceable to defendants or that plaintiffs' injuries would be redressed by a favorable ruling.

#### A. Causation.

Defendants primarily argue that plaintiffs' grievance — insufficient hours of in-home nursing — is due to the actions or inactions of independent third parties rather than defendants' own misconduct. Although defendants acknowledge that the Medicaid Act requires them to "arrange for (directly or through referral to appropriate agencies, organizations, or individuals)" in-home nursing for plaintiffs, they argue that they meet this requirement by contracting with service providers and supplying checks to pay them (Br. at 5). Because those third parties then provide the allegedly deficient services, defendants argue, plaintiffs fail to establish that defendants are the cause of their injury.

Defendants cannot be blamed for a shortage of nurses in California but the complaint alleges more than that. It alleges that defendants have consistently failed to arrange for

4

medically-necessary nursing services despite there being qualified in-home shift nursing care providers in plaintiffs' geographic areas. Plaintiffs also suggest ways in which defendants could attempt to meet this obligation. For example, plaintiffs allege that defendants contribute to the shortfall in plaintiffs' nursing hours by providing insufficient case management and giving plaintiffs' families inaccurate and out-of-date referral lists, "thereby placing the burden on families to find medically necessary in-home nursing services and navigate a complex system with little to no support in obtaining necessary services for their children" (Amd. Compl. ¶ 70).

Defendants' repeated objections that the shortfall in plaintiffs' hours is due to third parties or a shortage of nurses in California are unavailing at the pleading stage, where all material allegations in plaintiffs' complaint must be accepted as true. *Warth*, 422 U.S. at 501. To be sure, the purpose of the Medicaid program is to furnish medical assistance "as far as practicable" to eligible individuals. 42 U.S.C. § 1396-1. As alleged in the complaint, however, there are qualified in-home shift nursing care providers in plaintiffs' geographic areas but defendants steer plaintiffs away from resources actually available via outdated lists of providers (Amd. Compl. ¶¶ 92, 111). "Even if a state delegates the responsibility to provide treatment to other entities such as local agencies or managed care organizations, the ultimate responsibility to ensure treatment remains with the state." *Katie A.*, 481 F.3d at 1159. Plaintiffs' allegations therefore satisfy the causation prong.[1]

**B.  Redressibility.**

To establish redressability, plaintiffs must allege clear and specific facts showing that it is likely that the relief sought will remedy plaintiffs' injury. *Lujan*, 504 U.S. at 560–61. Plaintiffs, however, "need not show that a favorable decision will relieve [their] every injury." *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007). Plaintiffs here seek a declaratory judgment that defendants are failing to comply with the requirements of the Medicaid Act, the Americans

---

[1] Defendants mischaracterize the complaint in their contention that plaintiffs assert a "Section 10(A) claim" for failure to provide case management services. This is not a stand-alone claim in the amended complaint. Rather, plaintiffs allege that defendants' failure to provide case management services contributes to their overall failure to provide in-home shift nursing services (Amd. Compl. ¶¶ 128–131).

5

with Disabilities Act, and the Rehabilitation Act. Plaintiffs also seek injunctive relief requiring defendants "to arrange directly or through referral to appropriate agencies, organizations, or individuals" in-home shift nursing for plaintiffs. Defendants argue that this request fails to specify the type of relief that would redress plaintiffs' injury. Defendants appear to conflate the standard for the issuance of an injunction with the standard for surviving a motion to dismiss.

To survive a motion to dismiss for lack of constitutional standing, plaintiffs need only establish a "line of causation" between defendants' actions and their alleged harm that is more than "attenuated." *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (quoting *Allen v. Wright*, 468 U.S. 737, 757 (1984)). As discussed above, such a line of causation is established here. A court order might, for example, require defendants to update their referral lists. Contrary to defendants, the exact contours of plaintiffs' requested relief need not be determined at the pleading stage. Plaintiffs therefore have Article III standing to bring their claims.

This order does not accept the idea that California should be blamed for a shortage of nurses in the state. This order *does* accept that defendants have a statutory obligation to, "as far as practicable," "arrange for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment" for plaintiffs. 42 U.S.C. §§ 1396-1, 1396a(a)(43)(C). Based on the allegations in the amended complaint, it is plausible that defendants have not done all that the statute requires such that plaintiffs have been denied complete benefits. Discovery into how defendants manage the program may reveal that the fault lies with the bureaucracy and is curable rather than simply being a shortage of nurses in California. At this stage, it is too early to toss the case out.

**CONCLUSION**

For the reasons explained above, defendants' motion to dismiss for lack of subject-matter jurisdiction is **DENIED**. Counsel are well-advised to take discovery and to adhere to the case management schedule. Extensions will rarely be granted.

**IT IS SO ORDERED.**

Dated: October 10, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

6