William Leiner, State Bar No. 255528
william.leiner@disabilityrightsca.org
Salma E. Enan, State Bar No. 271336
salma.enan@disabilityrightsca.org
Elissa Gershon, State Bar No. 169741
elissa.gershon@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
1330 Broadway, Suite 500
Oakland, CA  94612
Tel.:  (510) 267-1200
Fax:  (510) 267-1201

Sarah Somers, State Bar No.170118
somers@healthlaw.org
Martha Jane Perkins, State Bar No. 104784
perkins@healthlaw.org
NATIONAL HEALTH LAW PROGRAM
200 N. Greensboro Street, Ste. D-13
Carrboro, NC  27510
Tel.:  (919) 968-6308
Fax:  (919) 968-8855

*(Counsel continued on next page)*

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I. N., a minor, by and through her mother and *Guardian ad Litem*, Zarinah F.; J. B., a minor by and through his mother and *Guardian ad Litem*, Alisa B., <br><br> Plaintiffs, <br><br> v. <br><br> JENNIFER KENT, Director of the Department of Health Care Services; State of California DEPARTMENT OF HEALTH CARE SERVICES, <br><br> Defendants. | Case No.:  3:18-cv-3099-WHA <br><br> CLASS ACTION <br><br> **DECLARATION OF WILLIAM LEINER IN SUPPORT OF PLAINTIFFS' MOTION FOR REASONABLE ATTORNEYS' FEES, EXPENSES, AND COSTS** <br><br> Date:    August 8, 2019 <br> Time:    11:00 a.m. <br> Place:   Courtroom 12, 19th Floor <br>         Hon. William Alsup <br><br> Action Filed:  May 24, 2018 |

Robert D. Newman, State Bar No. 86534
rnewman@wclp.org
Mona Tawatao, State Bar No. 128779
mtawatao@wclp.org
WESTERN CENTER ON LAW AND POVERTY
3701 Wilshire Boulevard, Suite 208
Los Angeles, CA  90010-2826
Tel.:  (213) 487-7211
Fax:  (213) 487-0242

Richard A. Schwartz, State Bar No. 267469
rschwartz@bgrfirm.com
BROWNE GEORGE ROSS LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
Tel: (310) 274-7100
Fax: (310) 275-5697

Maria del Pilar Gonzalez Morales, State Bar No. 308550
pilar.gonzalez@disabilityrightsca.org
Maria Iriarte, State Bar No. 150704
maria.iriarte@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
1111 Sixth Avenue, Suite 200
San Diego, CA  92104
Tel.: (619) 239-7861
Fax:  (619) 239-7906

Allen L. Lanstra, State Bar No. 251510
allen.lanstra@probonolaw.com
Rachael Schiffman, State Bar No. 292005
rachael.schiffman@probonolaw.com
300 S. Grand Avenue, Suite 3400
Los Angeles, CA 90071
Tel.: (213) 687-5000
Fax: (213) 687-5600

I, William Leiner, declare as follows:

1.      I am an attorney duly admitted to practice in the state of California and this Court.  I have been Lead Counsel on this case since its inception in 2016.  I have personal knowledge of the matters set forth to in this declaration, and if called as a witness I could competently so testify.  I make this declaration in support of Plaintiffs' Motion for Reasonable Attorneys' Fees, Expenses, and Costs.

2.      Attached hereto as Exhibit A is a true and correct copy of the settlement agreement ("the Agreement") entered into between Plaintiffs, I.N. and J.B. (hereafter "Plaintiffs") and Defendants California Department of Health Care Services (hereafter "DHCS") and Jennifer Kent, (hereafter "Defendants").

**Class Counsel**

3.      Class Counsel approved by this Court on April 7, 2019 (ECF No. 107) ("Class Counsel") in this case consists of six attorneys — Elissa Gershon and myself from Disability Rights California ("DRC"), Sarah Somers and Jane Perkins from the National Health Law Program ("NHeLP"), Robert Newman from the Western Center on Law and Poverty ("WCLP"), and Richard Schwartz of Brown George Ross LLP.  The lawyers responsible for handling the case at these firms have extensive experience litigating similar cases.  The experience and qualifications of Ms. Somers, Ms. Perkins, Mr. Newman, and Mr. Schwartz are detailed in the Declarations of Sarah Somers, Robert Newman, and Richard Schwartz, which are concurrently filed in support of this motion.

**Disability Rights California**

About DRC

4.      Disability Rights California is the designated protection and advocacy agency for California, and in that role provides services pursuant to the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 15001, PL 106-402; the Protection and Advocacy for Mentally Ill Individuals Act, 42 U.S.C. § 10801, PL 106-310; the Rehabilitation Act, 29 U.S.C. § 794e, PL 106-402; the Assistive Technology Act, 29 U.S.C. § 3011,3012, PL 105-394; the Ticket to Work and Work Incentives Improvement

1

*I. N. v. Kent;* Case No.: 3:18-cv-3099-WHA; Declaration of William Leiner ISO Plaintiffs' Motion For Reasonable Attorneys' Fees, Expenses, And Costs

1  Act, 42 U.S.C. § 1320b-20, PL 106-170; the Children's Health Act of 2000, 42 U.S.C.

2  § 300d-53, PL 106-310; and the Help America Vote Act of 2002, 42 U.S.C. § 15461-62,

3  PL 107-252; as well as under California Welfare and Institutions Code §§ 4900 *et seq.*

4    5.    DRC is one of the largest legal services providers in California.  It is funded

5  by a variety of sources, including federal grants, California Interest on Lawyers' Trust

6  Account (IOLTA) funds, and statutory fees awarded.

7    6.    DRC attorneys advocate for people with disabilities, including representation

8  in individual and class litigation in federal and state court on a wide variety of issues,

9  including access to long-term care services and government benefits, disability-based

10  discrimination, community integration, abuse and neglect, and rights in facilities.  Among

11  DRC's cases related to the claims and issues in the present case are the following:

12  • *Darling et al. v. Douglas*, Case No. C09-03798 SBA, N.D. Cal., filed

13    August 18, 2009.  This class action challenged legislative actions that would

14    have limited, then eliminated entirely, Medi-Cal funded Adult Day Health Care

15    benefits for a statewide class of approximately 30,000 seniors and individuals

16    with disabilities.  Plaintiffs brought claims under the Americans with

17    Disabilities Act and the Medicaid Act.  The court preliminarily enjoined two

18    planned cutbacks to services in *Brantley v. Maxwell-Jolly*, 656 F. Supp. 2d 1161

19    (N.D. Cal. 2009) and *Cota v. Maxwell-Jolly*, 688 F. Supp.2d 980 (N.D. Cal.

20    2010) (due to the deaths of lead plaintiffs, the case name changed over time).

21    The case settled in 2011, preserving the Adult Day Health Care benefit, which is

22    now named Community Based Adult Service.  Plaintiffs monitored

23    implementation of the settlement terms for three years thereafter.

24  • *Napper v. County of Sacramento*, Case No. 2:10-cv-1119, E.D. Cal., filed

25    May 6, 2010.  This class action alleged violations of the Americans with

26    Disabilities Act and Medicaid Act on behalf of approximately 5000 adult Medi-

27    Cal beneficiaries with significant psychiatric disabilities.  A preliminary

28    injunction barring changes to the county mental health service system for class

2

members was issued in July 2012.  The case settled in January 2011, followed by a formal Consent Decree issued by the court in January 2012.

- *V.L. v. Wagner*, Case No. 4:09-cv-04668-CW, N.D. Cal., filed October 1, 2009. This class action challenged legislative actions that would have terminated or limited In-Home Supportive Services ("IHSS") to approximately 130,000 seniors and individuals with disabilities.  Plaintiffs brought claims under the Americans with Disabilities Act and Medicaid Act.  The court preliminarily enjoined these cuts to the IHSS program in October 2009.  After legislative actions in 2011 subsequently imposed a twenty percent across the board cut to the IHSS program, a second preliminary injunction in March 2012 barred these changes from taking effect in *Oster. v. Lightbourne*, Case No. 4:09-cv-04668-CW.  The case settled in March 2013.

- *Chambers et al. v. City and County of San Francisco,* Case No. C06-06346 WHA, N.D. Cal., filed October 11, 2006.  This class action alleged violations of the Americans with Disabilities Act on behalf of Medi-Cal recipients who were current and future residents of Laguna Honda Hospital, a 780 bed nursing facility owned and operated by the City and County of San Francisco.  The lawsuit challenged San Francisco's actions resulting in plaintiffs' and class members' unnecessary institutionalization at Laguna Honda.  The Parties reached a settlement agreement in 2007 which provided for housing subsidies and enhanced community-based services for class members. DRC monitored the settlement and implementation of the terms of the agreement for more than three years.

- *Davis et al. v. CHHSA*, Case No. 00-2532 SBA, N.D. Cal., filed July, 2000. This class action on behalf of current and future residents of Laguna Honda Hospital, a 1,200-bed nursing facility in San Francisco alleged unnecessary institutionalization due to inadequate assessments and failure to provide community-based long-term care services.  The settlement provided for

3

*I. N. v. Kent;* Case No.: 3:18-cv-3099-WHA; Declaration of William Leiner ISO Plaintiffs' Motion For Reasonable Attorneys' Fees, Expenses, And Costs

improved assessments of Laguna Honda residents to determine their

appropriateness and service needs for placement in community settings. The

case settled in December of 2003.

- *Capitol People First, et al. v. Department of Developmental Services, et al.*, Case No. 2002-038715, filed January 25, 2002 in Alameda County Superior Court. This class action on behalf of children and adults with developmental disabilities alleged unnecessary institutionalization in state-run and private institutions, in violation of the Lanterman Developmental Disabilities Services Act, the Americans with Disabilities Act, and the Medicaid Act. The case settled in April 2009, requiring defendants to increase community capacity and provide funding for additional service coordination to ensure class members were provided with information about community living options. DRC monitored the settlement and implementation of the terms of the agreement for more than three years.

- *Emily Q., et al. v. Bontá, et al.*, No. 98-4181 AHM (AIJx) (C.D. Cal., Judgment & Permanent Injunction entered May 10, 2001). This class action challenged the Department of Health Care Services' failure to comply with the Early and Periodic Screening, Diagnosis and Treatment ("EPSDT") and other requirements of the Medicaid Act statutes and, as a result, the Department of Health Care Services was ordered to provide necessary mental health services, in particular Therapeutic Behavioral Services, to Medi-Cal-eligible children and youth under the age of 21.

- *Katie A., et al. v. Bontá, et al.*, No. CV-02-05662 AHM (SHx) (C.D. Cal., 2002, settlement reached 2011). This class action lawsuit with EPSDT claims as well as claims under other provisions of the Medicaid Act, the Americans with Disabilities Act and Section 504 of the Rehabilitation Act resulted in a settlement agreement with the California Department of Health Care Services making two types of mental health services, "Intensive Home-Based Services"

4

and "Intensive Care Coordination," available to certain Medi-Cal beneficiaries who are children and youth under the age of 21.  Plaintiffs previously reached a settlement in this same lawsuit with the County of Los Angeles imposing similar obligations to provide mental health services to a County-wide class of Medi-Cal beneficiaries under the age of 21.[1]

<u>William Leiner—Lead Attorney</u>

7.     I am a Managing Attorney at DRC, and I lead the litigation team on this case.  I have been leading this team since DRC initiated a pre-litigation investigation in 2016.  During the pre-litigation investigation, DRC interviewed over 100 families of Medi-Cal beneficiaries who were unable to access all of their approved Medi-Cal Private Duty Nursing hours.  DRC also submitted multiple Public Record Act requests to DHCS and reviewed tens of thousands of pages of medical records.  Through this investigation, I became intimately familiar with the challenges that families like I.N.'s and J.B.'s were facing, Defendants' systems of care, and the provision of Private Duty Nursing services.

8.     I graduated from U.C. Hastings School of Law in 2007 and joined DRC in 2008.  I am admitted to practice law before the Courts of the State of California and the United States District Court for the Northern District of California.  In my role at DRC, I have worked primarily on individual and systemic cases involving access to home and community-based services, instead of institutional care, for people with disabilities.  I was an attorney of record in the class action lawsuit, *Capitol People First, et al. v. Department of Developmental Services, et al*., (Alameda Cnty. Sup. Ct., Case No. 2002-038715), which challenged the unnecessarily institutionalization of individuals with developmental disabilities in state-run and private institutions, and primarily responsible for monitoring the settlement agreement reached in that case.  A true and correct copy of my resume is attached hereto as Exhibit B.

---

[1] One of Plaintiffs' counsel in this case, Robert Newman, was lead counsel in *Katie A*. and was co-counsel for the class in *Emily Q*. and *Napper*.

Elissa Gershon—Litigation Counsel

9.      Plaintiffs are also represented by Elissa Gershon, Litigation Counsel at DRC. Ms. Gershon is a 1993 graduate of University of California Hastings College of the Law and has been an attorney with DRC since 1997.  She is admitted to practice law before the Courts of the State of California, the United States District Courts for the Northern, Eastern, and Central Districts of California, and the Ninth Circuit Court of Appeal.  She has worked primarily on individual and systemic cases involving access to home and community-based services, instead of institutional care for people with disabilities. Ms. Gershon was the lead attorney in *Darling et al. v. Douglas*, (N.D. Cal. Case No. C09-03798 SBA) and *Chambers, et. al v. City and County of San Francisco*, (N.D. Cal. Case No. 3:06-06346-WHA) and was one of the attorneys representing Plaintiffs in *Davis, et al. v. Calif. Health & Human Services Agency et al.*, (N.D. Cal. Case No. 00-2532 SBA), all cases involving claims under the Americans with Disabilities Act and Medicaid. Ms. Gershon was also counsel in *Capitol People First, et al. v. Department of Developmental Services, et al.*, Alameda Cty. Sup. Ct., Case No. 2002-038715, which challenged the unnecessarily institutionalization of individuals with developmental disabilities in state-run and private institutions.  A true and correct copy of Ms. Gershon's resume is attached hereto as Exhibit C.

DRC Rates and Billing Judgment

10.      As a non-profit law firm and a provider of legal services pursuant to various state and federal grants and other funding, DRC does not charge fees to our clients. DRC takes on many cases for which there is no private bar, including complicated, technical, and risky cases in which a successful outcome is not assured.  We rely on attorneys' fees to continue much of our work and if we are not the prevailing party in cases such as this one, we do not recover any fees.

11.      Since we do not charge our clients for our work, DRC Litigation Counsel, together with other management staff at DRC, periodically establish appropriate hourly rates for attorneys' fees for DRC staff.  We establish the rates based on prevailing market

rates for attorneys of comparable skill, experience, and qualifications. Our staff annually review our rates to ensure that they are in fact comparable.

12.     In setting our rates, we review published cases and unpublished decisions concerning attorneys' fees, rates utilized by comparable non-profit public interest organizations, awards DRC has received for attorneys' fees, regional surveys of attorneys' fees, and other information from private attorneys relating to the rates charged by private firms for comparable litigation.  We also take into account the experience of the attorneys and staff working on the case and the complexity of the case.

13.     Based on information we reviewed in setting our hourly rates, I believe our rates to be consistent with, if not slightly lower than, the current prevailing market rates charged by other attorneys with comparable skills, qualifications, experience, and reputation, including, in particular, firms that regularly prosecute and/or defend disability rights cases.

14.     In conjunction with this litigation, I am seeking compensation at the rate of $640 per hour, and Ms. Gershon is seeking a rate of $785 per hour, which are Disability Rights California's customary and current billing rates for attorneys of our experience.  As described above, our rates were established by Disability Rights California based upon our background and experience, and the rates being awarded in civil rights litigation for other lawyers with like background and experience. Our rates are supported by the declarations of Richard M. Pearl, an expert in attorney fees rates, and Stuart Seaborn, Managing Director of Litigation at Disability Rights Advocates.

15.     Exhibit D contains a true and correct summary of the time billable time for Ms. Gershon and myself through preliminary approval of the settlement.  All of our time was recorded contemporaneously with the work completed and entered into our computerized time tracking system in tenth-of-an-hour increments.  I have exercised billing judgment as to both my time and Ms. Gershon's, and have not included time which was unproductive, administrative, duplicative, or which I otherwise considered inappropriate for which to claim fees, as well as made edits for clarity.  Much of my time

7

as lead counsel was spent to oversee the work of a large team which included several junior attorneys.  While this work, which included leading regular team calls, drafting agendas, keeping detailed notes and task lists, did not always lead to work product in the case, it was critical to moving the case efficiently and avoiding duplication overall.  In addition, where both Ms. Gershon and I participated in an event, such as meetings, litigation team calls, and settlement conferences, I have reduced Ms. Gershon's time to address any concerns about duplication.  That said, her participation in those events was important and her contributions material, so I did not write off all of her time.  In connection with this litigation, Disability Rights California's claimed lodestar is 363.8 hours of my time at a rate of $640 per hour, and 103.1 hours for Ms. Gershon at a rate of $785 per hour, for a total amount of $313,765.50.  This represents a discount of 136.8 hours, or a 29% reduction from our actual lodestar.

16.    While I have included billing records only for Ms. Gershon and myself, five other attorneys from Disability Rights California contributed to the successful outcome of this case.  As discussed in more detail below, at the onset of this case, DRC conducted outreach to ascertain the scope of the problem that had been reported to us.  The five attorneys primarily worked with the more than 100 families who contacted us, interviewing parents, reviewing records, drafting client summaries, and providing advice to families.  This work was critical to our ability to understand the nature and scope of the problem of lack of access to in-home nursing, identify plaintiffs, and prepare for class certification and expert reports.  The work with potential class members was ongoing throughout the course of the case.  DRC is not claiming billable time for this work, as we have limited our request to the two DRC attorneys who have been appointed as Class Counsel.  However, the time spent by the five other DRC attorneys who worked on this care totals 465.9 hours.  Their fees would have totaled $231,930.  The breakdown is as follows:

///

///

| Attorney | Graduation Year | Hourly Rate | Hours Billed | Total |
|---|---|---|---|---|
| Rebecca Yang | 2013 | $500 | 191.5 | $95,750 |
| Salma Enan | 2010 | $550 | 117.7 | $64,735 |
| Angelica Galang | 2015 | $450 | 88 | $39,600 |
| Pilar Gonzalez | 2010 | $550 | 24.7 | $13,585 |
| Ali Nicolette | 2016 | $415 | 44 | $18,260 |
| Totals | | | 465.9 | $231,930 |

17.     The total amount of fees sought does not include my time or Ms. Gershon's time spent in preparing this motion, nor does it include time that will be spent to review and respond to any objections, prepare the parties' Motion for Final Approval addressing any objections, attend the Final Approval hearing, or monitor Defendants' compliance for the duration of the settlement.  Based on the nature of expected monitoring, the size of the class, and work on similar cases, we estimate that the total number of hours for this work, not including any enforcement activities that DRC and co-counsel might need to undertake, will exceed 50-100 attorney hours.

18.     Plaintiffs have incurred $14,046 in costs and expenses, including expert fees. The itemized costs are not submitted herewith, as the work product, including expert names, has not been shared with the Court or with Defendants.  Plaintiffs retained two experts in anticipation of moving for class certification and they completed substantial work which was not ultimately shared with Defendants but which informed Plaintiffs' approaches to preparation of their class certification motion and settlement.  Plaintiffs would be willing to submit a redacted itemization and/or receipts at the Court's direction, but did not deem it necessary to do so at this juncture given the substantial justification provided in attorney time alone for the global amount agreed to by the parties.

19.     I have reviewed the time logs and the exercise of billing judgment by Class Counsel.  Attached hereto as Exhibit E is a chart of the total hours of all Class Counsel, the numerical and percentage reduction in hours, and the actual and claimed lodestar for all Class Counsel. The claimed lodestar for Class Counsel is $753,157.50, which far exceeds the global amount agreed to by the parties.

9

**Pre-Litigation Investigation**

20.     In November 2016, after receiving complaints from families of children with disabilities about the lack of access to Private Duty Nursing, DRC distributed a flyer to community partners and other organizations.  These flyers included DRC's contact information and stated that DRC was interested in speaking with families of Medi-Cal beneficiaries under the age of 21 who were unable to access all of their approved Private Duty Nursing hours.

21.     Between December 2016 through the filing of this lawsuit, under my direction, DRC attorneys interviewed more than 100 families who responded to the flyer. Many families explained that they were unable to obtain all of their approved Private Duty Nursing hours and that there was no system in place to help them actually secure these services.  DRC staff also reviewed tens of thousands of pages of individual client records to evaluate and assess complaints about families' inability to access their approved Private Duty Nursing hours.

22.     In November 2016, DRC submitted a Public Records Act request to DHCS asking for information about, *inter alia,* 1) the number of Medi-Cal beneficiaries under the age of 21 approved to receive Private Duty Nursing; and 2) DHCS' policies and procedures regarding the provision of Private Duty Nursing.  In response, DHCS produced, *inter alia,* a study, *Access to Private Duty Nursing*, dated December 2016.  The study identified a 29 percent statewide gap, involving nearly 3,600 Medi-Cal beneficiaries under the age of 21, between the number of Private Duty Nursing hours that have been approved and the number of hours that were actually filled. A true and correct copy of the DHCS study is attached hereto as Exhibit F.

23.     DRC attorneys, including Ms. Gershon and myself, conducted extensive factual and legal research in order to develop the legal theories of the case.  While similar cases had been brought in two other states, California's complicated Medi-Cal system necessitated that we perform significant investigation and analysis to apply the successful legal theories in those cases to our state's program.  This type of case had never been

brought in California and thus required the skill and experience of Ms. Gershon, myself, and our expert co-counsel to frame the legal and factual issues properly.

**Pre-Litigation Demand, Settlement Negotiations, and Litigation to Date**

24.     Before Plaintiffs filed the complaint in this case, Plaintiffs' Counsel Sarah Somers and Jane Perkins sent Defendants a pre-litigation demand letter on November 9, 2017.  The Parties met telephonically on December 8, 2017, January 26, 2018, March 2, 2018, March 12, 2018, and April 19, 2018 to discuss the issues raised in the letter, but the Parties were unable to reach an agreement to resolve these issues.  As a result, this litigation was filed on May 24, 2018.  As the Court is aware, the Parties engaged in law and motion practice wherein Defendants moved to dismiss Plaintiffs' claims.  Despite Plaintiffs' efforts to confer with Defendants prior to their filing their first Motion to Dismiss, Defendants refused to meaningfully confer, which prevented the parties from narrowing the issues in the motion.  As a result, Defendants filed their Motion, raising opposition to Plaintiffs' claim under Government Code section 11135.  After reviewing Defendants' papers, Plaintiffs voluntarily dismissed the claim, thereby mooting the motion.  Defendants refiled their motion and Plaintiffs opposed it.  This Court denied Defendants' Motion to Dismiss on October 10, 2018.

25.     The Court held a Case Management Conference on September 6, 2018 and issued a scheduling order on September 10, 2018.  The scheduling order set, *inter alia*, a deadline of December 6, 2018 for Plaintiffs to file their class certification motion and a trial date of November 18, 2019.  The scheduling order also referred the Parties to Honorable Jacqueline Corley, United States Magistrate Judge, for a settlement conference.

26.     Since the filing of this lawsuit, Plaintiffs have pursued a two-track approach of preparing for class certification and trial while exploring the possibility of settlement. In August 2018, the Parties exchanged their initial disclosures and Plaintiffs served written discovery, including interrogatories and requests for production of documents.  Plaintiffs began noticing depositions in September 2018 and served a request for inspection and request for admissions in October 2018.  In total, Plaintiffs produced and reviewed

11

*I. N. v. Kent;* Case No.: 3:18-cv-3099-WHA; Declaration of William Leiner ISO Plaintiffs' Motion For Reasonable Attorneys' Fees, Expenses, And Costs

1  Defendants' production of more than 15,000 pages of documents including complicated

2  client medical records and technical material relating to Defendants' administration of the

3  Medi-Cal program; propounded 36 Requests for Production of Documents, 27

4  Interrogatories, 12 Requests for Admission, and a Request for Inspection; and responded to

5  54 Requests for Production of Documents and 85 Interrogatories.  In October 2018,

6  Plaintiffs also sought the Court's assistance with a discovery dispute, resulting in the

7  taking of two depositions that same month, which included: 1) the primary author of the

8  2016 DHCS study regarding beneficiaries' access to Private Duty Nursing; and 2) DHCS'

9  designee regarding their data retrieval processes for electronically stored information.

10         27.     Concurrently, the Parties participated in a pre-settlement conference meeting

11  on October 25, 2018, exchanged settlement conference statements on October 31, 2018,

12  and met with Magistrate Judge Corley on November 2, 2018, for an all-day settlement

13  conference.  Although the Parties did not reach an agreement, progress was made, and the

14  Court agreed to extend the deadline to move for class certification so the Parties could

15  focus on settlement negotiations.  The Parties made further progress at a second settlement

16  conference with Magistrate Judge Corley on November 30, 2018, after which point the

17  Court again agreed to extend the class certification deadline.  After additional day-long

18  settlement conferences with Magistrate Judge Corley on December 21, 2018 and January

19  22, 2019, and telephonic conferences February 20, 2019 and February 27, 2019, the Parties

20  reached an agreement to resolve all claims in this case and fully executed the Agreement

21  on February 28, 2019.

22         28.     At each juncture that the Court extended deadlines in order to enable the

23  parties to pursue a successful settlement, the parties understood that the Court would not

24  necessarily continue to extend trial deadlines and we therefore continued to work on

25  litigation activities to prepare for the impending class certification deadline and meet our

26  other obligations to the class.

27         29.     The Parties did not begin negotiating attorneys' fees and costs until there was

28  substantial agreement as to the relief for the benefit of the proposed class.  Attorneys' fees

12

*I. N. v. Kent;* Case No.: 3:18-cv-3099-WHA; Declaration of William Leiner ISO Plaintiffs' Motion For Reasonable Attorneys' Fees, Expenses, And Costs

and costs were resolved with the assistance of Judge Corley only after the Parties finalized class relief.

30.     Throughout the settlement negotiations, the Parties exchanged additional information used to further evaluate the evaluate the agreement, including Defendants' contracts with managed care plans, policies and procedures related to the provision of case management services, policy directives issued by Defendants to agencies that provide services to class members, and information about the provider enrollment process. Accounting for this information, the Parties made multiple revisions to the settlement agreements, and Class Counsel concluded that the Agreement executed on February 28, 2019 will provide effective relief to the class while efficiently and expeditiously resolving disputed issues.

31.     Plaintiffs also actively participated in the litigation and in settlement negotiations.  Between October of 2018 and February of 2019, I spoke with Zarinah F. and Alisa B. approximately six times each to review draft settlement agreements, solicit feedback, and answer questions related to the settlement process. This Court granted preliminary approval to the settlement on April 7, 2019.  ECF No. 107.

### Summary of the Settlement Agreement

32.     The Agreement provides for significant relief to the settlement class, including:

     a.  the designation of a Medi-Cal program or contracted organization to provide case management to arrange for class members' approved Private Duty Nursing services;

     b.  oversight and monitoring of the Medi-Cal program or contracted organization by Defendants and Class Counsel; and

     c.  the ability for class members to contact DHCS directly with questions or concerns about their Private Duty Nursing or the case management services they are receiving.

*I. N. v. KENT;* CASE NO.: 3:18-CV-3099-WHA; DECLARATION OF WILLIAM LEINER ISO PLAINTIFFS' MOTION FOR REASONABLE ATTORNEYS' FEES, EXPENSES, AND COSTS

33.     The Agreement also provides for continuing jurisdiction by the Court to oversee enforcement of the Agreement for nine months after DHCS sends notices to the Medi-Cal programs and contracted organizations requiring them to provide enhanced case management services to class members who need help obtaining approved Private Duty Nursing, and a dispute resolution process overseen by Magistrate Judge Corley.  In addition, until the Agreement is implemented, Defendant DHCS has agreed to appoint a point of contact for Plaintiffs, who will be responsible for working with Plaintiffs to resolve issues and questions related to the authorization and/or staffing of their Private Duty Nursing services.

**Agreement Regarding Attorneys' Fees**

34.     Pursuant to the Settlement Agreement, Plaintiffs agreed to seek Court approval for $435,000 for attorneys' fees and costs.  Defendants have agreed not to oppose this motion.  This amount includes not only the time devoted by Class Counsel to prosecuting the case through this motion for preliminary approval of the settlement, but also all the time Class Counsel will spend in the future in reviewing and responding to any objections, preparing the parties' Motion for Final Approval addressing any objections, attending the Final Approval hearing, plus monitoring Defendants' compliance with the settlement once it is approved.  The amount represents a significant discount from Plaintiffs' fee and costs, as discussed above.  Plaintiffs' have also incurred $14,046 in costs and fees, including expert fees.  Plaintiffs do not seek a multiplier.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.  Executed on the 13th day of June, 2019, at Oakland, California.

_____ */s/   William Leiner*_____
William Leiner

# <u>EXHIBIT A</u>

*I. N., et al. v. Jennifer Kent, et al.*
Case No. 3:18-CV-03099-WHA

**Settlement Agreement**

# <u>EXHIBIT A</u>

XAVIER BECERRA
Attorney General of California
SUSAN M. CARSON
Supervising Deputy Attorney General
JENNIFER C. ADDAMS
Deputy Attorney General
CAROLYN O. TSAI
Deputy Attorney General
State Bar No. 239631
HAMSA M. MURTHY
Deputy Attorney General
State Bar No. 274745
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA 94102-7004
 Telephone: (415) 510-3539
 Fax: (415) 703-5480
 E-mail: Carolyn.Tsai@doj.ca.gov

*Attorneys for Defendants*

*(Counsel continued on next page)*

William Leiner, State Bar No. 255528
william.leiner@disabilityrightsca.org
Salma E. Enan, State Bar No. 271336
salma.enan@disabilityrightsca.org
Elissa Gershon, State Bar No. 169741
elissa.gershon@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
1330 Broadway, Suite 500
Oakland, CA 94612
Tel.: (510) 267-1200
Fax: (510) 267-1201

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **I.N., a minor, by and through her mother and Guardian ad Litem, Zarinah F., and J.B., a minor, by and through his mother and Guardian ad Litem, Alisa B.,**<br><br>Plaintiffs,<br><br>v.<br><br>**JENNIFER KENT, Director of the Department of Health Care Services, and STATE OF CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES,**<br><br>Defendants. | **CLASS ACTION**<br><br>3:18-cv-03099 WHA<br><br>**SETTLEMENT AGREEMENT**<br><br>Judge:      The Hon. William Alsup<br><br>Action Filed:   May 24, 2018 |

1

Rebecca Yang, State Bar No. 306400
rebecca.yang@disabilityrightsca.org
Maria del Pilar Gonzalez Morales, State Bar No. 308550
pilar.gonzalez@disabilityrightsca.org
Maria Iriarte, State Bar No. 150704
maria.iriarte@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
1111 Sixth Avenue, Suite 200
San Diego, CA 92104
Tel.: (619) 239-7861
Fax: (619) 239-7906

Allen L. Lanstra, State Bar No. 251510
allen.lanstra@probonolaw.com
Richard A. Schwartz, State Bar No. 267469
richard.schwartz@probonolaw.com
Rachael Schiffman, State Bar No. 292005
rachael.schiffman@probonolaw.com
300 S. Grand Avenue, Suite 3400
Los Angeles, CA 90071
Tel.: (213) 687-5000
Fax: (213) 687-5600

Robert D. Newman, State Bar No. 86534
rnewman@wclp.org
Mona Tawatao, State Bar No. 128779
mtawatao@wclp.org
WESTERN CENTER ON LAW AND POVERTY
3701 Wilshire Boulevard, Suite 208
Los Angeles, CA 90010-2826
Tel.: (213) 487-7211
Fax: (213) 487-0242

Sarah Somers, State Bar No. 170118
somers@healthlaw.org
Martha Jane Perkins, State Bar No. 104784
perkins@healthlaw.org
NATIONAL HEALTH LAW PROGRAM
200 N. Greensboro Street, Ste. D-13
Carrboro, NC 27510
Tel.: (919) 968-6308
Fax: (919) 968-8855
*(Attorneys for Plaintiffs)*

2

This Settlement Agreement fully and finally resolves all claims in *I.N. et al., v. Kent, et al.,* Northern District Case No. 3:18-cv-03099 WHA. This Settlement Agreement is made by and among Plaintiffs I.N., a minor, by and through her mother and Guardian ad Litem, Zarinah F., and J.B., a minor, by and through his mother and Guardian ad Litem, Alisa B., and Defendants Jennifer Kent, in her official capacity as Director of the Department of Health Care Services (DHCS), and DHCS (collectively "Parties").

## I.   DEFINITIONS

For purposes of this Settlement Agreement only, the following terms are defined as follows:

1.   "Case Management Services" means those services furnished to assist individuals eligible under the Medi-Cal State plan who reside in a community setting or are transitioning to a community setting, in gaining access to needed medical, social, education, and other services in accordance with 42 Code of Federal Regulations (CFR) sections 441.18 and 440.169. The assistance that case managers provide in assisting eligible individuals is set forth in 42 CFR section 440.169(d) and (e), and 22 California Code of Regulations (CCR) section 51184(d), (g) and (h).

2.   "EPSDT services" means Early and Periodic Screening, Diagnostic and Treatment services, a benefit of the State's Medi-Cal program that provides comprehensive, preventative, diagnostic, and treatment services to eligible children under the age of 21, as specified in section 1905(r) of the Social Security Act. (42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(43), 1396d(a)(4)(B), 1396d(r).)

3.   "Private Duty Nursing" means nursing services provided in a class member's home by a registered nurse or a licensed practical nurse, under the direction of a class member's physician, to a class member who requires more individual and continuous care than is available from a visiting nurse. (42 CFR. § 440.80.)

4.   "Waiver Agency" means an agency contracted with DHCS to provide administrative and Comprehensive Care Management services pursuant to and as defined by the Home and Community-Based Alternatives (HCBA) Waiver under 42 U.S.C. section 1396n(c).

3

5.      "Managed Care Plan" means a health plan that contracts with DHCS to provide an organized network of providers to class members participating in Medi-Cal Managed Care.

6.      "California Children's Services" (CCS) refers to a program offered in every county in California that provides services to children under the age of 21 with diseases or health problems enumerated in California Code of Regulations, Title 22 sections 41515.1 through 41518.9, who meet all the CCS program requirements for eligibility.

7.      "Date of Execution" means the date this Settlement Agreement is fully executed by all parties.

8.      "Effective Date of Settlement" means 31 days following final approval of the Settlement Agreement pursuant to Federal Rule of Civil Procedure, Rule 23(e).

9.      "Whole Child Model Program" means the program authorized by California Welfare and Institutions Code section 14094.5, which authorizes DHCS to incorporate CCS covered services for Medi-Cal eligible CCS children and youth into Medi-Cal Managed Care Plan contracts.

10.      "Home Health Agency" as defined in Health and Safety Code section 1727(a) and used herein, means a public or private organization licensed by the State which provides skilled nursing services as defined in Health and Safety Code section 1727(b), to persons in their place of residence.

11.      "Individual Nurse Provider" or "INP" means a Medi-Cal enrolled Licensed Vocational Nurse or Registered Nurse who independently provides Private Duty Nursing services in the home to Medi-Cal beneficiaries.

12.      "Home and Community Based Alternatives Waiver" or "HCBA Waiver" (formerly known as the Nursing Facility / Acute Hospital Waiver) refers to one of California's Medicaid Home and Community-Based Services Waiver programs authorized under 42 U.S.C. section 1396n(c). The HCBA Waiver provides case management services and authorization of home-based Waiver services to persons at risk for nursing home or other institutional placement.

4

## II.   RECITALS

13.     Plaintiffs I.N. and J.B. are children under the age of 21 residing in California who are EPSDT eligible beneficiaries of Medi-Cal, and for whom Private Duty Nursing services under Medi-Cal have been approved.

14.     For purposes of this Settlement Agreement only, Defendants agree that Plaintiffs I.N. and J.B. are adequate representatives of the class defined in Paragraph 20 below.

15.     Defendants are Jennifer Kent, sued in her official capacity as Director of DHCS, and DHCS, a department within the California Health and Human Services Agency that finances and administers a number of individual health care service delivery programs, including the State's Medicaid program, Medi-Cal.

16.     On May 24, 2018, Plaintiffs filed their Complaint for Injunctive and Declaratory Relief (ECF No. 1).  On August 8, 2018, Plaintiffs filed a First Amended Complaint for Injunctive and Declaratory Relief (ECF No. 45), which is the operative complaint in this action.

17.     Plaintiffs' action seeks declaratory and injunctive relief to enforce Plaintiffs' and class members' rights under the EPSDT and reasonable promptness mandate of Title XIX of the Social Security Act (Medicaid Act); the Americans with Disabilities Act (ADA), 42 U.S.C. section 12132; and Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. section 794(a).

18.     The Parties recognize the inherent uncertainty in litigation, and the time and resources necessary to litigate the issues raised in this case and other similar cases.  The Parties desire to fully and finally resolve and settle this case.

19.     The Parties have engaged in extensive settlement negotiations supervised by Magistrate Judge Jacqueline Corley, including settlement conferences held on November 2, 2018, November 30, 2018, December 21, 2018, and January 22, 2019.

///

///

///

5

### III.    TERMS OF SETTLEMENT

20.    The Class Definition

The parties agree that the class will consist of:

> All Medi-Cal beneficiaries who are EPSDT eligible and for whom Medi-Cal Private Duty Nursing services have been approved.

21.    Managed Care Plan All Plan Letters

   a.        Within 90 days of the Effective Date of Settlement, Defendants shall publish for public comment an All Plan Letter to all Managed Care Plans.  Within 90 days of the conclusion of final comment period, Defendants shall issue the All Plan Letter to all Managed Care Plans. The All Plan Letter shall include:

   i.    A statement that Managed Care Plans are required to provide Case Management Services as set forth in their respective Medi-Cal contracts to all class members enrolled in their Plans, including, upon a class member's request, Case Management Services to arrange for all approved Private Duty Nursing services desired by the class member, even when the Plan is not financially responsible for paying for the approved Private Duty Nursing services.

   ii.    A statement that, in meeting the obligations set forth above in Paragraph 21.a.i, Managed Care Plans shall use one or more Home Health Agencies, Individual Nurse Providers, or any combination thereof.

   iii.    A statement that the Managed Care Plan's obligations to enrolled class members who request Case Management Services for their approved Private Duty Nursing services include, but are not limited to:

   A.  providing class members with information about the number of Private Duty Nursing hours that they are approved to receive;

   B.  contacting enrolled Home Health Agencies and enrolled Individual Nurse Providers to seek approved Private Duty Nursing services on the class member's behalf;

6

C. identifying and assisting potentially eligible Home Health Agencies and Individual Nurse Providers with navigating the process of enrolling to be a Medi-Cal provider;

D. working with Home Health Agencies and enrolled Individual Nurse Providers to jointly provide Private Duty Nursing services to a class member as needed.

iv. A requirement that the Managed Care Plan issue new or revised policies and procedures that comply with the All Plan Letter, and provide copies of such policies and procedures to DHCS for review and approval.

v. A requirement that Managed Care Plans issue a notice to enrolled class members for whom the Plan has approved Private Duty Nursing services that explains that the Plan has primary responsibility for Case Management of Private Duty Nursing services. The notice shall include a description of the Case Management Services available to class members as set forth in this Settlement Agreement and an explanation of how to access those services. The notice shall include a statement that class members may utilize a Managed Care Plan's existing grievance procedures to address difficulties in receiving Private Duty Nursing services or their dissatisfaction with their Case Management Services, or file a Medi-Cal fair hearing as provided by law, or email DHCS directly at EPSDT@dhcs.ca.gov. The notice shall also include a statement that if class members have questions about their legal rights regarding Private Duty Nursing services, they may contact Disability Rights California at (888) 852-9241.

b. Compliance with the requirement to provide Case Management Services as described in this Settlement Agreement will be part of DHCS's auditing of Managed Care Plans beginning the next audit cycle after the All Plan Letter is released, as determined by

7

1   DHCS. A Plan's failure to comply may result in a corrective action plan and/or monetary

2   penalties as provided for under the terms of the Managed Care Plan's contract and any applicable

3   state or federal statutes and regulations, including but not limited to 22 C.C.R. sections 53350,

4   53352, and 53860.

5       22.    <u>CCS Numbered Letters</u>

6          a.       Within 90 days of the date of the Effective Date of Settlement, Defendants

7   will publish a CCS "Numbered Letter" for public comment. Within 90 days of the conclusion of

8   the final comment period, Defendants will issue the Numbered Letter to all County CCS (CCS)

9   Administrators. The Numbered Letter shall include:

10            i.    A statement that, in addition to existing obligations, all county CCS

11               programs are required to provide, upon a CCS eligible class member's

12               request, Case Management Services to arrange for all approved Private

13               Duty Nursing services desired by the class member.

14           ii.    A statement that, in meeting the obligations set forth above in Paragraph

15               22.a.i, county CCS programs shall use one or more Home Health

16               Agencies, Individual Nurse Providers, or any combination thereof.

17          iii.   A statement that the Case Management Services include, but are not

18               limited to:

19               A. providing class members with information about the number of

20                   Private Duty Nursing hours that they are approved to receive;

21               B. contacting enrolled Home Health Agencies and/or enrolled

22                   Individual Nurse Providers to seek approved Private Duty Nursing

23                   services on the class member's behalf;

24                C. identifying and assisting potentially eligible Home Health

25                   Agencies and Individual Nurse Providers with navigating the

26                   process of enrolling to be a Medi-Cal provider;

27

28

D. working with Home Health Agencies and enrolled Individual Nurse Providers to jointly provide Private Duty Nursing services to a class member as needed.

iv. A requirement that the County promulgate new or revised policies and procedures to comply with the CCS Numbered Letter, and provide copies of such policies and procedures to DHCS for review and approval.

v. A requirement that the County issue a notice to class members whose Private Duty Nursing services are being approved by CCS explaining that the County has primary responsibility for Case Management of Private Duty Nursing services. The notice shall include a description of the Case Management Services available to class members as set forth in this Settlement Agreement and an explanation of how to access those services. The notice shall also explain that if a class member is also enrolled in a Managed Care Plan, that class member may also request Case Management Services from the Plan. The notice shall include a statement that class members may file grievances with their CCS County Programs to address difficulties in receiving Private Duty Nursing services or their dissatisfaction with Case Management Services or Private Duty Nursing services, or file a Medi-Cal fair hearing as provided by law, or email DHCS directly at EPSDT@dhcs.ca.gov. The notice shall also include a statement that if class members have questions about their legal rights regarding Private Duty Nursing services, they may contact Disability Rights California at (888) 852-9241.

23. Notice to Waiver Agencies

a. Within 90 days of the Effective Date of Settlement, Defendants shall issue a notice to all Waiver Agencies. The notice shall:

9

i.    Identify the clause within Waiver Agency contracts that obligates Waiver Agencies to provide Comprehensive Care Management Services, as defined in the HCBA Waiver, including, upon the class member's request, arranging for all approved Private Duty nursing services desired by the class member.

ii.   Include a statement that, in meeting the obligations set forth above in Paragraph 23.a.i, Waiver Agencies shall use one or more Home Health Agencies, Individual Nurse Providers, or any combination thereof.

iii.  Provide a statement that Comprehensive Care Management Services include, but are not limited to:

    A.  requesting from DHCS and, upon receipt, providing class members with information about the number of Private Duty Nursing hours that they are approved to receive;

    B.  contacting enrolled Home Health Agencies and enrolled Individual Nurse Providers to seek Private Duty Nursing services on the class member's behalf, if the class member has been approved to receive Private Duty Nursing services as an EPSDT benefit;

    C.  identifying and assisting potentially eligible Home Health Agencies and Individual Nurse Providers with navigating the process of enrolling to be a Medi-Cal provider;

    D.  working with Home Health Agencies and enrolled Individual Nurse Providers to jointly provide Private Duty Nursing services to a class member as needed.

iv.   Require that the Waiver Agency promulgate new or revised policies and procedures that result from this notice, and provide copies of such policies and procedures to DHCS for review and approval.

10

v. Require that the Waiver Agency issue a notice to class members who are participants in the HCBA Waiver, and who are not enrolled in CCS or a Managed Care Plan, fully explaining their rights regarding receipt of Comprehensive Care Management Services through the Waiver Agency, including a description of the Comprehensive Care Management Services available to class members as set forth in this Settlement Agreement and explanation of how to access those services. The notice shall include a statement that class members may file grievances with their Waiver Agency to address their dissatisfaction with Comprehensive Care Management Services, or file a Medi-Cal fair hearing as provided by law, or email DHCS directly at EPSDT@dhcs.ca.gov. The notice shall also include a statement that if class members have questions about their legal rights regarding Private Duty Nursing services, they may contact Disability Rights California at (888) 852-9241.

24. Designation of Primary Case Management Entity for Approved Private Duty Nursing Services

a. For a class member enrolled in a Managed Care Plan, including a Whole Child Model Program, where the Managed Care Plan has approved the class member's Private Duty Nursing services, the Managed Care Plan has primary responsibility to provide Case Management for approved Private Duty Nursing services.

b. For a class member for whom CCS has approved Private Duty Nursing Services for treatment of a CCS condition, the CCS Program has primary responsibility to provide Case Management for approved Private Duty Nursing services.

c. For a class member who receives Private Duty Nursing services not approved by a Managed Care Plan or CCS, and who is also a recipient of

11

Medi-Cal benefits through the Home and Community Based Alternatives Waiver, the Waiver Agency has primary responsibility to provide Case Management Services for approved Private Duty Nursing services.

    d.  For a class member who receives Private Duty Nursing through Medi-Cal on a fee-for-service basis, but is not a participant in CCS, a Managed Care Plan or the HCBA Waiver, providers shall be permitted to bill Medi-Cal for case management for approved Private Duty Nursing services. Within 180 days of the Effective Date of Settlement, Defendants will publish a Provider News Flash (bulletin) advising providers that they are permitted to bill Medi-Cal for case management for approved Private Duty Nursing for a class member who receives Medi-Cal through the Fee-For-Service Medi-Cal delivery model.

25.    Regardless of which Medi-Cal program entity has primary responsibility for providing Case Management for the approved Private Duty Nursing services, the class member and/or the class member's personal representative may contact any Medi-Cal program entity that the class member is enrolled in (which may be a Managed Care Plan, CCS, or the Home and Community Based Alternatives Waiver Agency) to request Case Management for Private Duty Nursing services. The contacted Medi-Cal program entity must then provide Case Management Services to the class member as set forth in this Settlement Agreement and work collaboratively with the Medi-Cal program entity primarily responsible for Case Management, except where a class member has opted to self-direct his or her own care by choosing the non-CCS, non-Waiver fee-for-service Medi-Cal delivery model.

26.    <u>Seeking Assistance from DHCS</u>

The DHCS point of contact for questions or concerns regarding the Case Management of Private Duty Nursing services, regardless of service delivery model, will be EPSDT@dhcs.ca.gov. Within five business days of receipt of an email, DHCS shall:

    a.    Forward the message to the appropriate delivery system program;

1        b.        Respond to the sender, acknowledge receipt of the message, provide the

2  contact information for the appropriate delivery system program, describe any action taken in

3  response to the inquiry, and notify the sender that, if the issue is not resolved, that the sender

4  should notify DHCS. If the sender notifies DHCS that the issue is not resolved, DHCS shall take

5  other actions DHCS deems appropriate to assist the sender to resolve the issue.

6      27.   <u>Providing Information to Plaintiffs</u>

7        a.        DHCS shall provide Plaintiffs' counsel with drafts of the All Plan Letters

8  to Managed Care Plans and CCS Numbered Letters, identified in Paragraphs 21 and 22 above, for

9  review prior to release for public comment.  Plaintiffs' counsel shall have 10 days from the date

10  of receipt to provide comments to DHCS. DHCS shall consider Plaintiffs' counsel's comments in

11  finalizing the Letters.

12        b.        DHCS shall provide Plaintiffs' counsel with a draft of the Notice to all

13  Waiver Agencies, as identified in Paragraph 23 above, for review and comment prior to issuance

14  of the final document.  Plaintiffs' counsel shall have 10 days from the date of receipt to provide

15  input to DHCS. DHCS shall consider Plaintiffs' counsel's comments in finalizing the Letters.

16        c.        DHCS shall provide Plaintiffs' counsel with copies of all new or revised

17  Managed Care Plan, CCS, and Waiver Agency policies and procedures that DHCS approved in

18  response to the All Plan Letters, Numbered Letters and Notice to Waiver Agencies described

19  above in Paragraphs 21, 22 and 23.

20        d.        Pursuant to this Settlement Agreement, DHCS shall:

21            i.  Make publicly available the results of DHCS audits of

22                Managed Care Plans for compliance with the Case

23                Management Services provisions in the Settlement Agreement

24                pursuant to Paragraph 21.b of the Settlement Agreement,

25                including Closed Corrective Action Plans;

26           ii.  On a quarterly basis for the 12 months following final approval

27                of the Settlement Agreement, provide Plaintiffs' counsel with

28

13

aggregate data regarding email communications to

EPSDT@dhcs.ca.gov that concern Private Duty Nursing

services for EPSDT beneficiaries, including the number of

inquiries received, the number of class members those inquiries

concern, an assessment of the nature of the inquiries by

categories to be developed by DHCS, and the delivery systems

the inquiries are referred to;

 iii. Meet with class counsel, as designated in Paragraph 33.a of the

Settlement Agreement by telephone, once following the second

quarterly report required by Paragraph 27.d.ii, and once

following the third quarterly report required by Paragraph

27.d.ii. In addition, Plaintiffs' counsel may contact

Defendants' counsel at the Office of the Attorney General if

questions or concerns regarding implementation of the

Settlement Agreement arise.

28. <u>Specific Relief for Named Plaintiffs</u>

DHCS shall expedite the assumption of responsibility by named Plaintiffs' respective delivery systems for Case Management of their approved Private Duty Nursing services. Until the appropriate entity assumes responsibility pursuant to this Paragraph, Kevin Donohue, Senior Assistant Chief Counsel, or his designee, shall serve as a point of contact, who will be responsible for working with named Plaintiffs to resolve issues and questions related to the authorization and/or staffing of their Private Duty Nursing Services. The DHCS point of contact shall respond to issues or questions from Plaintiffs within 5 business days of a request for assistance.

29. <u>Attorneys' Fees and Costs</u>

Plaintiffs will seek, and Defendants agree not to oppose, Plaintiffs' request to the Court for $435,000 for attorneys' fees and costs incurred by Plaintiffs in litigating this lawsuit. Upon service of an order awarding fees, Defendants agree to seek an appropriation and budget authority

14

1    for the $435,000 amount during the next available budget cycle, within the Governor's Proposed

2    Budget Process for the applicable State Fiscal Year.  After DHCS obtains an appropriation or

3    budget authority, as applicable, and once the funds are available to be processed, DHCS agrees to

4    submit payment in the amount of $435,000 to Disability Rights California.  Plaintiffs have

5    requested that Defendants shall make payment by check payable to Disability Rights

6    California.  Within 15 days of the Court's order granting fees and costs, Plaintiffs' counsel will

7    complete and return to Defendants the form entitled "Payee Data Record" (standard form

8    204), that gives the name, address, and tax identification number of Disability Rights California

9    for tax reporting purposes.  If payment is not made within 90 days of the effective date of the

10   appropriation or budget authority obtained by DHCS, whichever is sooner, DHCS shall be

11   responsible to pay interest on the payment, pursuant to Civil Code section 3287, subdivision

12   (c), from 90 days after the effective date of the appropriation or budget authority obtained by

13   DHCS, as applicable, until the date payment is rendered in full.  Plaintiffs agree that any payment

14   pursuant to this paragraph is contingent upon DHCS obtaining the necessary appropriation and

15   budget authority.  Plaintiffs agree that the payment of the amount ordered by the Court shall

16   constitute full and complete satisfaction of all attorneys' fees and costs arising out of this lawsuit,

17   and upon receipt of this payment, Plaintiffs release Defendants from any further liability for

18   Plaintiffs' attorneys' fees and costs.

19                          IV.    **RELEASE**

20        30.      Upon final approval of this Settlement Agreement, pursuant to Federal Rule of

21   Civil Procedure 23(e), individual named Plaintiffs I.N. and J.B. hereby forever and fully release

22   any and all claims, damages, liabilities, rights, and complaints as set forth or asserted in the

23   Notice of Intent to Sue dated November 9, 2017, the Complaint, and the First Amended

24   Complaint, against Defendants Jennifer Kent, in her official capacity as director of DHCS, and

25   DHCS, up to and including the execution date of this Settlement Agreement.  Further, upon final

26   approval of this Settlement Agreement pursuant to Federal Rule of Civil Procedure 23(e), class

27   members, forever and fully release any and all claims, either in law or equity, set forth in the

28

1   Complaint and First Amended Complaint, against Defendants Jennifer Kent, in her official

2   capacity as director of DHCS, and DHCS, up to and including the execution date of this

3   Settlement Agreement.

4       31.     The terms in this Settlement Agreement that do not explicitly state an expiration

5   date or event are intended to continue unless and until new law provides otherwise.

6       32.     Upon final approval of this Settlement Agreement, individual Named Plaintiffs I.N.

7   and J.B. and class members agree not to file or prosecute any legal action or proceeding based on,

8   or arising out of, any of the claims released by Paragraph 30.  The Settlement Agreement shall not

9   limit or broaden the entitlement to services, including Individual Named Plaintiff I.N. and J.B.'s

10  right, or the rights of the members of the Class, as defined in Paragraph 20 of this Settlement

11  Agreement, to request a Medi-Cal fair hearing based on the denial or modification of services,

12  including Private Duty Nursing services, or restructure the provision of services to individuals

13  under Medi-Cal, the Medicaid Act, the Medicaid State Plan, or any other provision of state or

14  federal law.

15              **V.    SETTLEMENT PROCEDURES**

16      33.    Joint Application for Preliminary Approval

17          a.     Solely for the purpose of effectuating this Settlement Agreement, and

18  subject to Court approval, the Parties hereby stipulate to the Settlement Class as defined in

19  Paragraph 20 of the Settlement Agreement, and to the appointment by the Court of class counsel

20  for purposes of implementing and monitoring this Agreement.

21          b.     The parties will jointly prepare an application for Preliminary Approval

22  with the Court and take all other steps necessary to request a fairness hearing pursuant to Rule

23  23(e) of the Federal Rules of Civil Procedure, and to seek the Court's preliminary approval of the

24  Settlement Agreement.

25          c.     If the Court withholds its preliminary approval of this Settlement

26  Agreement or the settlement for any reason, or if any motions or appeals are filed by third parties

27  prior to court approval, the Parties shall meet and confer to determine whether this Settlement

28

16

1   Agreement can be amended or modified in a manner so as to secure the Court's approval.  If this
2   is not attainable, this Settlement Agreement shall be null and void.

3       34.     Notice to Class

4       Upon the Court's granting of preliminary approval of the settlement and the Settlement

5   Agreement, the Parties will provide notice to the Settlement Class in a manner agreed upon by the

6   Parties and ordered by the Court pursuant to Federal Rule of Civil Procedure 23(e) and the

7   Northern District's "Procedural Guidance for Class Action Settlement" updated November 1,

8   2018 and December 5, 2018.  Pursuant to this Rule and Guidance, the notice to the Settlement

9   Class shall describe the Settlement Agreement, the process for filing written objections, and shall

10  include the date for the fairness hearing.  The notice shall be sent by Defendants, who shall

11  consult with Plaintiffs' counsel prior to distribution of the notice to the Settlement Class.

12  Additionally:

13      a.      All notices will be in plain language, and will be available in the threshold

14  and concentration standard languages identified by DHCS pursuant to subdivision (b) of section

15  14029.91 of the California Welfare and Institutions Code.

16      b.      The notice of proposed settlement will be available in alternative formats

17  upon request, including large print, audio, and Braille, as feasible.

18      c.      DHCS and Disability Rights California will post the notice of proposed

19  settlement on their respective websites.

20      35.     Joint Application for Final Approval

21      The parties will jointly prepare an application for Final Approval with the Court pursuant to

22  Rule 23(e) of the Federal Rules of Civil Procedure, and seek the Court's final approval of the

23  Settlement Agreement.

24      36.     Dismissal & Continued Jurisdiction

25      Within 30 days of the Effective Date of the Settlement Agreement, the parties shall jointly

26  ask the Court to dismiss this action and to retain jurisdiction over this matter for the purpose of

27  ensuring compliance with the terms of the Settlement Agreement.  The parties agree to request

28

1   that the Court retain jurisdiction until 9 months after the date on which the All Plan Letter

2   required by Paragraph 21.a, the CCS Numbered Letter required by Paragraph 22.a, and the Notice

3   to all Waiver Agencies required by Paragraph 23.a, have all been issued by the Defendants, after

4   which time the Court's jurisdiction will expire.  However, nothing shall prevent the Parties from

5   agreeing to, or the Court ordering, continued performance by Defendants beyond this date if

6   Defendants have failed to perform as required prior to that date.

7       37.   Dispute Resolution Process

8       Before filing any motion or lawsuit to enforce the terms of this Settlement Agreement, the

9   Party seeking relief shall contact counsel for the opposing party to discuss thoroughly, preferably

10   in person, the substance of the contemplated motion and any potential resolution. If either party

11   determines that the dispute cannot be resolved informally, the parties shall complete at least one

12   conference with Magistrate Judge Jacqueline Corley, her designee, or another mutually agreeable

13   mediator.  If the conference is not successful, then any motion to enforce shall not be filed until

14   thirty (30) days after the conference. Notwithstanding the above, if either party believes that

15   irreparable harm will occur to it by pursuing the process set forth above, the party must contact

16   Magistrate Judge Corley and confer with her or her designee before filing any motion or lawsuit

17   to enforce the terms of this Settlement Agreement. This dispute resolution process is separate

18   from and in addition to due process grievance and hearing procedures, available for resolution of

19   individual disputes regarding eligibility and/or appropriateness of services and benefits based on

20   need.

21       Notice required in the paragraph above shall be given by delivering it, in person or by

22   United States certified first class mail, and via electronic mail, to the parties' counsel of record in

23   this litigation, as follows:

24   For Defendants Department of Health Care Services and Jennifer Kent:

25       Carolyn O. Tsai
26       ATTORNEY GENERAL'S OFFICE
         455 Golden Gate Avenue, Suite 11000
27       San Francisco, CA 94102-7004
         Attorneys for Defendants
28       Carolyn.Tsai@doj.ca.gov

18

Settlement Agreement (3:18-cv-03099 WHA)

For Plaintiffs:

> William Leiner
> DISABILITY RIGHTS CALIFORNIA
> 1330 Broadway, Suite 500
> Oakland, CA 94612
> Attorneys for Plaintiffs
> william.leiner@disabilityrightsca.org

## VI.   ADDITIONAL PROVISIONS

38.     This is a settlement of disputed claims, and the Parties agree that, in entering into this Settlement Agreement, neither concedes its position. Nothing in this Settlement Agreement shall be interpreted or construed by a court as an admission by any party. This Settlement Agreement does not constitute an adjudication or finding on the merits of the claims alleged in the Plaintiffs' pleadings.

39.     The interpretation and enforcement of this Settlement Agreement is governed by federal law.

40.     It is further agreed by and between and among the Parties that this document constitutes the sole, entire, and complete agreement between the parties to resolve the claims set forth in this action. The terms set forth in this Settlement Agreement constitute the entire Settlement Agreement and are not subject to modification or waiver except by a writing signed by all of the Parties through their respective counsel.

41.     This Settlement Agreement may be executed through the use of two or more counterparts, each of which will be deemed an original, and together shall constitute one written instrument. Photographic or facsimile copies of signed counterparts may be used in lieu of the originals for any purpose and shall have the same force and effect as an original ink signature.

42.     This Settlement Agreement shall be signed by each of the Parties and their counsel. The undersigned represent that they have the full power and authority to execute this Settlement Agreement and to bind the parties.

19

1       43.      The Parties represent that they had the opportunity to consult and rely upon the

2   legal advice of their choice, and that the terms of this Settlement Agreement have been read and

3   the consequences (including risks, complications, and costs) have been completely understood by

4   each party and explained by their respective counsel.  The parties further acknowledge that, in

5   executing this Settlement Agreement, they have not relied on any inducements, promises or

6   representations other than those stated in the Settlement Agreement.

7       44.      This Settlement Agreement encompass the entire agreement of the Parties, and

8   supersedes all previous understandings and agreements between the Parties, whether oral or

9   written.  No prior versions of this Settlement Agreement, or written proposals of any party, are

10   admissible in any courts or for any purpose, including, but not limited to, use to interpret the

11   meaning of this Settlement Agreement.

12       45.      Should any provision of this Settlement Agreement be held invalid or illegal, such

13   illegality shall not invalidate the whole of this Settlement Agreement, but the Settlement

14   Agreement shall be construed as if it did not contain the illegal party, and the rights and

15   obligations of the parties shall be construed and enforced accordingly.

16       46.      None of the Parties shall be considered to be the drafter of this Settlement

17   Agreement for the purpose of any statute, case law, or rule of interpretation or construction that

18   would or might cause any provision to be construed against the drafter.  This Settlement

19   Agreement was drafted with substantial input by all Parties and their counsel, and no reliance was

20   placed on any representations other than those contained herein.

21       47.      To the extent the applicable law, legal requirements, or circumstances change,

22   such that any settlement term is rendered void or unenforceable, the law shall control over the

23   settlement terms.

24       48.      Nothing in this Settlement Agreement shall affect the rights of class members with

25   respect to other Medi-Cal benefits to which they may be entitled.

26

27   **IT IS SO STIPULATED AND AGREED.**

28

DATED: _____          DATED: _____

_____          _____
ALISA B., Guardian ad Litem for     ZARINAH F, Guardian ad Litem
Plaintiff J.B.                       for Plaintiff I.N.


DATED: 2/28/19                   DATED: 2/28/19
Jared Goldman for

_____          _____
Defendant JENNIFER KENT           Defendant CALIFORNIA
Director of the California Department of   DEPARTMENT OF
Health Care Services              HEALTH CARE SERVICES

DATED: _____

_____
WILLIAM LEINER
Attorney for Plaintiffs

**APPROVED AS TO FORM:**

DATED: 2/28/19

_____
CAROLYN O. TSAI
Attorney for Defendants

DATED: 2/28/19                          DATED: _____

_____              _____
ALISA B., Guardian ad Litem for        ZARINAH F, Guardian ad Litem
Plaintiff J.B.                         for Plaintiff I.N.


DATED: _____                DATED: _____

_____              _____
Defendant JENNIFER KENT                 Defendant CALIFORNIA
Director of the California Department of DEPARTMENT OF
Health Care Services                    HEALTH CARE SERVICES

DATED: 2/26/19

_____
WILLIAM LEINER
Attorney for Plaintiffs

**APPROVED AS TO FORM:**

DATED: _____

_____
CAROLYN O. TSAI
Attorney for Defendants

1   DATED: _____                    DATED: 2/28/2019

2   _____                   _____
    ALISA B., Guardian ad Litem for            ZARINAH F, Guardian ad Litem
3   Plaintiff J.B.                             for Plaintiff I.N.

4

5   DATED: _____                    DATED: _____

6

7   _____                   _____
    Defendant JENNIFER KENT                    Defendant CALIFORNIA
8   Director of the California Department of    DEPARTMENT OF
    Health Care Services                       HEALTH CARE SERVICES
9

10  DATED: _____

11

12  _____
    WILLIAM LEINER
13  Attorney for Plaintiffs

14  **APPROVED AS TO FORM:**

15  DATED: _____

16

17  _____
    CAROLYN O. TSAI
18  Attorney for Defendants

19

20

21

22

23

24

25

26

27

28

## <u>EXHIBIT B</u>

*I. N., et al. v. Jennifer Kent, et al.*
Case No. 3:18-CV-03099-WHA


**Resume for William Leiner**

# <u>EXHIBIT B</u>

**WILLIAM J. LEINER**

EDUCATION   **University of California, Hastings College of the Law**,
J.D., May 2007
**University of California, Los Angeles**, B.A. Psychology, June
2001

BAR   California Bar Admittance, April 2008

PROFESSIONAL EXPERIENCE

**Disability Rights California**, Oakland, CA (2008-present)
Managing Attorney

- Supervise and mentor attorneys in administrative hearings, litigation, policy and legislative advocacy.
- Represent clients with disabilities in negotiations, mediations, administrative hearings, and other legal proceedings arising out of the Medicaid Act, Lanterman Developmental Disabilities Services Act, and Title II of the Americans with Disabilities Act.
- Analyze disability-related legislation related to individuals with developmental disabilities, make support/oppose recommendations in response to proposed legislation, draft legislation as necessary, and assist policy staff to advocate for legislative action.
- Participate on stakeholder meetings consisting of State and local governmental agencies regarding access to home and community-based services.
- Provide intake, assessment, legal advice, and technical assistance to callers.

**The Early Childhood Center Foundation,** Los Angeles, CA (2001-2004)
Program Evaluator

- Coordinated the data collection and analysis of an infant mental health training program to 19 social service agencies in Los Angeles County.
- Partnered with clinical psychologists at Cedars-Sinai Medical Center to design a research-based treatment protocol for a children's mental health clinic.
- Compiled and analyzed outcome data in order to help staff refine treatment plans to meet program objectives and write grant proposals to expand the clinical program.

## <u>EXHIBIT C</u>

*I. N., et al. v. Jennifer Kent, et al.*
Case No. 3:18-CV-03099-WHA

**Resume for Elissa Gershon**

# <u>EXHIBIT C</u>

## ELISSA S. GERSHON

EDUCATION      **The University of California, Hastings College of the Law**,
J.D., May 1993
**Tufts University**, B.A. Political Science, May 1988

BAR            California Bar Admittance, January 1994

PROFESSIONAL EXPERIENCE

**Disability Rights California**, Oakland, CA (1997-present)
Litigation Counsel
- Oversee agency health care litigation including cases involving Americans with Disabilities Act, *Olmstead,* and Medicaid claims.
- Lead class action litigation in federal court on behalf of large classes of indigent Medicaid recipients.  As lead counsel, responsibilities include:  coordinating activities of litigation team (including several outside law firms); leading research, discovery, motion practice and court appearances; directing work with experts; coordinating settlement and appeal efforts; negotiating with opposing counsel; coordinating national media efforts; ensuring successful individual client representation.
- Supervise and mentor attorneys in administrative hearings, litigation, policy and legislative advocacy.
- Participate in local and state-level advocacy for improved implementation of HCBS Waivers, community-based service delivery, and closure of developmental centers, including testifying at hearings and meeting with State officials and legislative staff regarding legislation and policy recommendations.
- Litigate Medi-Cal and IHSS hearings and writs of mandate.
- Provide analysis, comments, and testimony on regulations and legislation.
- Provide intake, assessment, legal advice, and technical assistance to callers.
- Conduct outreach and training to community groups and individuals.
- Participate in workgroups, service planning and federal reporting efforts.

**Hogar de Esperanza**, Quetzaltenango, Guatemala
*Social Worker*, April-December 1996

**Child Care Law Center**, San Francisco, CA
*Staff Attorney*, February 1994-February 1996

LANGUAGES      Proficient in spoken and written Spanish.

# <u>EXHIBIT D</u>

*I. N., et al. v. Jennifer Kent, et al.*
Case No. 3:18-CV-03099-WHA

**Disability Rights California
Attorney Time Logs**

# <u>EXHIBIT D</u>

**I. N., et al. v. Jennifer Kent, et al.**                    **Attorney Work Product**

**DRC ATTORNEY TIME**

| Attorney | Date | Time Entry Note | Actual Time | Revised Time |
|---|---|---|---|---|
| E. Gershon | 04/01/17 | Review and edit draft complaint | 1.3 | 0.0 |
| E. Gershon | 09/23/17 | Review and edit draft complaint | 0.8 | 0.8 |
| E. Gershon | 01/19/18 | Edit list of barriers for demand letter | 0.6 | 0.6 |
| E. Gershon | 01/25/18 | Call with S. Somers re prep for DHCS call | 0.5 | 0.0 |
| E. Gershon | 01/26/18 | Call with S. Somers re DHCS meeting, meet with W. Leiner re same, review email re same | 0.6 | 0.6 |
| E. Gershon | 02/28/18 | Call with S. Somers re prep for call with DHCS | 0.6 | 0.0 |
| E. Gershon | 04/19/18 | Call with S. Somers re debrief from DHCS call | 0.3 | 0.0 |
| E. Gershon | 04/30/18 | Review and edit complaint, plaintiff family declarations | 1.5 | 0.0 |
| E. Gershon | 05/17/18 | Call with S. Enan re case management, research re same, meet with W. Leiner re same | 1.5 | 0.0 |
| E. Gershon | 07/24/18 | Lit team call re opposition to MTD, meet and confer re 26(f) conference, emails re same, review 26(f) conference statement requirements | 2.2 | 1.1 |
| E. Gershon | 07/25/18 | Lit team call re prep for 26(f) conference | 1.9 | 1.9 |
| E. Gershon | 07/30/18 | Draft list of depo topics in prep for 26(f) meet and confer (.6), review clients for possible witnesses (1.5) | 2.1 | 0.0 |
| E. Gershon | 07/31/18 | Lit team call re MTD and amending complaint (1.2), amend complaint/emails re same (.8), edit depo topics (.4), review draft MTD (.5), emails re meet and confer (.3) | 3.2 | 1.6 |
| E. Gershon | 08/01/18 | Prep for, travel to, and attend 26(f) conference of counsel | 5.5 | 2.8 |
| E. Gershon | 08/06/18 | Draft list of DHCS staff for defendants | 0.8 | 0.0 |
| E. Gershon | 08/08/18 | Edit revised complaint | 0.8 | 0.8 |
| E. Gershon | 08/27/18 | Draft letter to C. Tsai re DHCS records request to HHAs | 1.8 | 1.8 |
| E. Gershon | 08/29/18 | Call with DHCS counsel re 26(f) conf statement, meet and confer re interviews of putative class members, and HHA letter re PHI of clients | 1.4 | 0.0 |
| E. Gershon | 09/03/18 | Edit opposition to motion to dismiss | 1.2 | 1.2 |
| E. Gershon | 09/05/18 | Edit opposition to Motion to Dismiss, call with S. Somers re same (2.2), draft email to C. Tsai re draft protocol for interviewing putative class members/review protocol and meet with W. Leiner re same (.9), meet with A. Galang and W. Leiner re client updates re class member calls from DHCS (.4), meet with W. Leiner re prep for CMC and draft protocol for interviewing putative class members (.8), edit draft protective order (.4) | 4.7 | 0.0 |
| E. Gershon | 09/06/18 | Travel to and attend Case Management Conference | 3.0 | 0.0 |
| E. Gershon | 09/06/18 | Edit and finalize opp to MTD | 0.8 | 0.8 |
| E. Gershon | 09/11/18 | Call with R. Newman re ESI, protective order, asking for contact info of putative class members (.7), email to E. Cervantez re ESI (.1), edit protocol for putative class members (.4), call with W. Leiner re same (.3) | 1.5 | 0.0 |
| E. Gershon | 09/14/18 | Call with C. Tsai re protective order and protocol re putative class members, call with W. Leiner re same (.5), review protocol edits with W. Leiner (.3), review updated plaintiff chart (.3), draft notice for putative class member interviews (.6) | 1.7 | 0.0 |
| E. Gershon | 09/26/18 | Edit depo notice of DHCS, emails re same | 0.4 | 0.4 |
| E. Gershon | 09/27/18 | Finalize meet and confer letter and depo notice, call with S. Enan re same | 0.8 | 0.0 |
| E. Gershon | 10/05/18 | Call with Magistrate Corley re settlement, conf plans, meet with W. Leiner re same | 0.7 | 0.0 |

I. N., et al. v. Jennifer Kent, et al.                    **Attorney Work Product**

DRC ATTORNEY TIME

| Attorney | Date | Time Entry Note | Actual Time | Revised Time |
|---|---|---|---|---|
| E. Gershon | 10/08/18 | Call with R. Schwartz, R. Newman, W. Leiner, S. Enan re meet and confer, class cert needs, etc. | 1.9 | 1.9 |
| E. Gershon | 10/15/18 | Call with Magistrate Judge Corley re settlement conference (.2), calls with W. Leiner re same (.3), emails re same (.2) | 0.7 | 0.0 |
| E. Gershon | 10/16/18 | Lit team call (1.2), calls with R. Schwartz and W. Leiner re discovery letter to Judge Alsup, emails re same (.9), call with Magistrate Judge Corley re settlement conference, review order re same (.4) | 2.5 | 0.0 |
| E. Gershon | 10/18/18 | Draft list of topics/docs for meet and confer | 2.2 | 2.2 |
| E. Gershon | 10/20/18 | Review and edit discovery responses | 3.2 | 3.2 |
| E. Gershon | 10/22/18 | Review and edit responses to Defs RFP to plaintiff JB | 0.6 | 0.6 |
| E. Gershon | 10/24/18 | Retrieve documents for Luxemberg depo, review | 1.2 | 1.2 |
| E. Gershon | 10/25/18 | Travel to and attend pre-settlement meeting with DHCS | 4.5 | 4.5 |
| E. Gershon | 10/28/18 | Prep for depo of Rachel Luxemberg, call with A. Galang re same | 5.5 | 5.5 |
| E. Gershon | 10/29/18 | Travel to and take deposition of Rachel Luxemberg | 12.5 | 12.5 |
| E. Gershon | 10/30/18 | Edit settlement conference statement/settlement proposal, call with S. Somers and W. Leiner re same, emails re same (2.5) | 2.5 | 0.0 |
| E. Gershon | 11/01/18 | Prep for settlement conference, call with S. Somers re same, create chart of case management/PDN programs | 2.5 | 0.0 |
| E. Gershon | 11/02/18 | Settlement conference, travel to/from | 10.8 | 5.0 |
| E. Gershon | 11/16/18 | Review Defs. Settlement proposal. Email re same | 0.4 | 0.0 |
| E. Gershon | 11/19/18 | Call with S. Somers and W. Leiner re settlement response | 0.5 | 0.0 |
| E. Gershon | 11/25/18 | Edit Defs settlement proposal, emails re same | 2.5 | 2.5 |
| E. Gershon | 11/28/18 | Edit settlement proposal, emails re same, call with W. Leiner re same, research authorities for private duty nursing and plans of treatment re same | 3.2 | 3.2 |
| E. Gershon | 11/29/18 | Meet with W. Leiner to prep for settlement conference | 0.6 | 0.0 |
| E. Gershon | 11/30/18 | Travel to and attend settlement conference, including prep meeting with co-counsel in advance | 8.3 | 4.0 |
| E. Gershon | 12/05/18 | Review W. Leiner summary of settlement conference | 0.2 | 0.0 |
| E. Gershon | 12/10/18 | Revise fees log, draft fee demand to C. Tsai | 1.5 | 1.5 |
| E. Gershon | 12/10/18 | Update and edit time logs for fee demand, edit R. Yang time | 1.5 | 1.5 |
| E. Gershon | 12/11/18 | Review and edit settlement terms sections, revise fees log, meet with E. Bates re same, emails with team re same | 1.5 | 0.0 |
| E. Gershon | 12/11/18 | Co-counsel call re updates and settlement terms | 0.5 | 0.0 |
| E. Gershon | 12/13/18 | Edit and revise fee demand and fees/cost chart | 1.5 | 1.5 |
| E. Gershon | 12/14/18 | Finalize fee demand chart and cover letter | 1.2 | 1.2 |
| E. Gershon | 12/16/18 | Review and edit settlement proposal | 1.2 | 0.0 |
| E. Gershon | 12/18/18 | Review and redact time logs for production to Defendants | 2.5 | 2.5 |
| E. Gershon | 12/19/18 | Finalize review and redaction of time records, draft email to C. Tsai re time records (1.2), review W. Leiner emails re settlement proposal edits and process (.4), meet with W. Leiner re same (.3 | 1.9 | 1.9 |
| E. Gershon | 12/21/18 | Settlement conference, including travel and prep meeting with W. Leiner | 7.0 | 3.5 |
| E. Gershon | 12/22/18 | Side by side comparison of Plaintiffs' 12/19 settlement agreement draft and Defs 12/21 merged version | 2.5 | 2.5 |
| E. Gershon | 12/28/18 | Annotate merged version of settlement agreement, send to W. Leiner | 1.5 | 1.5 |
| E. Gershon | 01/08/19 | Lit team call | 0.7 | 0.7 |

**I. N., et al. v. Jennifer Kent, et al.**

**Attorney Work Product**

**DRC ATTORNEY TIME**

| Attorney | Date | Time Entry Note | Actual Time | Revised Time |
|---|---|---|---|---|
| E. Gershon | 01/11/19 | DRC lit team call re settlement update and proposed depo dates (.5), meet with W. Leiner re fees update and email to R. Newman re same (.3) | 0.8 | 0.0 |
| E. Gershon | 01/15/19 | Lit team call re settlement and fees | 1.4 | 0.0 |
| E. Gershon | 01/17/19 | Call with W. Leiner and R. Newman re settlement, call with W. Leiner re settlement issues, review draft re opposing counsel re settlement edits, edit draft settlement agreement re case management provisions | 2.5 | 0.0 |
| E. Gershon | 01/21/19 | Research attorney fee rates, prep for settlement negotiation | 1.0 | 1.0 |
| E. Gershon | 01/21/19 | Edit settlement agreement re case management | 1.6 | 1.6 |
| E. Gershon | 01/22/19 | Settlement conference inc. travel, prep, pre-call with DHCS. | 12.3 | 6.0 |
| E. Gershon | 01/23/19 | Edit settlement agreement to include agreed-upon changes and suggested new language | 0.8 | 0.8 |
| E. Gershon | 01/23/19 | Meet with W. Leiner re dates for prelim and final approval | 0.4 | 0.0 |
| E. Gershon | 01/24/19 | Meet with W. Leiner re final settlement changes | 0.6 | 0.6 |
| E. Gershon | 01/28/19 | Meet with W. Leiner re staffing for prelim approval, emails re same | 0.4 | 0.0 |
| E. Gershon | 02/10/19 | Review and edit motion for prelim approval of settlement, parent dec re same | 1.2 | 0.0 |
| E. Gershon | 02/11/19 | Review and edit motion for class cert, prelim approval, emails re same | 1.5 | 0.0 |
| E. Gershon | 02/12/19 | Lit team call re settlement and prelim approval | 0.5 | 0.5 |
| E. Gershon | 02/13/19 | Call with P. Gonzalez re class cert questions, legal research and emails re same | 0.8 | 0.0 |
| E. Gershon | 02/13/19 | Review and edit motion for class cert, prelim approval, draft section re fees, emails re same | 1.2 | 0.6 |
| E. Gershon | 02/14/19 | Review and edit class notice | 0.4 | 0.0 |
| E. Gershon | 02/15/19 | Call with Defs counsel re prelim approval motion (.5), meet with W. Leiner/review email to Defs re same (.6) | 1.1 | 1.1 |
| E. Gershon | 02/15/19 | Research timing, requirements for fees motion, emails with Impact Fund re same, email to team re same | 1.2 | 1.2 |
| E. Gershon | 02/18/19 | Research, review and edit decs iso prelim approval, emails with W. Leiner re same | 1.5 | 1.5 |
| E. Gershon | 02/19/19 | Lit team call re settlement status (.5), calls/emails with R. Newman re same (.4), draft/review emails to Defendants and Judge Corley (.4), v/m to Judge Corley (.1) | 1.4 | 0.0 |
| E. Gershon | 02/20/19 | Meet with W. Leiner re settlement status, review draft class notice, calls with Judge Corley clerk, review emails, etc. | 0.8 | 0.0 |
| E. Gershon | 02/20/19 | Call with Judge Corley re release language, etc., meet with W. Leiner re same | 0.8 | 0.0 |
| E. Gershon | 02/20/19 | Review and edit Defs and W. Leiner edits to class notice. | 0.4 | 0.0 |
| E. Gershon | 02/21/19 | Call with lit team re release language, draft and review new release language and emails re same, etc. | 1.5 | 0.0 |
| E. Gershon | 02/26/19 | Lit team call re release issues, edit W. Leiner email to Defs, meet with W. Leiner re same | 1.5 | 0.0 |
| E. Gershon | 02/27/19 | Draft proposed release language, edit W. Leiner email to Defs, emails with lit team re same, calls with W. Leiner re same | 1.4 | 1.0 |
| E. Gershon | 02/27/19 | Call with Judge Corley re release, etc. (1.3), edit declarations for class cert, emails re same | 3.5 | 2.2 |
| E. Gershon | 02/28/19 | Edit and finalize motion for class cert, decs in support, motion for prelim approval, class notice, etc. | 9.0 | 4.5 |

**I. N., et al. v. Jennifer Kent, et al.**                    **Attorney Work Product**

**DRC ATTORNEY TIME**

| Attorney | Date | Time Entry Note | Actual Time | Revised Time |
|---|---|---|---|---|
| E. Gershon | 03/14/19 | Meet with W. Leiner re communication with Defs re response to class cert; review Defs filing, emails re same | 0.8 | 0.0 |
| E. Gershon | 03/18/19 | Research cases re adequacy of counsel | 1.5 | 1.5 |
| E. Gershon | 03/19/19 | Meet with W. Leiner re response to Defs class cert brief, emails re same | 0.8 | 0.0 |
| E. Gershon | 03/20/19 | Review and edit response to Defs. class cert brief, emails re same | 1.5 | 0.0 |
| E. Gershon | 03/21/19 | Review and edit response to Defs. class cert brief, emails re same | 0.6 | 0.0 |
| | | **SUBTOTALS** | **190.2** | **103.1** |
| | | | | |
| W. Leiner | 09/13/16 | Review case file to prepare for litigation team call. | 1.8 | 0.0 |
| W. Leiner | 09/14/16 | Case planning meeting; review materials in preparation for same. | 3.0 | 3.0 |
| W. Leiner | 09/15/16 | Litigation team meeting to discuss EPSDT nursing case; prepare for same. | 2.3 | 2.3 |
| W. Leiner | 09/28/16 | Litigation planning meeting; prepare and send agenda for same. | 2.0 | 2.0 |
| W. Leiner | 09/29/16 | Circulate notes and actions items from 9/28 meeting. | 0.5 | 0.0 |
| W. Leiner | 10/03/16 | Finalize draft agenda for call with NHeLP. | 0.3 | 0.0 |
| W. Leiner | 10/04/16 | Conference call with NHeLP to discuss legal theories. | 1.5 | 1.5 |
| W. Leiner | 10/04/16 | Draft and circulate notes from call with NHeLP | 0.4 | 0.0 |
| W. Leiner | 10/07/16 | Weekly planning meeting. | 1.0 | 1.0 |
| W. Leiner | 10/10/16 | Review and download historical rate documents from DHCS website | 1.5 | 1.5 |
| W. Leiner | 10/14/16 | Weekly planning meeting. | 1.0 | 1.0 |
| W. Leiner | 10/14/16 | Draft memo summarizing DHCS positions re: rates and nursing utilization. | 2.0 | 2.0 |
| W. Leiner | 10/14/16 | Prepare and circulate summary of action items. | 0.3 | 0.3 |
| W. Leiner | 10/19/16 | Draft and circulate questions for S. Somers. | 0.6 | 0.6 |
| W. Leiner | 10/20/16 | Call with S. Somers at NHeLP to discuss delegation issue. | 1.0 | 1.0 |
| W. Leiner | 10/21/16 | Weekly case planning call. | 1.0 | 1.0 |
| W. Leiner | 11/01/16 | Prepare agenda and review documents in preparation for weekly litigation team meeting. | 3.5 | 2.0 |
| W. Leiner | 11/03/16 | Review PRA requests, plaintiff profile, and plaintiff questionnaire in preparation for weekly litigation meeting. | 2.5 | 2.5 |
| W. Leiner | 11/04/16 | Weekly planning meeting with pre-litigation team | 1.2 | 1.2 |
| W. Leiner | 11/09/16 | Edit DHCS public record act requests (.80); meet with K. Spielman re: same (.40) | 1.2 | 1.2 |
| W. Leiner | 11/09/16 | Prepare and draft agenda for 11/9 litigation team meeting. | 0.6 | 0.6 |
| W. Leiner | 11/10/16 | Weekly litigation teal meeting | 1.5 | 1.5 |
| W. Leiner | 11/14/16 | Coordinate plaintiff intake processes with J. Magano and S. Veniez (1.2); develop tracking spreadsheets and circulate for team review (.80) | 2.0 | 0.0 |
| W. Leiner | 11/15/16 | Coordinate finalization of PRAs and client communication strategy. | 0.8 | 0.8 |
| W. Leiner | 11/17/16 | Prepare agenda for weekly litigation team call (.30); Send email to communications team re: communications strategy (.20); Work with IT to establish intake voicemail line (.30) | 0.8 | 0.8 |
| W. Leiner | 11/17/16 | Finalize edits to PRA request to DHCS | 0.4 | 0.4 |
| W. Leiner | 11/18/16 | Weekly pre-litigation team call. | 1.5 | 1.5 |
| W. Leiner | 11/30/16 | Finalize DHCS PRA re: MCOs. | 0.3 | 0.3 |

I. N., et al. v. Jennifer Kent, et al.          **Attorney Work Product**

**DRC ATTORNEY TIME**

| Attorney | Date | Time Entry Note | Actual Time | Revised Time |
|---|---|---|---|---|
| W. Leiner | 12/01/16 | Intake call with potential client (1.2); prepare summary regarding same (.30). | 1.5 | 1.5 |
| W. Leiner | 12/01/16 | Compile and organize intakes from prior week (.30), prepare agenda for weekly litigation team call (.70), coordinate with IT to set up translated intake line (.40), review and respond to emails from OM re: investigation flyer (.20) | 1.6 | 0.0 |
| W. Leiner | 12/01/16 | Client intake call (.80); prepare summary re: same (.30) | 1.3 | 1.3 |
| W. Leiner | 12/02/16 | Weekly litigation team call (1.6); prepare for same (.20) | 1.8 | 1.8 |
| W. Leiner | 12/06/16 | Intake calls (2.3) and prepare summaries re: same (.40). | 2.7 | 2.7 |
| W. Leiner | 12/09/16 | Weekly call with litigation team. | 1.6 | 1.6 |
| W. Leiner | 12/12/16 | Client intake call - SR 1080792 (.70); prepare summary of same (.20) | 0.9 | 0.9 |
| W. Leiner | 12/15/16 | Intake call for SR 1081045 (.80) and prepare summary re: same (.20) | 1.0 | 1.0 |
| W. Leiner | 12/15/16 | Prepare agenda for weekly meeting. | 0.5 | 0.5 |
| W. Leiner | 12/16/16 | Weekly litigation team meeting. | 1.6 | 1.6 |
| W. Leiner | 12/19/16 | Follow up call with possible client (1080792) | 0.8 | 0.8 |
| W. Leiner | 12/20/16 | Intake calls for SRs 1081255 and 1081275 (2.2); prepare notes re: same (.30). | 2.5 | 2.5 |
| W. Leiner | 12/21/16 | Intake call with 1081120 (.80); prepare summary re: same (.20) | 1.0 | 1.0 |
| W. Leiner | 12/27/16 | Follow up case evaluation calls with SRs 1081255 and 1081409. | 2.2 | 2.2 |
| W. Leiner | 12/29/16 | Follow up call with SR 1081275 to discuss case evaluation. | 1.0 | 1.0 |
| W. Leiner | 01/03/17 | Follow up call with [potential client] (1081409) | 1.0 | 1.0 |
| W. Leiner | 01/04/17 | Call with [potential client] (1081255) | 1.0 | 1.0 |
| W. Leiner | 01/09/17 | Draft agenda and compile materials for weekly litigation planning call. | 0.3 | 0.3 |
| W. Leiner | 01/10/17 | Call w/EPSDT litigation team re: status of evaluation and assessment workup and new intakes. | 0.8 | 0.8 |
| W. Leiner | 01/13/17 | Review and respond to emails re: client petition. | 0.6 | 0.6 |
| W. Leiner | 01/20/17 | Call w/E. Dayrit, R. Yang, M. Iriarte, E. Gershon, W. Leiner re: intake and evaluation and assessment process. | 0.7 | 0.7 |
| W. Leiner | 01/26/17 | Review client summaries. | 0.9 | 0.9 |
| W. Leiner | 01/27/17 | Weekly litigation team meeting to discuss PRAs, case summaries, NHeLP, and intake line. | 0.8 | 0.8 |
| W. Leiner | 02/01/17 | Send email to NHeLP with redacted client materials in advance of strategy call. | 0.2 | 0.2 |
| W. Leiner | 02/02/17 | Review and respond to intake scheduling memo. | 0.3 | 0.3 |
| W. Leiner | 02/10/17 | Weekly litigation team call | 1.5 | 1.5 |
| W. Leiner | 02/17/17 | Conference call with R. Yang, K. Spielman, E. Gershon, M. Iriarte re: HHA interviews and other matters. | 1.2 | 1.2 |
| W. Leiner | 02/17/17 | Create and circulate assignment list of contacting hospital discharge planning. | 0.6 | 0.0 |
| W. Leiner | 02/17/17 | Review R. Yang PRA follow up letter to DHCS. | 0.3 | 0.0 |
| W. Leiner | 03/03/17 | Weekly litigation team meeting | 1.6 | 1.6 |
| W. Leiner | 03/10/17 | Week litigation team call. | 1.6 | 1.6 |
| W. Leiner | 03/17/17 | Weekly litigation team call (1.6); prepare agenda for same (.20). | 1.8 | 1.8 |
| W. Leiner | 03/24/17 | Weekly litigation team meeting. | 1.6 | 1.6 |
| W. Leiner | 04/07/17 | Weekly litigation team meeting. | 1.5 | 1.5 |
| W. Leiner | 04/14/17 | Weekly litigation team meeting | 1.5 | 1.5 |
| W. Leiner | 04/28/17 | Weekly litigation team call. | 1.5 | 1.5 |

**I. N., et al. v. Jennifer Kent, et al.**                  **Attorney Work Product**

**DRC ATTORNEY TIME**

| Attorney | Date | Time Entry Note | Actual Time | Revised Time |
|---|---|---|---|---|
| W. Leiner | 05/05/17 | Weekly planning meeting with pre-litigation team. | 0.6 | 0.6 |
| W. Leiner | 05/05/17 | Prepare agenda for weekly EPSDT call. | 0.4 | 0.4 |
| W. Leiner | 05/12/17 | Weekly call with litigation team (.90); prepare for same (.30) | 1.2 | 1.2 |
| W. Leiner | 05/15/17 | Prepare and mail letters to HHAs re: scope of nursing investigation. | 0.6 | 0.6 |
| W. Leiner | 05/19/17 | Weekly call with litigation team. | 0.6 | 0.6 |
| W. Leiner | 05/26/17 | Weekly litigation team call (.80); prepare agenda for same (.20) | 1.0 | 1.0 |
| W. Leiner | 05/30/17 | Review litigation memo to WCLP and email comments to EG. | 0.4 | 0.0 |
| W. Leiner | 06/02/17 | Weekly conference call with litigation team (1.4); prepare for same (.3) | 1.7 | 1.7 |
| W. Leiner | 06/09/17 | Weekly litigation team meeting (1.8); prepare agenda for same (.20) | 2.0 | 2.0 |
| W. Leiner | 06/19/17 | Litigation team meeting to review plaintiff profiles. | 1.6 | 1.6 |
| W. Leiner | 06/22/17 | Call with litigation team to discuss plaintiff profiles. | 1.0 | 1.0 |
| W. Leiner | 07/07/17 | Weekly EPSDT nursing call. | 0.8 | 0.8 |
| W. Leiner | 07/11/17 | Call with [potential expert] re: expert work (.60) and prepare for same with R. Yang (.40); call with B. Newman re: co-counsel (.50) | 1.5 | 1.5 |
| W. Leiner | 07/14/17 | Weekly litigation team call (.70); prepare for same (.30) | 1.0 | 1.0 |
| W. Leiner | 07/21/17 | Weekly litigation team meeting. | 1.5 | 1.5 |
| W. Leiner | 07/27/17 | Call with potential systems expert. | 0.4 | 0.4 |
| W. Leiner | 07/28/17 | Weekly litigation team call. | 0.6 | 0.6 |
| W. Leiner | 08/03/17 | Call with Dr. XXXXXX (.60); prepare for same (.40) | 1.0 | 1.0 |
| W. Leiner | 08/24/17 | Review and revise draft complaint | 1.8 | 1.8 |
| W. Leiner | 09/01/17 | Weekly litigation team call (1.1); prepare agenda for same (.50); review and respond to emails re systems expert (.20) | 1.8 | 1.8 |
| W. Leiner | 09/08/17 | Call with [potential experts] from [XXX] (.70); prepare for same (.60) | 1.3 | 1.3 |
| W. Leiner | 09/14/17 | Review, research, and develop class allegations | 5.0 | 5.0 |
| W. Leiner | 09/15/17 | Review and draft complaint | 1.8 | 1.8 |
| W. Leiner | 09/28/17 | Review / edit complaint | 2.8 | 2.8 |
| W. Leiner | 09/29/17 | Weekly litigation team call (.70); prepare agenda re: same (.20); review and respond to emails from co-counsel re: draft complaint (.20) | 1.1 | 1.1 |
| W. Leiner | 10/04/17 | Call with Dr. XXXXXX re: potential plaintiffs (.70); write memorandum re: same (.40); debrief with P. Gonzalez (.30) | 1.4 | 1.4 |
| W. Leiner | 10/05/17 | Review and finalize draft complaint and send to E. Gershon for review | 1.8 | 1.8 |
| W. Leiner | 10/13/17 | Review and respond to emails re: possible plaintiff in XXXXXX. | 0.2 | 0.2 |
| W. Leiner | 10/18/17 | Prepare agenda and compile materials for 10/19 co-counsel call with NHeLP and WCLP (.90); review and respond to A. Nicolette and R. Yang re: same (.30) | 1.2 | 1.2 |
| W. Leiner | 10/19/17 | Strategy call with NHeLP and WCLP (1.2); prepare for same (.40) | 1.6 | 1.6 |
| W. Leiner | 10/23/17 | Call with potential client. | 0.9 | 0.9 |
| W. Leiner | 10/26/17 | Finalize draft class demand letter (.40), co-counsel agreement (.30), retainer agreement (.30), and task list (1.6) and circulate to co-counsel to review | 2.6 | 2.6 |
| W. Leiner | 10/31/17 | Call with [potential plaintiff] and draft follow-up email re: same. | 1.6 | 1.6 |

I. N., et al. v. Jennifer Kent, et al.                          **Attorney Work Product**

**DRC ATTORNEY TIME**

| Attorney | Date | Time Entry Note | Actual Time | Revised Time |
|---|---|---|---|---|
| W. Leiner | 11/17/17 | Weekly internal litigation planning call (1.6); prepare for same (.20) | 1.8 | 1.8 |
| W. Leiner | 11/28/17 | Call with co-counsel to discuss pre-litigation meeting with DHCS (1.0); internal call to discuss access study expert (.50); prepare for same (.30) | 1.8 | 1.8 |
| W. Leiner | 11/28/17 | Prepare summary of [potential plaintiff]'s 2015 records and send same to E. Gershon | 0.4 | 0.4 |
| W. Leiner | 11/30/17 | Call with [potential plaintiff]'s mother re status updates about daughter's nursing care (.90); prepare notes re: same (.30) | 1.2 | 1.2 |
| W. Leiner | 12/06/17 | Draft fact memo re: possible plaintiff for co-counsel review. | 1.2 | 1.2 |
| W. Leiner | 12/11/17 | Draft and send memo to all co-counsel re: plaintiff updates and questions for the team to consider on 12/12 call (.80); consult with E. Gershon re: same (.30) | 1.1 | 1.1 |
| W. Leiner | 12/15/17 | Call with S. Enan re: DHCS contacting potential plaintiffs; review and respond to emails re: same. | 0.8 | 0.8 |
| W. Leiner | 12/19/17 | Draft and send email in response to co-counsel comments re: case strategy. | 1.3 | 1.3 |
| W. Leiner | 01/03/18 | Review and respond to emails re: expert scope of work | 0.2 | 0.2 |
| W. Leiner | 01/04/18 | Review expert scope of work; send email to R. Yang re: same | 0.2 | 0.2 |
| W. Leiner | 01/04/18 | Review and edit draft complaint | 0.8 | 0.8 |
| W. Leiner | 01/17/18 | Litigation planning meeting with all co-counsel | 1.2 | 1.2 |
| W. Leiner | 01/19/18 | Draft demand letter to DHCS and circulate to all co-counsel for review | 3.8 | 3.8 |
| W. Leiner | 01/24/18 | Review and respond to emails re: plaintiff updates | 0.8 | 0.8 |
| W. Leiner | 02/07/18 | Review and respond to emails re: [potential plaintiff | 0.3 | 0.3 |
| W. Leiner | 03/14/18 | All-counsel strategy call (1.2); prepare agenda re: same (.20) | 1.4 | 1.4 |
| W. Leiner | 03/22/18 | Review and edit NHeLP letter to DHCS | 0.3 | 0.3 |
| W. Leiner | 03/28/18 | Review and respond to emails re: [potential plaintiff]'s nursing hours; call with A. Nicolette re: same | 0.4 | 0.4 |
| W. Leiner | 04/06/18 | Review and respond to emails re: client updates | 0.4 | 0.4 |
| W. Leiner | 04/19/18 | Call with S. Somers to discuss meeting with DHCS | 0.4 | 0.4 |
| W. Leiner | 04/24/18 | All co-counsel litigation team call (1.0); prepare for same (.20) | 1.2 | 1.2 |
| W. Leiner | 04/25/18 | Review and respond to emails re: potential plaintiff; meet with A. Nicolette re: same. | 0.8 | 0.8 |
| W. Leiner | 05/01/18 | All co-counsel litigation call (1.0); prepare agenda for same (.20) | 1.2 | 1.2 |
| W. Leiner | 05/18/18 | Review and edit GAL petition | 0.8 | 0.8 |
| W. Leiner | 05/18/18 | Review and edit fictitious names petition | 0.7 | 0.7 |
| W. Leiner | 05/23/18 | Prepare for complaint filing | 7.5 | 3.5 |
| W. Leiner | 06/05/18 | Call re: magistrate judge jurisdiction (.80); draft emails re: same (.40) | 1.2 | 0.8 |
| W. Leiner | 06/11/18 | Review and respond to emails from defendants re: initial meet and confer | 0.2 | 0.2 |
| W. Leiner | 06/12/18 | Prepare memo home health budget items and other case-related updates | 1.8 | 1.8 |
| W. Leiner | 06/13/18 | Call with C. Tsai re response to complaint and timing of possible PI | 0.5 | 0.5 |
| W. Leiner | 06/13/18 | Draft memo re: call with defendants and confirming email; circulate to co-counsel for review. | 1.1 | 0.5 |
| W. Leiner | 06/18/18 | Draft and send correspondence to defendants | 0.6 | 0.6 |

**I. N., et al. v. Jennifer Kent, et al.**                    **Attorney Work Product**

**DRC ATTORNEY TIME**

| Attorney | Date | Time Entry Note | Actual Time | Revised Time |
|----------|------|-----------------|-------------|--------------|
| W. Leiner | 06/19/18 | Review and respond to emails from defendants re: extension of time to file response to complaint | 0.2 | 0.2 |
| W. Leiner | 06/26/18 | All co-counsel litigation Team Meeting | 1.0 | 1.0 |
| W. Leiner | 06/29/18 | Send F/U email to defendants re: Rule 26(f) conference | 0.2 | 0.2 |
| W. Leiner | 07/06/18 | Draft request for clarification re commencement of case-related events; circulate same to co-counsel | 1.4 | 1.4 |
| W. Leiner | 07/09/18 | Review and respond to emails re: request for clarification re: timing of case-related events | 0.3 | 0.3 |
| W. Leiner | 07/10/18 | Draft email to defendants re: Request for Clarification and plaintiff updates; send same to co-counsel and incorporate edits | 0.9 | 0.9 |
| W. Leiner | 07/10/18 | Revise pleadings per Court's order partially granting motion for fictitious names | 0.4 | 0.4 |
| W. Leiner | 07/11/18 | Finalize and send M&C letter to C. Tsai re: Initiation of Rule 26(f) Conference and Commencement of Discovery | 0.8 | 0.8 |
| W. Leiner | 07/12/18 | Meet and confer with defendants re: scheduling orders and commencement of Rule 26 meet and confer; prepare for same (1.2); prepare memo re call and send to co-counsel (.60); review and respond to emails from co-counsel (.30) | 2.1 | 2.1 |
| W. Leiner | 07/17/18 | Review and respond to emails re: clarification letter to Court | 0.8 | 0.8 |
| W. Leiner | 07/17/18 | Review and analyze weekly chart of JB's hours | 0.6 | 0.6 |
| W. Leiner | 07/18/18 | Meet and confer with defendants re: bases for Rule 12 motion; prepare for same | 0.8 | 0.8 |
| W. Leiner | 07/18/18 | Draft email to defendants (.30) and memo to co-counsel re: M&C with defendants (.40) | 0.7 | 0.7 |
| W. Leiner | 07/19/18 | Finalize letter to court seeking clarification and file the same | 0.8 | 0.8 |
| W. Leiner | 07/20/18 | Litigation team meeting; prepare for same | 1.2 | 1.2 |
| W. Leiner | 07/23/18 | Draft and send scheduling email to defendants for Rule 26(f) meet and confer | 0.2 | 0.2 |
| W. Leiner | 07/23/18 | Review defendants' motion to dismiss | 0.6 | 0.6 |
| W. Leiner | 07/24/18 | Co-counsel strategy call (1.1); prepare for same (.30) | 1.4 | 1.4 |
| W. Leiner | 07/25/18 | Rule 26(f) meet and confer planning meeting with co-counsel (1.3); prepare for same (.30) | 1.6 | 0.0 |
| W. Leiner | 07/27/18 | Review and prepare analysis of IN's hours; draft memo re: same | 1.3 | 1.3 |
| W. Leiner | 07/27/18 | Call with A.B. to discuss ADR options | 0.6 | 0.6 |
| W. Leiner | 07/30/18 | Review and respond to emails re: scheduling Rule 26(f) meet and confer | 0.6 | 0.0 |
| W. Leiner | 07/30/18 | Prepare for Rule 26(f) meet and confer with defendants | 1.4 | 1.4 |
| W. Leiner | 07/31/18 | Call with Z. F. to discuss ADR options | 0.8 | 0.8 |
| W. Leiner | 07/31/18 | Co-counsel strategy call | 1.1 | 1.1 |
| W. Leiner | 07/31/18 | Review and respond to emails from defendants re: the Rule 26(f) conference and amending the complaint (.4); confer with co-counsel re: same (.5); continue to prepare for Rule 26(f) conference (1) | 1.9 | 1.4 |
| W. Leiner | 08/01/18 | Meeting with defendants re: Rule 26(f) conference and travel to and from same(2.8), prepare for same (2.0); draft correspondence re: summary of agreements and discussions re: same (1.2) | 6.0 | 6.0 |
| W. Leiner | 08/06/18 | Finalize and send Rule 26(f) conference summary to C. Tsai | 0.2 | 0.2 |
| W. Leiner | 08/06/18 | Finalize and send litigation hold letters | 0.4 | 0.0 |
| W. Leiner | 08/07/18 | All co-counsel litigation strategy call | 1.0 | 1.0 |
| W. Leiner | 08/07/18 | Email to defendants re: ADR certification | 0.2 | 0.2 |

I. N., et al. v. Jennifer Kent, et al.                                    **Attorney Work Product**

**DRC ATTORNEY TIME**

| Attorney | Date | Time Entry Note | Actual Time | Revised Time |
|---|---|---|---|---|
| W. Leiner | 08/07/18 | Review and edit draft first amended complaint; circulate to co-counsel for review | 3.8 | 3.8 |
| W. Leiner | 08/08/18 | Finalize and file first amended complaint | 3.8 | 3.8 |
| W. Leiner | 08/13/18 | Compile and send list of potential custodians to C. Tsai | 0.6 | 0.6 |
| W. Leiner | 08/13/18 | Review proposed protective order | 0.7 | 0.0 |
| W. Leiner | 08/13/18 | Review draft RFP and interrogatories | 0.9 | 0.0 |
| W. Leiner | 08/16/18 | Draft and send email to C. Tsai re: HHA records | 0.3 | 0.0 |
| W. Leiner | 08/16/18 | Finalize and send draft PO to C. Tsai; internal discussion re: same | 0.5 | 0.0 |
| W. Leiner | 08/21/18 | All co-counsel strategy call; prepare agenda for same | 1.2 | 1.2 |
| W. Leiner | 08/21/18 | Draft and send email to C. Tsai re: DHCS seeking HHA records | 0.5 | 0.5 |
| W. Leiner | 08/21/18 | Finalize draft of Joint CMC and send to co-counsel for review | 1.8 | 0.0 |
| W. Leiner | 08/22/18 | Email C. Tsai re: joint CMC and other matters | 0.3 | 0.3 |
| W. Leiner | 08/23/18 | All co-counsel in person case strategy meeting (6.5); travel to and from same (5.0) | 11.5 | 6.5 |
| W. Leiner | 08/24/18 | Review defendant's motion to dismiss | 0.6 | 0.0 |
| W. Leiner | 08/24/18 | Finalize draft of joint CMC; send to C. Tsai for review | 0.9 | 0.9 |
| W. Leiner | 08/27/18 | Call with [potential plaintiff] and R. Yang re: initial disclosures | 0.5 | 0.5 |
| W. Leiner | 08/27/18 | Review and respond to emails from C. Tsai re: discovery and ESI custodians (.30); finalize and send letter re: defendants seeking HHA records for the purpose of defending litigation (.40) | 0.7 | 0.7 |
| W. Leiner | 08/28/18 | Review defendants inserts to joint CMC | 0.4 | 0.0 |
| W. Leiner | 08/29/18 | Review and edit facts section to opposition to motion to dismiss | 0.3 | 0.3 |
| W. Leiner | 08/29/18 | Meet and confer with C. Tsai re: Joint CMC, interview protocol, and DHCS letters being sent to HHAs requesting records to defend litigation (1.0); prepare for same (.40); draft and send confirming letter (.40); meet with document production team to oversee production of initial disclosures, final review of documents in relativity, and review and respond to emails from pro bono counsel re: same (3.2) | 5.0 | 1.8 |
| W. Leiner | 08/30/18 | Finalize and file the parties joint CMC statement (2.5); review and respond to emails from C. Tsai re: same (.30); review and respond to discovery extension requests from C. Tsai (.20); finalize and oversee production of initial disclosures (3.7) | 6.7 | 5.5 |
| W. Leiner | 09/04/18 | All co-counsel call (1.0); prepare agenda re: same (.20) | 1.2 | 1.2 |
| W. Leiner | 09/04/18 | Review and respond to emails from defendants re: request for discovery extension | 0.3 | 0.3 |
| W. Leiner | 09/04/18 | Review facts section to opposition to defendants MTD; email E. Gershon and S. Enan re: same | 0.3 | 0.0 |
| W. Leiner | 09/05/18 | Draft and send email to defendants re: protocol and DHCS contacts with putative class members; confer with E. Gershon re: same | 1.2 | 0.6 |
| W. Leiner | 09/05/18 | Prepare for 9/6 case management conference and compile materials re: same | 1.6 | 1.6 |
| W. Leiner | 09/06/18 | Attend case management conference in SF (1.80); prepare for same (1.0); confer with defendants re: discovery post-CMC (.20); debrief with co-counsel re: same (.40) | 3.4 | 2.4 |
| W. Leiner | 09/06/18 | Respond to defendants request for discovery extension | 0.2 | 0.2 |

**I. N., et al. v. Jennifer Kent, et al.**                    **Attorney Work Product**

**DRC ATTORNEY TIME**

| Attorney | Date | Time Entry Note | Actual Time | Revised Time |
|---|---|---|---|---|
| W. Leiner | 09/12/18 | Finalize draft PO and send to E. Gershon for review (.60); review and respond to emails from C. Tsai re: scheduling meet and confer re: protocol (.10) | 0.7 | 0.7 |
| W. Leiner | 09/13/18 | Review and edit protective order; send same to defendants | 0.4 | 0.4 |
| W. Leiner | 09/14/18 | Call with defendants re: interview protocol | 0.5 | 0.5 |
| W. Leiner | 09/17/18 | Review discovery responses from defendants | 0.6 | 0.6 |
| W. Leiner | 09/17/18 | Review and respond to defendants edits to PO; draft email to defendants re: same | 0.3 | 0.3 |
| W. Leiner | 09/17/18 | Review and edit attachment to protocol for class member interview; send defendants copy of same | 0.4 | 0.4 |
| W. Leiner | 09/17/18 | Begin drafting response to defendants' email re: refusal to negotiate discovery extensions | 0.4 | 0.4 |
| W. Leiner | 09/18/18 | All co-counsel litigation strategy call; prepare for same | 1.3 | 1.3 |
| W. Leiner | 09/18/18 | Finalize email to defendants re: discovery extension and ESI; send to E. Gershon for review | 0.5 | 0.5 |
| W. Leiner | 09/18/18 | Review discovery responses | 0.3 | 0.3 |
| W. Leiner | 09/20/18 | Review defendants edits to protective order and draft response re: same | 0.7 | 0.7 |
| W. Leiner | 09/21/18 | Review draft 30b6 depo notice | 0.2 | 0.2 |
| W. Leiner | 09/25/18 | Review and respond to emails from defendants re protective order and protocol | 0.3 | 0.3 |
| W. Leiner | 09/26/18 | Call with E. Gershon to review protective order and protocol (.40); send email re: protective order to defendants (.20) | 0.6 | 0.2 |
| W. Leiner | 09/27/18 | Edit interview protocol and email same to defendants | 0.4 | 0.4 |
| W. Leiner | 09/27/18 | Review and edit discovery meet and confer letter | 0.4 | 0.4 |
| W. Leiner | 09/27/18 | Prepare for hearing on motion to dismiss | 2.2 | 2.2 |
| W. Leiner | 09/28/18 | Edit draft protocol and send to defendants for final review | 0.2 | 0.2 |
| W. Leiner | 10/01/18 | Finalize protocol and PO to prepare for filing | 0.3 | 0.0 |
| W. Leiner | 10/01/18 | Prepare for hearing on motion to dismiss | 2.3 | 2.3 |
| W. Leiner | 10/02/18 | Draft and send email to opposing counsel re: discovery delays | 0.3 | 0.3 |
| W. Leiner | 10/02/18 | Review and respond to emails from opposing counsel re: filing PO and protocol | 0.2 | 0.2 |
| W. Leiner | 10/03/18 | Draft email to opposing counsel re: outstanding important items | 0.6 | 0.6 |
| W. Leiner | 10/04/18 | Hearing on motion to dismiss (.60); prepare for same (1.4); travel to and from same (1.5) | 3.5 | 3.5 |
| W. Leiner | 10/08/18 | Draft and send email to opposing counsel re: deposition scheduling | 0.2 | 0.2 |
| W. Leiner | 10/08/18 | Prepare and review documents for disclosures | 1.8 | 1.8 |
| W. Leiner | 10/09/18 | Draft and send email to ZF re: settlement conference | 0.4 | 0.4 |
| W. Leiner | 10/09/18 | Draft and send email to AB re: settlement conference | 0.2 | 0.2 |
| W. Leiner | 10/11/18 | Email opposing counsel re: Cooper and Brooks deposition dates | 0.2 | 0.2 |
| W. Leiner | 10/15/18 | Settlement conference call with Judge Corley | 0.3 | 0.3 |
| W. Leiner | 10/16/18 | Settlement conference call with Judge Corley | 0.5 | 0.5 |
| W. Leiner | 10/17/18 | Call with litigation team re: expert strategy | 1.0 | 1.0 |
| W. Leiner | 10/19/18 | Email opposing counsel re: pre-settlement meeting and 30b6 deposition notice | 0.2 | 0.2 |
| W. Leiner | 10/19/18 | Draft and send emails to ZF and AB re: settlement conference | 0.3 | 0.3 |
| W. Leiner | 10/24/18 | Meet with E. Gershon for settlement conference prep | 0.8 | 0.8 |
| W. Leiner | 10/24/18 | Call with AB re: settlement | 0.4 | 0.4 |
| W. Leiner | 10/25/18 | Settlement pre-meeting with defendants | 1.5 | 1.5 |

**I. N., et al. v. Jennifer Kent, et al.**                    **Attorney Work Product**

**DRC ATTORNEY TIME**

| Attorney | Date | Time Entry Note | Actual Time | Revised Time |
|---|---|---|---|---|
| W. Leiner | 10/25/18 | Travel to and from settlement pre-meeting | 5.0 | 5.0 |
| W. Leiner | 10/26/18 | Draft and send email to opposing counsel re: Luxemberg deposition | 0.1 | 0.1 |
| W. Leiner | 10/30/18 | Finalize and circulate draft settlement conference statement to co-counsel | 1.6 | 1.6 |
| W. Leiner | 10/30/18 | Call with AB re: settlement conference | 0.4 | 0.4 |
| W. Leiner | 10/30/18 | Call with ZF re: settlement conference | 0.6 | 0.6 |
| W. Leiner | 10/31/18 | Finalize and serve settlement conference statement | 0.9 | 0.9 |
| W. Leiner | 10/31/18 | Draft and send email to opposing counsel re: waiver agencies and settlement proposal | 0.3 | 0.3 |
| W. Leiner | 10/31/18 | Prepare for settlement conference | 0.6 | 0.6 |
| W. Leiner | 10/31/18 | Document review in response to defendants' RFPs | 2.8 | 2.8 |
| W. Leiner | 11/05/18 | Draft and send email to opposing counsel re: rescheduling Cooper and Brooks depos | 0.2 | 0.2 |
| W. Leiner | 11/05/18 | Confer with discovery team to finalize discovery responses; conduct final review prior to production | 1.8 | 1.8 |
| W. Leiner | 11/05/18 | Draft correspondence to opposing counsel outstanding discovery deadlines and informal stay | 0.3 | 0.3 |
| W. Leiner | 11/06/18 | Co-counsel litigation Team Meeting (1.0); prepare agenda and materials re: same (.40) | 1.4 | 1.4 |
| W. Leiner | 11/06/18 | Respond to email from opposing counsel re: informal stay in discovery; draft and send stipulation re: case management schedule | 1.2 | 1.2 |
| W. Leiner | 11/08/18 | Draft email to opposing counsel re: named plaintiff depositions | 0.3 | 0.3 |
| W. Leiner | 11/13/18 | Co-counsel litigation team call; compile agenda and materials for same | 0.9 | 0.9 |
| W. Leiner | 11/13/18 | Review settlement documents and links to APLs, numbered letters, and informational letters; begin drafting email to opposing counsel re: same | 0.7 | 0.7 |
| W. Leiner | 11/14/18 | Finalize and send email to opposing counsel re: settlement documents | 0.3 | 0.3 |
| W. Leiner | 11/16/18 | Review Defendants' settlement proposal | 0.8 | 0.8 |
| W. Leiner | 11/19/18 | Call with S. Somers and E. Gershon to discuss settlement | 0.5 | 0.5 |
| W. Leiner | 11/19/18 | Send emails to clients with Defendants' draft settlement proposal | 0.3 | 0.3 |
| W. Leiner | 11/19/18 | Send email to opposing counsel re: exhibits to settlement agreement | 0.2 | 0.2 |
| W. Leiner | 11/19/18 | Review and compile documents for supplemental document production; send same to R. Schwartz | 0.8 | 0.8 |
| W. Leiner | 11/20/18 | Co-counsel strategy call; prepare materials and agenda re: same | 1.8 | 1.8 |
| W. Leiner | 11/20/18 | Call with R. Schwartz re: plaintiff strategy | 0.2 | 0.0 |
| W. Leiner | 11/20/18 | Review and edit settlement summary | 0.3 | 0.3 |
| W. Leiner | 11/21/18 | Call with Z.F. re: settlement | 0.5 | 0.5 |
| W. Leiner | 11/21/18 | Review records and send same to R. Schwartz for supplemental production | 0.6 | 0.6 |
| W. Leiner | 11/25/18 | Call with Z.F. re: settlement (.90); Call with A.B. re: settlement (.40) | 1.3 | 1.3 |
| W. Leiner | 11/25/18 | Review and edit E. Gershon edits to settlement proposal; incorporate Darling provisions into same | 1.2 | 1.2 |
| W. Leiner | 11/27/18 | Call with co-counsel; prepare agenda re: same and circulate draft response to settlement agreement | 1.2 | 1.2 |

I. N., et al. v. Jennifer Kent, et al.                     **Attorney Work Product**

**DRC ATTORNEY TIME**

| Attorney | Date | Time Entry Note | Actual Time | Revised Time |
|---|---|---|---|---|
| W. Leiner | 11/27/18 | Draft and send email to opposing counsel re: URLs and subpoenas | 0.3 | 0.3 |
| W. Leiner | 11/27/18 | Call with B. Newman re: Cooper depo prep | 0.4 | 0.0 |
| W. Leiner | 11/27/18 | Review and respond to emails from R. Schwartz re: supplemental document production | 0.2 | 0.0 |
| W. Leiner | 11/28/18 | Review document productions and compile and send B. Newman docs for Cooper depo prep | 1.6 | 1.6 |
| W. Leiner | 11/28/18 | Incorporate line edits into settlement proposal and call with E. Gershon re: same, proofread final draft, draft and send cover email to opposing counsel | 3.8 | 3.8 |
| W. Leiner | 11/29/18 | Prepare for 11/30 settlement conference | 2.0 | 2.0 |
| W. Leiner | 11/29/18 | Review and respond to emails from B. Newman re: Cooper deposition; compile docs re: same. | 0.7 | 0.0 |
| W. Leiner | 11/30/18 | Settlement Conference | 7.0 | 7.0 |
| W. Leiner | 12/03/18 | Draft and file stipulation extending case management deadlines; seek approval from CT re: same | 0.6 | 0.6 |
| W. Leiner | 12/06/18 | All co-counsel call; prepare agenda re: same | 1.1 | 1.1 |
| W. Leiner | 12/07/18 | Call with Z. F. re: settlement | 0.5 | 0.5 |
| W. Leiner | 12/07/18 | Call with A. B. re: settlement | 0.8 | 0.8 |
| W. Leiner | 12/07/18 | Draft and circulate email to opposing counsel | 0.4 | 0.0 |
| W. Leiner | 12/07/18 | Standing internal litigation team call | 0.6 | 0.6 |
| W. Leiner | 12/10/18 | Draft and send proposal for informal stay; begin drafting additional settlement proposals re: specific relief for named plaintiffs and monitoring plan | 1.2 | 1.2 |
| W. Leiner | 12/12/18 | Draft and send additional settlement provisions re: notice plan, specific relief, and monitoring | 1.4 | 1.4 |
| W. Leiner | 12/13/18 | Draft and send settlement correspondence to clients | 0.7 | 0.7 |
| W. Leiner | 12/13/18 | Call with R. Schwartz re: settlement proposal | 0.2 | 0.2 |
| W. Leiner | 12/14/18 | Litigation team call | 1.0 | 1.0 |
| W. Leiner | 12/14/18 | Draft and send settlement communications to opposing counsel | 0.6 | 0.6 |
| W. Leiner | 12/17/18 | Edit settlement proposal and send to co-counsel for review; incorporate co-counsel edits to document | 2.8 | 2.8 |
| W. Leiner | 12/18/18 | All co-counsel strategy call; prepare agenda re: same | 1.0 | 0.0 |
| W. Leiner | 12/18/18 | Edit settlement agreement and send to plaintiffs for review | 0.4 | 0.4 |
| W. Leiner | 12/19/18 | Finalize revisions to settlement agreement and fee demand; discuss same with co-counsel; send same to opposing counsel | 3.5 | 3.5 |
| W. Leiner | 12/20/18 | Prepare for settlement conference | 0.8 | 0.8 |
| W. Leiner | 12/20/18 | Review and respond to emails from C. Tsai re: settlement proposal | 0.2 | 0.2 |
| W. Leiner | 12/21/18 | In-person settlement conference; prepare for same | 6.0 | 6.0 |
| W. Leiner | 12/21/18 | Prepare summary of settlement conference and send to co-counsel | 0.8 | 0.0 |
| W. Leiner | 01/03/19 | Draft and send email to C. Tsai re: outstanding discovery | 0.3 | 0.3 |
| W. Leiner | 01/07/19 | Call with A. B. | 0.4 | 0.4 |
| W. Leiner | 01/08/19 | Weekly Co-Counsel strategy call; prepare for same | 0.8 | 0.8 |
| W. Leiner | 01/09/19 | Call with Zarinah F. re: settlement | 0.7 | 0.7 |
| W. Leiner | 01/10/19 | Draft and send emails to plaintiffs re: deposition scheduling. | 0.2 | 0.0 |
| W. Leiner | 01/11/19 | Review and respond to email from C. Tsai re: outstanding discovery and confer with clients re: same | 0.6 | 0.6 |
| W. Leiner | 01/14/19 | Review defendants' changes to settlement agreement; draft summary email and send same to co-counsel | 1.4 | 1.4 |

**I. N., et al. v. Jennifer Kent, et al.**

**DRC ATTORNEY TIME**

Attorney Work Product

| Attorney | Date | Time Entry Note | Actual Time | Revised Time |
|---|---|---|---|---|
| W. Leiner | 01/15/19 | Draft and send email to C. Tsai re: outstanding discovery and settlement negotiations | 0.6 | 0.6 |
| W. Leiner | 01/15/19 | Co-counsel litigation team call; prepare agenda for same. | 0.7 | 0.7 |
| W. Leiner | 01/16/19 | Weekly co-counsel litigation team call; prepare agenda re: same | 0.8 | 0.8 |
| W. Leiner | 01/17/19 | Edit settlement proposal and draft cover letter to C. Tsai re: same | 2.8 | 2.8 |
| W. Leiner | 01/17/19 | Call with Alisa B. re: settlement agreement | 0.4 | 0.4 |
| W. Leiner | 01/18/19 | Call with C. Tsai re: settlement; revise agreement and send same to Defendants | 2.2 | 2.2 |
| W. Leiner | 01/18/19 | Call with Zarinah F. re: settlement | 0.8 | 0.8 |
| W. Leiner | 01/18/19 | Review and edit deposition notices | 0.4 | 0.0 |
| W. Leiner | 01/21/19 | Prepare for settlement conference | 2.5 | 2.5 |
| W. Leiner | 01/21/19 | Draft and send client correspondence with summary of major changes to the settlement agreement | 0.4 | 0.4 |
| W. Leiner | 01/22/19 | Settlement Conference | 8.0 | 8.0 |
| W. Leiner | 01/22/19 | Pre-settlement conference call with Defendants; prepare for same | 0.8 | 0.8 |
| W. Leiner | 01/23/19 | Revise agreement and send same to C. Tsai | 0.6 | 0.6 |
| W. Leiner | 01/23/19 | Call with Alisa B. re: outcome of settlement conference | 0.8 | 0.8 |
| W. Leiner | 01/24/19 | Meet and confer with opposing counsel re: term of the agreement; review and respond to emails re: same | 0.6 | 0.6 |
| W. Leiner | 01/24/19 | Review and respond to emails from co-counsel re: settlement agreement | 0.3 | 0.3 |
| W. Leiner | 01/25/19 | Draft stipulation to vacate trial dates; meet and confer with opposing counsel re: same | 0.4 | 0.4 |
| W. Leiner | 01/25/19 | Coordinate client signatures on settlement; review and respond to emails from clients re: same | 0.7 | 0.7 |
| W. Leiner | 01/28/19 | Review and approve filing of stipulation to vacate dates; send email to opposing counsel confirming client signatures | 0.3 | 0.3 |
| W. Leiner | 01/28/19 | Call with EG re: preliminary approval filing | 0.4 | 0.0 |
| W. Leiner | 01/29/19 | Strategy call with co-counsel | 0.6 | 0.6 |
| W. Leiner | 01/30/19 | Finalize and circulate settlement and co-counsel agreements to co-counsel | 0.2 | 0.0 |
| W. Leiner | 01/30/19 | Research and review standards for preliminary approval; begin drafting declaration re: same | 1.8 | 1.8 |
| W. Leiner | 01/31/19 | Research class notice requirements and draft notice to class | 1.2 | 1.2 |
| W. Leiner | 02/04/19 | Finalize class notice and send to Defendants for review | 0.3 | 0.3 |
| W. Leiner | 02/05/19 | Review and respond to emails from Zarinah F. | 0.2 | 0.2 |
| W. Leiner | 02/06/19 | Draft and send email to Defendants re: info needed for preliminary approval hearing | 0.3 | 0.3 |
| W. Leiner | 02/10/19 | Draft joint motion for preliminary approval and related declarations; send to E. Gershon for review | 2.3 | 2.3 |
| W. Leiner | 02/12/19 | Standing litigation team call | 1.0 | 1.0 |
| W. Leiner | 02/13/19 | Finalize draft motion and send to Defendants for review; send email to Defendants re notice distribution plan | 0.9 | 0.9 |
| W. Leiner | 02/14/19 | Finalize edits to class notice and send email to opposing counsel re: same | 0.6 | 0.6 |
| W. Leiner | 02/19/19 | Standing litigation team call | 1.0 | 1.0 |
| W. Leiner | 02/19/19 | Continue drafting preliminary approval and class cert motions | 0.9 | 0.9 |
| W. Leiner | 02/20/19 | Review Defendants' edits to class notice; draft cover email re: same | 0.7 | 0.7 |

**I. N., et al. v. Jennifer Kent, et al.**

**Attorney Work Product**

**DRC ATTORNEY TIME**

| Attorney | Date | Time Entry Note | Actual Time | Revised Time |
|---|---|---|---|---|
| W. Leiner | 02/20/19 | Call with Judge Corley and Defendants re: class release; draft stipulation to extend time to file class cert; send updates to co-counsel re: same | 2.3 | 2.3 |
| W. Leiner | 02/21/19 | Litigation strategy call re: potential class cert filing | 1.1 | 0.0 |
| W. Leiner | 02/21/19 | Review and respond to emails from co-counsel re: class release; send email to opposing counsel re: proposals | 1.3 | 1.3 |
| W. Leiner | 02/21/19 | Finalize client declarations; calls with Alisa B. and Zarinah F. re: same | 0.8 | 0.8 |
| W. Leiner | 02/22/19 | Revise class cert motion and send to co-counsel for review | 0.9 | 0.0 |
| W. Leiner | 02/25/19 | Draft and send emails to Defendants and Judge Corley re: class release issue and process to finalize joint motion for preliminary approval | 0.4 | 0.4 |
| W. Leiner | 02/26/19 | Standing litigation team call; prepare for same | 1.2 | 1.2 |
| W. Leiner | 02/26/19 | Draft and send emails to opposing counsel and judge Corley re: class release, designation of class counsel, interim appointment of class counsel, review process for the joint motion for preliminary approval, and information needed re: preliminary approval | 1.3 | 1.3 |
| W. Leiner | 02/26/19 | Research Cal Rules of Prof Conduct 1-500 re: designation of class counsel | 0.6 | 0.6 |
| W. Leiner | 02/26/19 | Finalize draft joint preliminary approval motion and send same to Defendants | 1.4 | 1.4 |
| W. Leiner | 02/27/19 | Settlement conference call with Defendants and Judge Corley | 1.3 | 1.3 |
| W. Leiner | 02/27/19 | Research re: options if settlement falls through; email E. Gershon re: same | 1.3 | 0.0 |
| W. Leiner | 02/27/19 | Draft and circulate proposed release language and cover email and review and respond to emails from co-counsel re: same; send release language and cover email to Defendants and Judge Corley | 1.1 | 1.1 |
| W. Leiner | 02/28/19 | Finalize Plaintiffs' class certification motion and the parties' joint motion for preliminary approval, including related declarations and exhibits and coordinating Plaintiff signatures. Calls with Alisa B. and Zarinah F. regarding same. Review and respond to emails from opposing counsel regarding joint motion and follow up calls regarding same. Work with secretary regarding final proofs and ECF filings | 7.8 | 5.5 |
| W. Leiner | 03/14/19 | Review and respond to emails from opposing counsel regarding objections to class certification | 0.3 | 0.3 |
| W. Leiner | 03/14/19 | Review Defendants' brief in support of class certification | 0.3 | 0.0 |
| W. Leiner | 03/19/19 | Review Defendants' response to motion to certify settlement class; legal research re: same | 1.8 | 0.9 |
| W. Leiner | 03/19/19 | Draft class cert reply and send same to E. Gershon for review | 1.9 | 1.9 |
| W. Leiner | 03/20/19 | Revise class cert reply brief; circulate same to co-counsel for review | 1.3 | 1.3 |
| W. Leiner | 03/21/19 | Finalize, proof, and file class cert reply brief | 1.1 | 0.0 |
| W. Leiner | 04/02/19 | Prepare for preliminary hearing approval | 0.9 | 0.9 |
| W. Leiner | 04/03/19 | Prepare for hearing on preliminary approval | 0.9 | 0.0 |
| W. Leiner | 04/04/19 | Argument re: preliminary approval | 0.5 | 0.5 |
| W. Leiner | 04/04/19 | Debrief litigation team re: motion for preliminary approval; coordinate media re: same | 1.3 | 0.0 |
| W. Leiner | 04/08/19 | Update class notice and send same to opposing counsel | 0.3 | 0.3 |
| W. Leiner | 04/08/19 | Calls with Z.F. and A.B. re: updates re: settlement and preliminary approval hearing | 1.4 | 1.4 |

**I. N., et al. v. Jennifer Kent, et al.**

**Attorney Work Product**

**DRC ATTORNEY TIME**

| Attorney | Date | Time Entry Note | Actual Time | Revised Time |
|---|---|---|---|---|
| | | SUBTOTALS | 413.5 | 363.8 |
| | | | | |
| | | TOTALS | 1017.2 | 830.7 |

## <u>EXHIBIT E</u>

*I. N., et al. v. Jennifer Kent, et al.*
Case No. 3:18-CV-03099-WHA

**Plaintiffs' Lodestar Chart**

# <u>EXHIBIT E</u>

I. N., et al. v. Jennifer Kent, et al.          Attorney Work Product
U.S.D.C., Northern District of California
Case No. 3:18-cv-03099 WHA

| Attorney | Graduation Year | Rate | Actual Billable Hours | Actual Lodestar | Claimed Hours | Percentage Reduction of Hours | Claimed Lodestar |
|---|---|---|---|---|---|---|---|
| William Leiner | 2007 | $640 | 413.5 | $264,640 | 363.8 | 49.7/12% | $232,832 |
| Elissa Gershon | 1993 | $785 | 190.2 | $149,307 | 103.1 | 87.1/46% | $80,933.50 |
| Sarah Somers | 1992 | $795 | 225* | $178,875* | 201.6 | 23.4*/10%* | $160,272 |
| Martha Jane Perkins | 1982 | $900 | 60* | $54,000* | 50.9 | 9.1*/15%* | $45,810 |
| Robert Newman | 1977 | $950 | 140.7* | $133,665* | 123.2 | 17.5*/12%* | $117,040 |
| Richard Schwartz | 2009 | $550 (reduced rate) | 354.4 | $194,920 | 211.4 | 143/40% | $116,270 |
| **Total** | | | **1383.8*** | **$975,407*** | **1054** | **329.8*/23%*** | **$753,157.50** |

*Numbers are approximate.

## <u>EXHIBIT F</u>

*I. N., et al. v. Jennifer Kent, et al.*
Case No. 3:18-CV-03099-WHA

**DHCS Access Study to Private Duty Nursing
December 15, 2016**

# <u>EXHIBIT F</u>



**Access Study to Private Duty Nursing**
December 15, 2016

## I.  PURPOSE

The purpose of the study is to evaluate access to private duty nursing (PDN) services, the availability of PDN service providers, and to identify any barriers to PDN services.

## II.  BACKGROUND

Private duty nursing (PDN) is among many services in the Early and Periodic Screening, Diagnosis, and Treatment Supplemental Services (EPSDT SS) benefit.  PDN is essentially the care of clients by professionals who provide private duty care on a one-on-one basis in a client's home, or an institution such as a nursing home or other such facility.  EPSDT is a mandatory set of services and benefits for all individuals under the age 21 who are enrolled in Medicaid and receive full-scope benefits.  Federal law requires any service a state is permitted to cover under Medicaid law, that is medically necessary to correct or ameliorate a defect, physical and mental illness, or condition, must be provided to beneficiaries under 21 years of age, even if the service or item is not otherwise included in the state's Medicaid plan.

The intent of PDN services is to meet the needs of the individual clients while assisting them with direct nurse care resulting in optimal health status and outcomes, and to reduce the number of in-patient stays or emergency room visits.

## III.  METHODOLOGY

This study will analyze authorized pediatric home health care services hours in comparison to PDN provider rendered service hours. The analysis will also study data by PDN service provider type and geographic area.  Following completion of this analysis, the Department of Health Care Services (DHCS) will consider next steps, including if an in-depth analysis or if provider and beneficiary surveys should be conducted.

## IV.  DATA SOURCES

1.  Children's Medical Services Network (CMS Net) is a full-scope case management system for California Children's Services (CCS) Program and the Genetically Handicapped Persons Program (GHPP).  CMS Net is used to identify the CCS Program's new and current recipients, CCS paneled physicians and providers, service locations, and tracks all Service Authorization Requests (SARs), etc.

---

PRA                                                                                   P-0000519



2. Management Information System/Decision Support System (MIS/DSS) is a subsystem of the California Medicaid Management Information System (CA-MMIS) and serves as DHCS' Medi-Cal data warehouse. The MIS/DSS is used to access claims and encounter data; eligibility data; provider data; and research claims processing and payment trends for non-CCS eligible children.

3. Service Utilization Review, Guidance, & Evaluation (SURGE) is a web-based application utilized for tracking and adjudication of all Treatment Authorization Requests (TARs).

4. DHCS will determine additional data sources for analyses, as needed.

## V. RESULTS/ANALYSIS

DHCS commenced the PDN access analysis by identifying the number of children referred for PDN services in calendar year (CY) 2015.

Table 1

| Number of Children Referred for PDN Services | | |
|---|---|---|
| Program | Beneficiaries | Percentage |
| CCS members | 3,161 | 89% |
| Non-CCSmembers | 403 | 11% |
| Total | 3,564 | 100% |

Table 1 identifies beneficiaries referred for PDN services. Beneficiaries referred for services were categorized by CCS and non-CCS eligible beneficiaries. Of the 3,564 California children who were referred to receive PDN services in CY 2015, majority of the children (89%) were CCS members and 11% were non-CCS members.

Table 2

| Number of PDN Hours Authorized and Rendered | |
|---|---|
| Description | Hours |
| Number of Hours Authorized | 4,166,257 |
| Number of Hours Rendered | 2,942,347 |

Table 2 identifies the number of PDN service hours authorized and the number of hours of PDN services rendered for CY 2015. Of the 4,166,257 PDN hours authorized, seventy-one percent (71%) of the services were rendered. There are many possible reasons to explain the twenty-nine percent (29%) gap between authorized and delivered services. For example, families may have very specific requirements regarding their availability, such as day of the week or time of day the provider may be in the home. As this is a personal service, it can be a challenge to find a match between the provider and family. Another consideration is a shortage of licensed staff available to provide PDN services. As such, an analysis of the providers was conducted to review how many beneficiaries actually received PDN authorizations and rendered services.

PDN services may be provided by a Home Health Agency (HHA) or by an Individual Nurse Provider (INP). A HHA is a provider who hires health professionals such as Registered Nurses (RNs), Licensed Vocational Nurses (LVNs), and Certified Home Health Aids (CHHA). These health professionals

PRA                                                                                                                    P-0000520



provide skilled nursing services to a client in the home, or as previously stated, an institution such as a nursing home or other such facility. The HHA must be a Medi-Cal provider.

CHHA are paraprofessionals who provide assistance with personal care (such as hygiene and exercise), light household duties (such as meal preparation), monitor patient conditions (such as checking vital signs or administering prescribed medications at scheduled times), and can provide companionship.

The LVN is a licensed health professional that works under the supervision of a doctor (MD) or RN. An LVN provides skilled nursing services in the home, within their scope of practice, such as administration of oral medications, insertion of gastrostomy or nasogastric tube feedings, and provision of wound care treatments. An LVN also provides basic bedside care services including taking vital signs such as temperature, blood pressure, pulse, and respiration.

Finally, the RN provides skilled nursing care and coordinates patient care, teaches the clients/families disease processes and self-care needs; and extends advice and emotional support to clients and their families. The RN also administers intravenous (IV) medications, antibiotics or fluids, and peripherally inserted central catheter (PICC or PIC line), provides dressings changes, etc.

An INP is an independent contractor or self-employed provider that may provide skilled nursing services in the home to full-scope Medi-Cal clients. An INP can be a RN or LVN licensed in the State of California.

Table 3 below separates the PDN services authorized and rendered by the four (4) service groups.

Table 3

| PDN Services Authorized and Rendered Hours by Service Group | | | |
|---|---|---|---|
| Service Groups | Beneficiaries | Total Authorized Hours | Total Rendered Hours |
| Certified Home Health Aid (CHHA) Hours | 121 | 140,730 | 107,393 |
| Licensed Vocational Nursing (LVN) Hours | 2,979 | 3,794,290 | 2,658,746 |
| Registered Nursing (RN) Hours | 238 | 229,386 | 175,281 |
| Registered Nursing (RN) Supervisor Hours | 3,025 | 1,851 | 923 |
| Total | | 4,166,257 | 2,942,343 |

Notably, service group LVN hours show the highest authorized hours (3,794,290 hours) for PDN services in CY 2015. The result confirms that LVNs perform the majority of the direct care oriented (hands on) services. RNs oversee the LVNs and possess a more specialized skillset, not requiring as many of the direct care oriented service hours.

Lastly, an analysis of PDN services authorized and rendered by county was performed to identify potential geographical differences. Table 4 demonstrates all but one county had a disparity between the number of authorized and rendered PDN services. The disparity among the counties ranges from slight to vast.

The size of the population in each county may have a great impact on the regional analysis, as the smaller number of beneficiaries may have the largest impact on the amount of service rendered. The cause of the disparity could be family reasons instead of geographic access issues or availability of qualified providers.

PRA                                                                                                                                                        P-0000521



Access Study to Pediatric Home Health Care Services

Table 4

| | PDN Services Authorized and Rendered Hours by Service Group | |
|---|---|---|
| County | Total Authorized Hours | Total Rendered Hours |
| Alameda | 85,740 | 60,767 |
| Amador | 160 | 67 |
| Butte | 37,259 | 22,958 |
| Calaveras | 2,624 | 2,156 |
| Colusa | 2,430 | 1,797 |
| Contra Costa | 38,018 | 24,502 |
| El Dorado | 22,859 | 13,262 |
| Fresno | 80,076 | 57,013 |
| Glenn | 10,230 | 4,999 |
| Imperial | 3,953 | 2,911 |
| Kern | 137,598 | 76,332 |
| Kings | 12,359 | 10,384 |
| Lake | 1,730 | 167 |
| Los Angeles | 1,687,217 | 1,289,545 |
| Madera | 5,081 | 3,797 |
| Mendocino | 540 | 100 |
| Merced | 4,116 | 3,964 |
| Monterey | 5,349 | 5,173 |
| Nevada | 26,570 | 16,382 |
| Orange | 84,035 | 62,052 |
| Placer | 31,281 | 20,359 |
| Riverside | 347,502 | 248,289 |
| Sacramento | 303,767 | 179,665 |
| San Benito | 2,170 | 2,170 |
| San Bernardino | 348,461 | 261,189 |
| San Diego | 622,690 | 404,170 |
| San Francisco | 19,518 | 13,299 |
| San Joaquin | 81,541 | 48,487 |
| Santa Barbara | 1,845 | 1,802 |
| Santa Clara | 174,066 | 86,967 |
| Shasta | 8,745 | 2,801 |
| Sonoma | 4,632 | 1,360 |
| Stanislaus | 24,614 | 18,424 |
| Sutter | 13,813 | 8,245 |
| Tehama | 13,081 | 8,405 |
| Tulare | 17,268 | 14,449 |
| Tuolumne | 2,280 | 2,115 |
| Ventura | 7,229 | 5,791 |
| Yolo | 3,533 | 2,645 |
| Yuba | 7,917 | 5,848 |

PRA

P-0000522



## VI. CONCLUSIONS/RECOMMENDATIONS

The study identifies a twenty-nine (29%) gap in the number of authorized and rendered PDN services to eligible beneficiaries.  This access study is inconclusive to explain the gap disparity.  As such, further analysis is recommended.  A Phase II analysis could examine additional data related to the provider agencies, by specific geographic areas, with the number of beneficiaries in those areas.  In addition, a targeted provider survey may unveil specific barriers for providers in delivering the services, such as, staffing shortage, rates, and geographic access barriers.  A targeted beneficiary survey may help to fully understand the families' perspective relative to service delivery; such as, their availabilities and barriers which include culture, linguistic, and religious beliefs.