William Leiner, State Bar No. 255528
william.leiner@disabilityrightsca.org
Salma E. Enan, State Bar No. 271336
salma.enan@disabilityrightsca.org
Elissa Gershon, State Bar No. 169741
elissa.gershon@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
1330 Broadway, Suite 500
Oakland, CA  94612
Tel.:  (510) 267-1200
Fax:  (510) 267-1201

Sarah Somers, State Bar No.170118
somers@healthlaw.org
Martha Jane Perkins, State Bar No. 104784
perkins@healthlaw.org
NATIONAL HEALTH LAW PROGRAM
200 N. Greensboro Street, Ste. D-13
Carrboro, NC  27510
Tel.:  (919) 968-6308
Fax:  (919) 968-8855

*(Counsel continued on next page)*

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I. N., a minor, by and through her mother and *Guardian ad Litem*, Zarinah F.; J. B., a minor by and through his mother and *Guardian ad Litem*, Alisa B., <br><br> Plaintiffs, <br><br> v. <br><br> JENNIFER KENT, Director of the Department of Health Care Services; State of California DEPARTMENT OF HEALTH CARE SERVICES, <br><br> Defendants. | Case No.:  3:18-cv-3099-WHA <br><br> CLASS ACTION <br><br> **DECLARATION OF STUART SEABORN IN SUPPORT OF PLAINTIFFS' MOTION FOR REASONABLE ATTORNEYS' FEES, EXPENSES, AND COSTS** <br><br> Date:  August 8, 2019 <br> Time:  11 a.m. <br> Place:  Courtroom 12, 19th Floor <br> Hon. William Alsup <br><br> Action Filed:  May 24, 2018 |

Robert D. Newman, State Bar No. 86534
rnewman@wclp.org
Mona Tawatao, State Bar No. 128779
mtawatao@wclp.org
WESTERN CENTER ON LAW AND POVERTY
3701 Wilshire Boulevard, Suite 208
Los Angeles, CA  90010-2826
Tel.:  (213) 487-7211
Fax:  (213) 487-0242

Richard A. Schwartz, State Bar No. 267469
rschwartz@bgrfirm.com
BROWNE GEORGE ROSS LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
Tel: (310) 274-7100
Fax: (310) 275-5697

Maria del Pilar Gonzalez Morales, State Bar No. 308550
pilar.gonzalez@disabilityrightsca.org
Maria Iriarte, State Bar No. 150704
maria.iriarte@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
1111 Sixth Avenue, Suite 200
San Diego, CA  92104
Tel.:  (619) 239-7861
Fax:  (619) 239-7906

Allen L. Lanstra, State Bar No. 251510
allen.lanstra@probonolaw.com
Rachael Schiffman, State Bar No. 292005
rachael.schiffman@probonolaw.com
300 S. Grand Avenue, Suite 3400
Los Angeles, CA 90071
Tel: (213) 687-5000
Fax: (213) 687-5600

I, Stuart Seaborn, declare as follows:

1. This declaration is submitted in support of Plaintiffs' Motion for Award of Reasonable Attorneys' Fees and Costs. The facts set forth herein are within my personal knowledge or knowledge gained from my review of the pertinent documents. If called upon, I could and would testify competently thereto.

2. I have specialized in the use of litigation to advance the public interest for the past twenty years. Over the last sixteen years, I have focused almost exclusively on cases impacting the rights of persons with disabilities.

3. I am currently Managing Director for Litigation at Disability Rights Advocates ("DRA") in Berkeley, California. DRA is a 501(c)(3) non-profit, public interest organization exclusively dedicated to advancing the civil rights of people with disabilities. DRA engages in impact litigation on behalf of clients who face discrimination or other violations of civil rights or federal statutory protections. The attorneys at DRA have served as class counsel for at least 75 class actions, including leading cases in the field of disability rights law. A copy of my current CV is attached as Exhibit A to this declaration.

4. Representative cases that I successfully litigated while at DRA include:

   a. *United Spinal Association v. Board of Elections of the City of New York*, 882 F. Supp. 2d 615 (S.D.N.Y. 2012), aff'd sub nom. *Disabled in Action v. Board of Elections of the City of New York*, 752 F.3d 189 (2d Cir. 2014), a city-wide challenge to the inaccessibility of polling sites for persons with mobility and vision disabilities. The case resulted in the first decision by a circuit court to hold that the Americans with Disabilities Act requires public entities to affirmatively provide the same private and independent voting experience to disabled voters that they provide to the general population of non-disabled voters.

   b. *Ochoa v. City of Long Beach, Case No.*: 2:14-cv-04307-DSF (FFMx), a class action challenging the inaccessibility of pedestrian routes for persons using wheelchairs in the City of Long Beach. It resulted in a settlement agreement requiring accessibility improvements to thousands of curb ramps and sidewalks throughout the City.

1

c.      *Lighthouse for the Blind and Visually Impaired v. Redbox Automated Retail, LLC*, No. 4:12-cv-00195 PJH (N.D. Cal.), a statewide class-action on behalf of blind Californians resulting in a settlement agreement requiring accessibility improvements to all of the roughly 4000 Redbox video-rental kiosks in California.

d.      *California Council of the Blind v. County of Alameda*, 985 F. Supp. 2d 1229 (N.D. Cal. 2014), a class action challenging Alameda County's failure to provide functioning accessible voting machines to blind voters on election day, thereby denying them the opportunity to vote privately and independently; the case resulted in the first district court decision to find that the Americans with Disabilities Act requires a secret ballot for blind voters where one is provided to sighted voters.

e.      *Gray v. Golden Gate National Recreation Area*, Nos. 3:14-cv-00511 EDL, 3:08-cv-00722 EDL (N.D. Cal.), a case on behalf of a class of people with mobility and vision disabilities who could not fully access national parks in San Francisco, Marin, and San Mateo Counties.  After six years of litigation, the parties reached the first comprehensive settlement in the country focused on increasing the accessibility of a national park system for persons with vision and mobility impairments.

f.      *Phillips v City of New York*, 1:11-cv-06685 (KPF), a case challenging the New York City Police Department's blanket ban on the use of hearing aids by uniformed police officers. The case resulted in the removal of the blanket ban and a settlement agreement [Docket No. 162] requiring the NYPD to consider evaluation of officers using hearing aids on a case-by-case basis.

g.      *Eason v. NY State Board of Elections and Dept. of Motor Vehicles*, 16-cv-4292 (JPO), a statewide challenge to New York's voter registration and Department of Motor Vehicles websites on behalf of blind persons who use screen-reading software, resulting in the most comprehensive web accessibility remedial plan for a public entity to date.

5.      Prior to joining DRA, I worked at Disability Rights California ("DRC"), the non-profit law firm that is lead counsel for Plaintiffs in this case.  While at DRC, I litigated systemic class actions and individual cases on behalf of persons with disabilities.  Cases I

2

litigated while at Disability Rights California include *Napper v. County of Sacramento*, No. 2:10-cv-0119 JAM-EFM (E.D. Cal) (resulting in a preliminary injunction and consent decree preventing County-wide cuts to outpatient mental health services) and *Greater Napa Fair Housing v. Harvest Redwood Retirement*, No. C-07-3652 PJH (N.D. Cal) (resulting in updated reasonable accommodations policies for residents with disabilities in senior housing developments under the Fair Housing Act).

6.     I started my career as a trial attorney at the San Francisco Regional Office of the Antitrust Division of the U.S. Department of Justice after earning my J.D. from the UCLA School of Law in 1998 and my B.A. from UC Berkeley in 1995.

7.     I am familiar with the work of the attorneys for plaintiffs in this case.  DRC is nationally recognized for its antidiscrimination and public benefits advocacy on behalf of persons with disabilities.  Its free legal services are indispensable to those persons with disabilities in California who face discrimination or need advocacy to enforce their legal rights.   DRC's attorneys are highly regarded in the field of civil and disability rights advocacy.

8.     I am particularly familiar with the work of attorneys William Leiner, Elissa Gershon, and Robert Newman, having worked with them on multiple cases and being aware of the work they have done in the field of disability rights litigation.  Mr. Leiner and Ms. Gershon are exceptional litigators and widely recognized as specialists in litigating matters involving public benefits at the federal and state level. Mr. Newman is a nationally recognized expert in complex, public benefits litigation and has been a leader in the field for decades.

9.     In the context of my work, I have become familiar with rates generally awarded to prevailing parties in the context of complex disability rights litigation in the Bay Area market.

10.     I understand that plaintiffs are seeking a rate of $640 per hour for the work of Mr. Leiner, a Managing Attorney at DRC and a 2007 graduate of UC Hastings College of the Law.

11.     I understand that plaintiffs are seeking a rate of $785 per hour for the work of Ms. Gershon, Litigation Counsel at DRC and a 1993 graduate of UC Hastings College of Law.

12.     I also understand the plaintiffs are seeking a rate of $950 per hour for the work of Robert Newman, General Counsel at the Western Center on Law and Poverty and a 1977 graduate of Yale Law School.

13.     In my opinion, these rates are well in line with the market rates for attorneys with similar skill and experience in the Bay Area market.

14.     My hourly rate for complex litigation for 2019 is $785 per hour and my hourly rate for complex litigation in 2018 was $775 per hour.  These rates were set based on a study of market rates for complex litigation in the civil rights context in the Bay Area, prior fee awards issued, and rates charged to fee paying clients by private law firms that handle complex litigation.

15.     Examples of rates approved by the courts for complex disability rights cases similar to the current litigation include those approved in *Cole v. County of Santa Clara,* Case No. 16-CV-06594-LHK, including the approval of a 2018 rate of $775 per hour for a 1998 law school graduate and approval of a 2018 rate of $655 per hour for a 2005 law school graduate.   A copy of the Order approving class counsel's rates in *Cole v. Santa Clara* is attached as <u>Exhibit B</u>.

16.     Other examples include the rates approved by U.S. Magistrate Judge Elena James in the Northern District of California in *G.F. v. Contra Costa County*, Case No. 13-cv-03667-MEJ (hereafter "G.F."), which included approval of 2014 rates of $690 per hour for a 1999 law school graduate and $845 per hour for a 1985 law school graduate.  A copy of the Order Approving the fee application in G.F. is attached hereto as <u>Exhibit C</u>.

17.     Additional fee motions similarly sustained in the context of complex disability rights litigation include *Communities Actively Living Independent and Free et al. v. City and County of Los Angeles*, Case No. 09-cv-00287-CBM-RZ 013 (approving DRA's 2012 rates);  *Enyart v. National Conference of Bar Examiners*, Case No. 09-cv-05191-CRB (Magistrate Judge recommendation to approve DRA's 2011 rates);

4

*I. N. v. Kent;* Case No.: 3:18-cv-3099-WHA; Declaration of Stuart Seaborn in Support of Plaintiffs' Motion for Reasonable Attorneys' Fees, Expenses, and Costs

*Californians for Disability Rights, Inc. v. California Department of Transportation*, 249 F.R.D. 334, 337 (N.D. Cal. 2008) (Magistrate Judge Report and Recommendation and District Judge Order Accepting Report and Recommendation) (approving 2010 rates).

18.     Having practiced civil rights litigation for a number of years, I have learned that the award of attorneys' fees to successful plaintiffs' counsel is essential to the widespread enforcement of civil rights laws.

19.     DRA and the other non-profit civil rights firms I have teamed with, like DRC, do not charge their clients for their services. Many of the cases handled by these organizations have required considerable expenditure of time and resources prior to recovery.  Similarly, these organizations must often wait a substantial amount of time prior to recovering fees for successful cases.  Few plaintiff attorneys are willing or able to devote the significant amount of resources required to take on this type of litigation. Based on my experience, it is absolutely essential that in a case such as this, where Plaintiffs litigated the case to a successful result, that counsel recover their fees for time spent.

20.     There is a strong correlation between the award of reasonable attorneys' fees to successful plaintiffs' counsel and the effective enforcement of civil rights.  As a public interest legal organization, DRC has no realistic expectation of recovering fees or costs in the event that cases are lost.  Given the high evidentiary hurdles and discovery pitfalls, disability rights cases involve tremendous risks and costs.  Therefore, it is necessary for plaintiffs to obtain a fully compensatory fee in order to compensate for the contingent nature of success and exceptional success, and the risk of a public interest organization's investment in costs of litigation.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 13th day of June, 2019, at Berkeley, California.

_____*/s/  Stuart Seaborn*_____
Stuart Seaborn

///

///

5

*I. N. v. Kent;* Case No.: 3:18-cv-3099-WHA; Declaration of Stuart Seaborn in Support of Plaintiffs' Motion for Reasonable Attorneys' Fees, Expenses, and Costs

1    I hereby attest that I have on file all holograph signatures for any signatures

2    indicated by a "conformed" signature (/s/) within this e-filed document.

3

4    Dated:  June 13, 2019                    By:     /s/  William Leiner
                                                      William Leiner
5                                                     Attorneys for Plaintiffs

6

# EXHIBIT A

*I. N., et al. v. Jennifer Kent, et al.*
Case No. 3:18-CV-03099-WHA

**Resume for Stuart Seaborn**

# EXHIBIT A

# Stuart Seaborn

2001 Center Street, 4th Floor, Berkeley, CA 94704, sseaborn@dralegal.org (510) 665-8644

## EMPLOYMENT EXPERIENCE

**Disability Rights Advocates, September 2011—July 2016 and April 2018—present**
*Managing Director, Litigation*. Served as lead counsel on systemic disability rights cases of national significance, including multiple cases resulting in published opinions at the district court and appellate levels; conducted successful oral arguments in the Second Circuit Court of Appeals, district courts throughout California and in the Southern District of New York; negotiated multiple class-action settlements on behalf of persons with disabilities and community-based disability rights organizations; supervised and mentored junior attorneys.

**Disability Rights California, March 2002—January 2006, February 2007—September 2011, and August 2017—March 2018**
*Litigation Counsel.* Managed disability-rights litigation in state and federal courts, focused on Americans with Disabilities Act and Fair Housing Act cases; supervised team of attorneys, advocates and support staff; drafted and presented position statements at the state and county level on policies and regulations affecting the rights of persons with disabilities.

**Seaborn Legal, Alameda, CA July 2016—September 2016**
*Attorney*; Principal in a solo and contract-based civil rights litigation practice; conducted systemic and individual litigation on behalf of persons with disabilities in the areas of access to education, discrimination at places of public accommodations and access to public entities' programs and services.

**U.S. Dept. of Health & Human Services, Office for Civil Rights, January 2006—March 2007**
*Equal Opportunity Specialist*. Managed large case-load of health-care privacy and civil rights investigations; analyzed health care providers' policies and procedures for compliance with federal regulations; drafted formal letters of findings; staffed Spanish-language civil rights telephone information line; volunteered as a co-mediator in the EEOC's mediation program.

**Holguin & Garfield, APLC, March 2002—November 2002**
*Associate Attorney*. Represented union members and labor organizations in state court actions and National Labor Relations Board proceedings; drafted hearing briefs; conducted oral argument and depositions.

**U.S. Department of Justice, Antitrust Division, October 1998—November 2001**
*Honors Program Trial Attorney*: Engaged in all aspects of pre-trial litigation related to price-fixing, bid-rigging, and merger investigations; conducted plea negotiations; drafted pre-trial motions, plea agreements, and indictments; represented the Department at plea and sentencing hearings.

## EDUCATION

**UCLA School of Law**, JD 1998
Moot Court Honors Program: Best Brief Award Fall 1996; state team brief writer
Central American Resource Center Asylum Project: Volunteer
First AME Church Legal Clinic: Volunteer; service award winner

**University of California, Berkeley**, BA 1995
UC Berkeley Honor Students Society

## REPRESENTATIVE CASES

<u>Disabled in Action v. Board of Elections</u>, 752 F.3d 189 (2d Cir. 2014); 882 F.Supp. 2d. 615 (SDNY 2012). Systemic litigation challenging the City of New York's failure to provide accessible poll sites to voters with disabilities on election day. Prevailed at district court level and on appeal, resulting in the first opinion by a circuit court to hold that the Americans with Disabilities Act requires public entities to provide the same private and independent vote to persons with disabilities that they provide to the general population of registered voters.

<u>California Council of the Blind v. County of Alameda</u>, 985 F.Supp. 2d 1229 (ND Cal. 2013); Systemic litigation challenging Alameda County's failure to provide functioning accessible voting machines to blind voters on election day. Case resulted in the first district court opinion to find that the Americans with Disabilities Act requires counties to provide blind voters with a secret ballot where they provide a secret ballot to sighted voters.

<u>Legal Services for Prisoners with Children et al. v. Gregory Ahern at al.</u>, (Case No. RG1265266; Alameda County Superior Court). A case challenging the inaccessibility of the services, programs and facilities at the third largest jail in California. The litigation resulted in a settlement agreement that included system-wide architectural improvements and updated disability identification, tracking and accommodations policies.

<u>Phillips et al. v. City of New York et al.</u>, (Case No. 11-CV-6685 (KPF)).  A case challenging the New York City Police Department's blanket ban on the use of hearing aids by uniformed police offers.  The case resulted in a settlement agreement that included a reevaluation of the NYPD's hearing aid policy including consideration of a case-by-case evaluation of officers who use hearing aids. (*See* Dkt. No. 162).

<u>Ochoa v. City of Long Beach.</u>, (Case No. 2-14-CV-04307-DSF-FFM). Class-action litigation challenging the failure of the City of Long Beach to improve the accessibility of its sidewalks, crosswalks, curb ramps and other pedestrian routes for persons with mobility disabilities.  The case resulted in a class action settlement agreement that will provide approximately $200 million in accessibility improvements to the City's pedestrian routes as well as policy changes to ensure that the City complies with its new construction and maintenance obligations regarding the accessibility of its sidewalks and other pedestrian routes for the next thirty years.

<u>Lighthouse for the Blind and Visually Impaired v. Redbox Automated Retail, LLC</u>, (Case No. 4:12-cv-00195 PJH). Statewide class action on behalf of blind Californians resulting in settlement agreement requiring accessibility improvements to all of the roughly 4000 Redbox video-rental kiosks in California.

<u>Gray v. Golden Gate National Recreation Area</u>, (Case Nos. 3:14-cv-00511 EDL and 3:08-cv-00722 EDL). Class action resulting in first park-wide settlement to improve the accessibility of a national park system for persons with mobility and vision impairments.

<u>Napper v. County of Sacramento,</u> (Case No. 2:10-cv-0119 JAM-EFB); Class action resulting in preliminary injunction to prevent County-wide cuts to outpatient mental health services that would have put persons with mental illness at risk of being institutionalized due to a lack of community-based services.

<u>Greater Napa Fair Housing v. Harvest Redwood Retirement</u>, (Case No. C-07-3652 PJH), Fair Housing litigation resulting in system-wide settlement agreement and updated reasonable accommodations policies for residents with disabilities.

## PROFESSIONAL ACTIVITIES

Adjunct Professor at UC Hastings School of Law; Former Visiting/Adjunct Professor at King Hall UC Davis School of Law 2009-2011: Taught Disability Civil Rights Law and Litigation

Volunteer Attorney for Tenants Together--Richmond Housing Clinic

Member of Policy and Planning Subcommittee of the Governor's Committee on Employment of Persons with Disabilities (2009-2011)

Advisory Committee Consultant and Presenter for the California Department of Mental Health's California Strategic Plan on Reducing Mental Health Stigma and Discrimination

Member: Disability Rights Bar Association (2011-present)

## SKILLS/INTERESTS/AWARDS

Bilingual in English and Spanish

EEOC-trained mediator

Volunteer Legal Services Program (Bar Association of San Francisco): Probono Hero Award

<u>**EXHIBIT B**</u>

*I. N., et al. v. Jennifer Kent, et al.*
Case No. 3:18-CV-03099-WHA

**Court Order Approving Class Settlement in
David Cole, et al. v. County of Santa Clara**

<u>**EXHIBIT B**</u>

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID COLE, et al.,<br><br>              Plaintiffs,<br><br>     v.<br><br>COUNTY OF SANTA CLARA, et al.,<br><br>              Defendants. | Case No. 16-CV-06594-LHK<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT AND MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. Nos. 74, 75 |

WHEREAS, Plaintiffs David Cole, Leroy Benjamin, Erasmo Flores, Jr., Robert Phillips, and Brandon Williams ("Plaintiffs") and Defendant County of Santa Clara ("Defendant" erroneously sued herein as County of Santa Clara Department of Correction, and the County of Santa Clara Office of the Sheriff) (collectively, "the Parties") have advised the Court that they have settled the above-captioned litigation (hereafter, "Litigation") and have memorialized the terms of their settlement in a settlement agreement ("Consent Decree"), which is attached to the Declaration of Lisa Ells in Support of the Joint Motion for Final Approval of Class Settlement as Exhibit 1, ECF No. 75-1;

WHEREAS, the Court granted preliminary approval of the parties' Consent Decree on December 7, 2018, finding that it "falls within the range of possible approval" and "is the product

1

of arm's-length, serious, informed and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation," ECF No. 73;

WHEREAS, the Parties submitted their Joint Motion for Final Approval of Class Settlement on January 14, 2019 and jointly requested an order (1) finding the proposed Consent Decree's terms and conditions are fair, adequate, and reasonable; and (2) approving the Consent Decree, ECF No. 74;

WHEREAS, Plaintiff submitted their Motion for Attorneys' Fees and Costs on January 14, 2019, and attached the declarations of Lisa Ells, Stuart Seaborn, and Richard Pearl, ECF No. 75;

WHEREAS, the Court requested supplemental information regarding Plaintiffs' counsel's billing records and resumes on March 18, 2019 and March 19, 2019, ECF Nos. 81 & 82;

WHEREAS Plaintiff filed supplemental declarations of Lisa Ells and Stuart Seaborn in response to the Court's request for supplemental information on March 19, 2019, ECF Nos. 83 & 84;

WHEREAS, the Joint Motion for Final Approval of Class Settlement and the Motion for Attorneys' Fees and Costs came on for hearing before this Court on March 21, 2019; and

WHEREAS, the Court has considered the Joint Motion for Final Approval of Class Settlement, Plaintiffs' Motion for Attorneys' Fees and Costs, the proposed Consent Decree, and the arguments of counsel at the March 21, 2019 hearing;

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. The Court finds that the Consent Decree is fair, adequate, reasonable, and free from collusion. *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (noting district court's role in reviewing the substance of the settlement is solely to ensure that it is "fair, adequate, and free from collusion." (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)). It further appears that extensive evaluation of the merits has been conducted such that the attorneys for the Parties are able to reasonably evaluate their respective positions. It also appears to the Court that settlement at this time will avoid substantial additional costs to all Parties, as well as avoid the delay and the risks presented by further litigation regarding the issues addressed by the Consent

Decree. It further appears that the Consent Decree has been reached as the result of intensive, prolonged, serious, and non-collusive arms-length negotiations, including multiple in-person and telephonic settlement sessions. The Court therefore finds that all the relevant *Hanlon* factors weigh in favor of granting final approval in this case. *See Hanlon,* 150 F.3d 1011 at 1026.

2.      The Court finds that the distribution of notice by all Parties was done in a manner and form consistent with the Court's December 7, 2018 Order and the Court's January 30, 2019 Order extending the objection deadline, ECF Nos. 73 & 79, and meets the requirements of both due process and Rule 23 of the Federal Rules of Civil Procedure.

3.      The Court finds that the Consent Decree satisfies the requirements of 18 U.S.C. § 3626(a)(1)(A) in that it is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal rights of Plaintiffs and the Plaintiff Class.

4.      The Parties' Consent Decree is granted final approval pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, is incorporated by reference, and has the full force and effect of an order of this Court. Pursuant to Section IX of the Consent Decree, the Court retains jurisdiction to enforce the terms of the Consent Decree and to resolve disputes regarding compliance with the Consent Decree, subject to the limitations contained within the Consent Decree.

5.      This is a class action certified pursuant to Federal Rule of Civil Procedure 23(b)(2) and the Court may award attorneys' fees and costs to class counsel pursuant to Federal Rule of Civil Procedure 23(h).

6.      Plaintiffs are "prevailing parties" under the federal fee shifting statutes 42 U.S.C § 1983, 42 U.S.C. § 12205, and 29 U.S.C. § 794a(b). Plaintiffs are also successful litigants under California's private attorney general statute, Cal. Code Civ. Proc. § 1021.5. An award of attorney fees is appropriate under both Section 1021.5 and the separate fee-shifting statutes.

7.      Plaintiffs are represented by counsel at Rosen Bien Galvan & Grunfeld LLP ("RBGG") and Disability Rights Advocates ("DRA"). The requested 2018 rates for Plaintiffs' counsel – $650 per hour for RBGG Partner Lisa Ells, $525 per hour for RBGG Associate Kara

Janssen, $375 per hour for RBGG Associate Marc Shinn-Krantz, $340 per hour for RBGG Senior Paralegal Karen Stilber, $225 per hour for RBGG Paralegal Hanna Wallace and former RBGG Paralegal Sara Long, $775 per hour for DRA Managing Director of Litigation Stuart Seaborn, $655 for DRA's Former Director of Litigation Mary-Lee Smith, $425 for DRA Staff Attorney Michelle Iorio, and $230 for DRA Paralegals Carly Schaaf, Jaqueline U, and Jessica Flores – are reasonable and appropriate for their work in this litigation. The rates sought here are in line with the market rates prevailing in the San Francisco Bay Area for work of similar complexity by lawyers of similar skills and experience. Plaintiffs' counsel possess a significant amount of experience and expertise in disability rights, prisoners' rights, and complex class actions, which they utilized in this case to secure exceptional results.

8.      The time Plaintiffs' counsel expended on this case was appropriate given the length, intensity, and nature of the litigation. Plaintiffs' counsel effectively and efficiently litigated this case. Legal work was allocated between and among Plaintiffs' counsel to ensure work was performed effectively and efficiently utilizing the expertise of each organization. In calculating their lodestar, Plaintiffs have written off a total of approximately 10% of billable hours to date. The Court finds these billing judgment reductions to be reasonable and appropriate, in that they assure that Plaintiffs' counsel have accounted for any undue duplication of effort or inefficiency.

9.      From July 1, 2016 through March 18, 2019, DRA worked 1259.8 hours total and RBGG worked 1737.3 hours total. DRA wrote off 82.1 hours to claim 1177.7 hours, and RBGG wrote off 233.8 hours to claim 1503.5 hours. Therefore, the total hours claimed by Plaintiffs' counsel are 2681.2 hours.

10.     After reasonable billing judgment reductions, Plaintiffs' lodestar for work performed from July 1, 2016 through March 18, 2019 is $1,477,123.50, representing compensation for 2681.2 hours of work invested in this case.

11.     Plaintiffs' counsel is entitled to recover the costs advanced to prosecute this litigation on behalf of the class. Plaintiffs have incurred costs of $14,860.53.

12.     Accordingly, the Court finds that Plaintiffs' counsel's total lodestar plus expenses

4

from July 1, 2016 through March 18, 2019 of $1,477,123.50 is reasonable and appropriate under federal and state law for the work performed and the success achieved for the class. This amount far exceeds the negotiated amount of $1 million provided for attorneys' fees and costs through the effective date of the Consent Decree pursuant to Section VI(A) of the Consent Decree. The Consent Decree's effective date is the date this Court grants final approval of this class action settlement.

13.    Defendant is ordered to pay Plaintiffs $1 million for reasonable attorneys' fees and costs. Payment shall be made in a manner consistent with the parties' negotiated language in Section VI of the Consent Decree.

14.    Attorneys are entitled to recover fees for time spent monitoring and enforcing compliance with settlement agreements in civil rights lawsuits. Monitoring work is compensable even if it does not result in additional judicial relief. Accordingly, Plaintiffs are entitled to attorneys' fees and costs for implementation and monitoring of the Consent Decree.

15.    The agreed-upon monitoring process for this case is appropriate and necessarily robust. The Consent Decree details extensive monitoring work to be performed by Plaintiffs' counsel, including work required to implement policies required by the Consent Decree. The parties have negotiated that such work, plus any enforcement work that proves necessary subject to the narrow exceptions specified at Section VI(B)(2) of the Consent Decree, will be fully compensated by a fixed payment of $2.2 million for attorneys' fees and costs incurred or attributable to any and all work performed from the effective date of the Consent Decree up through the term as defined in Section VIII of the Consent Decree.

16.    Defendant is ordered to pay Plaintiffs $2.2 million for reasonable attorneys' fees and costs for work performed from the effective date of the Consent Decree up through the term as defined in Section VIII of the Consent Decree. The Consent Decree Term is twelve months after the certificate of occupancy for the new jail has been issued and the Country has begun placement of inmates in the new jail. The new jail is expected to be constructed by mid-2023, which is four-and-a-half years from today. With likely delays in construction, the parties anticipate that the $2.2

million will cover Plaintiffs' counsel's reasonable attorneys' fees and costs for worked performed over the next five-and-a-half years. Payment shall be made in a manner consistent with the parties' negotiated language in Section VI of the Consent Decree. Specifically, the $2.2 million shall be paid into the Cole Jail Monitoring Qualified Settlement Fund ("QSF"). Plaintiffs' counsel may not seek payment out of the QSF until monitoring and enforcement work is actually performed and must substantiate any request for disbursement from the QSF with records detailing the fees and costs incurred for which compensation is being sought.

**IT IS SO ORDERED.**

Dated: March 21, 2019

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

Case No. 16-CV-06594-LHK
ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT AND MOTION FOR ATTORNEYS' FEES

United States District Court
Northern District of California

## EXHIBIT C

*I. N., et al. v. Jennifer Kent, et al.*
Case No. 3:18-CV-03099-WHA

**Court Order Approving Class Settlement in
Hector Ochoa, et al. v. City of Long Beach, et al.**

# EXHIBIT C

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   HECTOR OCHOA, CYNDE SOTO,          Case No.  2:14-cv-04307-DSF-FFM
     CATHY SHIMOZONO, BEN                AMENDED
12   ROCKWELL, and SHARON               **ORDER APPROVING CLASS**
     PARKER, on behalf of themselves and **ACTION SETTLEMENT**
13   all others similarly situated,
                                        Assigned to the Hon. Dale S. Fischer
14                    Plaintiffs,       Complaint Filed:  June 4, 2014

15   v.

16   CITY OF LONG BEACH, a public
     entity; and BOB FOSTER, in his
17   official capacity as Mayor,

18                    Defendants.

19

20        WHEREAS, on July 24, 2017, the Court (the Honorable Dale S. Fischer

21   presiding) held a hearing (the "Fairness Hearing") to determine whether the

22   Settlement in this action by Defendant City of Long Beach and Plaintiffs Hector

23   Ochoa, Cynde Soto, Cathy Shimozono, Ben Rockwell, and Sharon Parker, as set

24   forth in the Settlement Agreement and Release of Claims, a copy of which is

25   attached hereto as Exhibit A (the "Settlement Agreement"), is fair, reasonable and

26   adequate, such that an Order of final approval should be issued and a final judgment

27   upon said Settlement Agreement should be entered by the Court;

28        WHEREAS, the Fairness Hearing was attended by the Parties, through their

692415.1

1   respective counsel of record in this action, and by such other individuals and

2   entities as set forth in the record in this matter;

3         WHEREAS, the Court has jurisdiction over the subject matter of this action,

4   the Plaintiffs, the City, and the Settlement Agreement; and

5         WHEREAS, the Court has read and considered the Parties' Joint Motion for

6   Final Approval of Class Action Settlement, the points and authorities and

7   declaration submitted therewith, the proposed Settlement Agreement, and all of the

8   supporting documents; and finds the Settlement Agreement to be fair, reasonable,

9   and adequate:

10        NOW, THEREFORE, IT IS HEREBY ORDERED:

11        1.    The Court adopts the terms and definitions set forth in the Settlement

12   Agreement, attached hereto as Exhibit A, and all terms of the Settlement

13   Agreement are incorporated herein by reference.

14        2.    The Court has and reserves exclusive and continuing jurisdiction over

15   the subject matter of this action, the Plaintiffs, the Settlement Class, the Settlement

16   Agreement and the City.

17        3.    The Court finds that the notice to the Settlement Class of the pendency

18   of this action and of the proposed Settlement Agreement was disseminated by each

19   of the means required under the Settlement Agreement and the Order of this Court

20   dated April 10, 2017, and was otherwise fully implemented.

21        4.    The Court finds that such notice to the Settlement Class, as ordered

22   and implemented, was reasonably calculated under the circumstances to apprise the

23   Settlement Class Members of the pendency of this action, all material elements of

24   the proposed Settlement Agreement, and their opportunity (a) to submit written

25   objections to or comments on the Settlement Agreement, and (b) to appear at the

26   Fairness Hearing to object to or comment on the Settlement Agreement.  The

27   Notice of Settlement was reasonable and the best notice practicable to all

28   Settlement Class Members and complied with the Federal Rules of Civil Procedure,

due process, and all other applicable laws and rules. A full and fair opportunity has been afforded to the members of the Settlement Class to participate during the Fairness Hearing, and all other persons wishing to be heard have been heard. Accordingly, the Court determines that all members of the Settlement Class, as set forth below, are bound by this Order.

5. On April 10, 2017, this Court provisionally certified the following Settlement Class, as defined in the Settlement Agreement: "all persons (including, without limitation, residents of and visitors to the City) with any Mobility Disability, who, at any time from July 14, 2014 through the Term have used or will use the Pedestrian Facilities in the City of Long Beach." *See* ECF No. 148; Settlement Agreement Part II.T.

6. On April 10, 2017, this Court appointed Plaintiffs Hector Ochoa, Cynde Soto, Cathy Shimozono, Ben Rockwell, and Sharon Parker as class representatives of the Settlement Class, and appointed the following counsel as Class Counsel to represent the Settlement Class: (i) Goldstein Borgen Dardarian & Ho; (ii) Disability Rights Legal Center; and (iii) Disability Rights Advocates.

7. This Court finds that the Settlement Class continues to meet the requirements for class certification under the Federal Rules of Civil Procedure and all other applicable laws and rules.

8. In particular, the Court finds that: (a) joinder of all Settlement Class Members in a single proceeding would be impracticable, if not impossible, because of their numbers and dispersion; (b) there are questions of law and fact common to the Settlement Class; (c) Plaintiffs' claims are typical of the claims of the Settlement Class that they seek to represent for purposes of settlement; (d) Plaintiffs have fairly and adequately represented the interests of the Settlement Class and will continue to do so; (e) Plaintiffs and the Settlement Class are represented by qualified, reputable counsel who are experienced in preparing and prosecuting class actions, including those involving the sort of practices alleged in the Complaint;

1   and (f) the City acted or refused to act on grounds that apply to the Settlement

2   Class, so that final declaratory and injunctive relief is appropriate to the Settlement

3   Class.

4        9.    Class certification is therefore an appropriate method for protecting the

5   interests of the Settlement Class and resolving the common issues of fact and law

6   arising out of the Plaintiffs' claims while also eliminating the risk of duplicative

7   litigation.  Accordingly, the Court hereby makes final its earlier provisional

8   certification of the Settlement Class and further confirms the appointment of the

9   Class Representatives and Class Counsel to represent the Settlement Class, as set

10   forth above.

11        10.    The Court grants final approval of the Settlement Agreement and finds

12   that it is fair, reasonable, adequate, and in the best interests of the Settlement Class

13   as a whole.  The Court further finds that the City's expenditure of the amounts set

14   forth in Section 13 of the Settlement Agreement for the purposes set forth in the

15   Settlement Agreement is proper and reasonably calculated based on the available

16   information to maintain and ensure accessibility of the existing Pedestrian Facilities

17   located in the City of Long Beach to persons with Mobility Disabilities.

18   Accordingly, the Settlement shall be consummated in accordance with the terms

19   and conditions of the Settlement Agreement.

20        11.    No objections were made to the Settlement Agreement.

21        12.    The Class Representatives and all Settlement Class members (and their

22   respective heirs, assigns, successors, executors, administrators, agents and

23   representatives) are conclusively deemed to have released and forever discharged

24   the City and its Related Entities from all Released Claims as set forth in the

25   Settlement Agreement.  All members of the Settlement Class are bound by this

26   Order.

27        13.    All Settlement Class members are conclusively deemed to have

28   acknowledged that the Released Claims may include claims, rights, demands,

1   causes of action, liabilities, or suits that are not known or suspected to exist as of

2   the date of the Settlement Agreement and shall have released all such Released

3   Claims against the City and its Related Entities, as set forth in the Settlement

4   Agreement.  Further, in accordance with the Settlement Agreement, all Settlement

5   Class members are deemed to have waived their protections under California Civil

6   Code § 1542 as it applies to any and all claims for injunctive or declaratory relief

7   concerning the accessibility of the Pedestrian Facilities, except for those that remain

8   in existence after the expiration of the Term.

9        14.    Pursuant to the Parties' Settlement Agreement, on June 2, 2017,

10   Plaintiffs filed a Motion for an Award of Reasonable Attorneys' Fees, Expenses,

11   and Costs (ECF No. 153), which was heard by the Court on September 11, 2017.

12   Thereafter, on October 10, 2017, the Parties reached an agreement to fully resolve

13   Plaintiffs' claim for reasonable attorneys' fees, expenses, and costs from the

14   inception of this matter through the date of Final Approval of the Settlement

15   Agreement in the amount of $3,364,904.  The Court approves the Parties'

16   settlement regarding attorneys' fees, expenses, and costs, finding that an award of

17   $3,364,904 for Plaintiffs' attorneys' fees, expenses and costs incurred from the

18   inception of this matter through the date of Final Approval of the Settlement

19   Agreement is reasonable and well supported by the points and authorities and

20   evidence submitted in support of, and opposition to, Plaintiffs' Motion for an

21   Award of Reasonable Attorneys' Fees, Expenses, and Costs.

22        15.    All members of the Settlement Class are bound by this Order.

23   Throughout the Term of the Settlement Agreement, Settlement Class Members are

24   enjoined from asserting or prosecuting any claims that are released by the

25   Settlement Agreement.

26        16.    The Settlement Agreement and this Order are not admissions of

27   liability or fault by the City or its Related Entities, or a finding of the validity of any

28   claims in this action or of any wrongdoing or violation of law by the City or its

CASE NO: 2:14-CV-04307-DSF-FFM
[PROPOSED] ORDER APPROVING CLASS
ACTION SETTLEMENT

692415.1

1   Related Entities.  The Settlement Agreement is not a concession by the Parties and,

2   to the fullest extent permitted by law, neither this Order, nor any of its terms or

3   provisions, nor any of the negotiations connected with it, shall be offered as

4   evidence or received in evidence in any pending or future civil, criminal, or

5   administrative action or proceeding to establish any liability of, or admission by the

6   City, its Related Entities, or any of them.  Notwithstanding the foregoing, nothing

7   in this Order shall be interpreted to prohibit the use of this Order to consummate or

8   enforce the Settlement Agreement or Order, or to defend against the assertion of

9   Released Claims in any other proceeding, or as otherwise required by law.

10          17.    In accordance with the terms of the Settlement Agreement, which is

11   attached hereto as Exhibit A, the Court reserves exclusive and continuing

12   jurisdiction over Plaintiffs, the Settlement Class members, the City, and the

13   Settlement Agreement throughout the term of the Settlement Agreement, for the

14   sole purpose of supervising the implementation, enforcement, construction, and

15   interpretation of the Settlement Agreement and this Order.  In that regard, any

16   challenges to the Settlement Agreement's terms or implementation, whether under

17   state or federal law, shall be subject to the exclusive and continuing jurisdiction of

18   this Court.

19          **IT IS SO ORDERED.**

20

21

22   Dated:  10/17/17
                                        _____
23                                      HON. DALE S. FISCHER
                                        UNITED STATES DISTRICT JUDGE
24

25

26

27

28

CASE NO: 2:14-CV-04307-DSF-FFM
[PROPOSED] ORDER APPROVING CLASS
ACTION SETTLEMENT

692415.1

# Exhibit A

001



1

2

3

4

5

6

7

8    UNITED STATES DISTRICT COURT

9    CENTRAL DISTRICT OF CALIFORNIA

10

11   HECTOR OCHOA, CYNDE SOTO,                  Case No.  2:14-cv-04307-DSF-FFM
     CATHY SHIMOZONO, BEN
12   ROCKWELL, and SHARON                       SETTLEMENT AGREEMENT AND
     PARKER, on behalf of themselves and        RELEASE OF CLAIMS
13   all others similarly situated,

14                 Plaintiffs,

15   v.

16   CITY OF LONG BEACH, a public
     entity; and BOB FOSTER, in his
17   official capacity as Mayor,

18                 Defendants.

19

20

21

22

23

24

25

26

27

28

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

670919.3                        - 1 -                SETTLEMENT AGREEMENT AND
                                                         RELEASE OF CLAIM
002

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (the "Settlement Agreement") is made and entered into by and between: (i) the City of Long Beach (the "City"); and (ii) Hector Ochoa, Cynde Soto, Cathy Shimozono, Ben Rockwell and Sharon Parker (collectively, "Plaintiffs"), individually and on behalf of themselves and a class of persons similarly situated (the "Settlement Class," as defined below). Plaintiffs and the City will be referred to in this Settlement Agreement individually as a "Party" and collectively as the "Parties."

## I.    RECITALS

This Settlement Agreement is made and entered into with reference to the following facts:

A.    On June 4, 2014, Plaintiffs commenced a class action against the City and former Mayor Bob Foster in the United States District Court for the Central District of California (the "District Court"), Case No. 2:14-cv-04307-DSF-FFM (the "*Ochoa* Action"). In the Complaint, Plaintiffs alleged claims under Title II of the Americans with Disabilities Act (42 U.S.C. § 12131, *et seq.*); Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794, *et seq.*); and California Government Code § 11135, *et seq*. Plaintiffs filed a First Amended Complaint on September 30, 2014.

B.    On September 15, 2015, the District Court granted Plaintiffs' motion for class certification pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. The District Court certified the following class of persons for declaratory and injunctive relief only: "All persons with mobility disabilities who use or will use the pedestrian rights of way in the City of Long Beach."

C.    During the pendency of the *Ochoa* Action, the City, Plaintiffs and Class Counsel (as defined below) undertook extensive discovery and engaged in extensive discussions regarding a potential resolution and settlement of the alleged claims, including in mediation before private mediators. As a result of such

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

- 2 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

670919.3

003

discussions, the Parties now wish to effect a complete resolution and settlement of
the claims, disputes, and controversies relating to the allegations of Plaintiffs and
the Settlement Class, and to resolve their differences and disputes by settling such
claims, disputes and controversies under the terms set forth in this Settlement
Agreement.

D.     In entering into this Settlement Agreement, the Parties intend to
resolve any and all claims for declaratory and injunctive relief that either were or
could have been asserted in the *Ochoa* Action on behalf of individuals with
Mobility Disabilities (as defined below) with respect to the accessibility of the
City's Pedestrian Facilities (as defined below).   Said settlement is expressly
intended to assure that no further lawsuits for these claims for declaratory and
injunctive relief may be maintained at any time during the Term (as defined below)
of this Settlement Agreement.

E.     The Parties intend this Settlement Agreement to bind and apply to the
City, its Related Entities (as defined below), Plaintiffs (individually and in their
capacity as representatives of the Settlement Class) and all members of the
Settlement Class.  This Settlement Agreement will extinguish all Released Claims
(as defined below) and constitutes the final and complete resolution of all issues
addressed herein.

## II.     DEFINITIONS

For purposes of this Settlement Agreement, the following terms have the
following definitions:

A.     "Access Request Program" means the procedure for residents of the
City to request installation, repair, or replacement of Pedestrian Facilities, pursuant
to Section 19.

B.     "Accessibility Laws" means all state and federal laws and regulations
requiring, promoting, and/or encouraging equal or improved access to persons with
disabilities (including, without limitation, the following:  the Americans with

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES
004

- 3 -

670919.3

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

1  Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq*. and all of its implementing

2  regulations and design standards; the Rehabilitation Act of 1973, 29 U.S.C. §§ 790,

3  *et seq*. and all of its implementing regulations and design standards; California

4  Government Code §§ 4450, *et seq*.; California Government Code §§ 11135, *et seq*.;

5  California Health & Safety Code §§ 19955, *et seq*.; and the regulations codified in

6  Title 24 of the California Code of Regulations).

7       C.    "Accessibility Standards" means federal and state accessibility laws,

8  including the Americans with Disabilities Act Accessibility Guidelines

9  ("ADAAG"), and Title 24 of the California Building Code ("Title 24").

10       D.    "ADA Coordinator" means the individual or individuals retained or

11  designated by the City pursuant to and in accordance with the terms of Section 15.

12       E.    "Alteration" or "Alterations" means a modification to a Pedestrian

13  Facility that triggers the requirements in Sections 16.1.1 and 16.2.1 and specifically

14  includes any resurfacing (excluding slurry seals), repaving (excluding rock and oil

15  patches), reconstruction, or widening of streets or other roadways or alleys. *See* the

16  U.S. Department of Justice/U.S. Department of Transportation Joint Technical

17  Assistance on Resurfacing Requirements at http://www.ada.gov/doj-fhwa-ta.htm

18  and http://www.ada.gov/doj-fhwa-ta-glossary.htm).

19       F.    "City Council" means the Long Beach City Council.

20       G.    "Class Counsel" means collectively the law firm of Goldstein Borgen

21  Dardarian & Ho, the Disability Rights Legal Center, and Disability Rights

22  Advocates.

23       H.    "Dispute" or "Disputes" means any dispute relating to any violation of

24  or failure to perform any of the provisions of this Settlement Agreement and/or

25  disputes between the Parties concerning the interpretation, implementation,

26  monitoring, compliance, and modification of the Settlement Agreement.  All

27  Disputes will be resolved using the Dispute Resolution Procedure outlined in

28  Section 21.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

670919.3

005

- 4 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

1    I.    "Evaluation Period" means the two-year period between the Final

2  Approval and the completion of both the updated Self-Evaluation (as defined

3  below), pursuant to the terms of Section 11 and the Updated Transition Plan (as

4  defined below), pursuant to the terms of Section 12.

5    J.    "Fairness Hearing" means the hearing to be held by the District Court,

6  pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, to determine

7  whether the settlement set forth in this Settlement Agreement should be approved.

8    K.    "Final," as applied to the term "Judgment" (as defined below), means

9  that (i) the time for appeal or writ has expired and no appeal or petition for review

10  has been taken, or (ii) if an appeal or petition for review is taken and the settlement

11  set forth in this Settlement Agreement has been affirmed in full, the time period

12  during which any further appeal or review can be sought (including through any

13  appeal, petition for review, writ of certiorari or otherwise) has expired and no such

14  further appeal or review has been sought.  In the event that no objections to this

15  Settlement Agreement are raised prior to or at the Fairness Hearing, that any

16  objections that have been raised have been fully and formally withdrawn, or that no

17  viable objections otherwise exist at the time of the Fairness Hearing, the Judgment

18  will become "Final" as of the District Court's issuance of the Judgment.  If the

19  Judgment is set aside, materially modified, disapproved or overturned by any court,

20  and is not fully reinstated on further appeal or review, the Judgment will not

21  become or be "Final."

22    L.    "Final Approval" means the order by the District Court, after notice

23  and the holding of the Fairness Hearing, granting approval of this Settlement

24  Agreement under Rule 23(a) of the Federal Rules of Civil Procedure.  The hearing

25  at which such Final Approval is considered or granted, should a hearing be held,

26  will be called the "Final Approval Hearing."

27    M.    "Judgment" means a judgment entered by the District Court in the

28  *Ochoa* Action, substantially in the form attached to this Settlement Agreement as

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

670919.3

006

- 5 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

Exhibit "D," that, among other things, fully approves the terms of this Settlement Agreement and retains the District Court's jurisdiction to enforce the Settlement Agreement throughout the Term.

N.    "Mobility Disability" or "Mobility Disabilities" means any impairment or medical condition that limits a person's ability to walk, ambulate, maneuver around objects, or to ascend or descend steps or slopes.  A person with a Mobility Disability may or may not use a wheelchair, scooter, electric personal assisted mobility device, crutches, walker, cane, brace, orthopedic device, or similar equipment or device to assist her or his navigation along sidewalks, or may be semi-ambulatory.

O.    "Notice of Settlement" means the notice substantially in the form attached to this Settlement Agreement as Exhibit "B", to be provided to the Settlement Class as set forth in Section 6.5.

P.    "Pedestrian Facility" or "Pedestrian Facilities" means any sidewalk, crosswalk, curb, curb ramp, walkway, pedestrian right of way, pedestrian undercrossing, pedestrian overcrossing, or other pedestrian pathway or walk of any kind that is, in whole or in part, owned, controlled or maintained by or otherwise within the responsibility of the City.

Q.    "Preliminary Approval" means the preliminary approval of this Settlement Agreement by the District Court as described in Section 6.2.

R.    "Related Entities" means any and all departments, divisions, agencies, bureaus, commissions, offices, corporations, commissioners, officers, employees, agents, representatives, board members, officials, assigns, assignors, attorneys, affiliates, predecessors, successors, employee welfare benefit plans, pensions, or deferred compensation plans (and their trustees, administrators, and other fiduciaries) of the City and any other person or entity acting or purporting to act by, through, under, in concert with or on behalf of the City, or any of them, with respect to the matters described in this Settlement Agreement.

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

1      S.      "Self-Evaluation" means the self-assessment required of public entities

2  under Title II of the Americans with Disabilities Act.

3      T.      "Settlement Class" means the class of all persons (including, without

4  limitation, residents of and visitors to the City) with any Mobility Disability, who,

5  at any time from July 14, 2014 through the Term have used or will use the

6  Pedestrian Facilities in the City of Long Beach.

7      U.      "Standard Plan" or "Standard Plans" means the engineering standard

8  plans prepared by the City's Public Works Department for the guidance of

9  engineers, contractors and developers who have an interest in the preparation of

10  plans and the construction of facilities and improvements under jurisdiction of the

11  City.

12      V.      "Temporary Event" or "Temporary Events" means and includes, but is

13  not limited to, the Long Beach Grand Prix, Pride Parade, and the Long Beach

14  Marathon.

15      W.      "Term" means the term of this Settlement Agreement which begins

16  with the date of Final Approval and will expire thirty (30) years thereafter.

17      X.      "Transition Plan" means the transition plan required under Title II of

18  the Americans with Disabilities Act.

19      Y.      "Prior Transition Plan" means the Transition Plan the City completed

20  in 1994.

21      Z.      "Updated Transition Plan" means the Transition Plan the City will

22  complete by the end of the Evaluation Period, pursuant to the terms of Section 12.

23      AA.   "WCAG" means version 2.0 Levels A and AA of the "Web Content

24  Accessibility Guidelines" published by the Web Accessibility Initiative (WAI) of

25  the World Wide Web Consortium (W3C), or any subsequent version(s) that are

26  published during the Term.

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

670919.3

008

- 7 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

## III.   AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, the Parties agree as follows:

1. **Recitals**

The recitals set forth above are incorporated by reference in this Section and made a part of this Settlement Agreement.

2. **No Admission**

The City has denied and disputed, and continues to deny and dispute, the claims and contentions by Plaintiffs, and does not admit any liability to Plaintiffs or otherwise.  By agreeing to and voluntarily entering into this Settlement Agreement, there is no admission or concession by the City, direct or indirect, express or implied, that any Pedestrian Facility located in the City is in any way inaccessible to individuals with a Mobility Disability, that the City owns or has responsibility to build, fix, or remove barriers to access on any such Pedestrian Facility, or that the City has violated any Accessibility Laws, committed any wrongdoing, or has any liability for any alleged matters.  The City does not admit any entitlement by Plaintiffs to any relief, or that Plaintiffs have met or can meet the legal standards for a preliminary or permanent injunction, or a declaratory judgment to issue. Moreover, inclusion of obligations or requirements in this Settlement Agreement will not be construed as a concession or admission that, absent this Settlement Agreement, the City would otherwise have such obligations or requirements or that the City has failed to abide by any applicable policies or procedures in the past.  To the contrary, the City maintains that with respect to all matters alleged by Plaintiffs, it has fully complied with all Accessibility Laws and all other applicable laws at all relevant times.  Notwithstanding any other provisions in this paragraph, the City agrees that Plaintiffs are the prevailing parties for purposes of reasonable attorneys' fees and costs.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

670919.3
009

- 8 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

3.     **No Findings of Liability or Wrongdoing**

The Parties understand and agree that the District Court made no findings of any liability or wrongdoing by the City in the *Ochoa* Action.  In addition, the District Court made no findings that the City, with respect to any Pedestrian Facilities located in the City:  (i) acted intentionally to discriminate against persons with disabilities; (ii) acted with reckless disregard of the rights of persons with disabilities; or (iii) acted in any manner that would support a finding that the City is liable for damages under the Accessibility Laws.

4.     **Purpose of Settlement**

To avoid the cost, expense, and uncertainty of protracted litigation and preclude any similar lawsuits or challenges during the Term, the City and Plaintiffs agree to enter into this Settlement Agreement; and agree that it will be binding upon the City, Plaintiffs, and all members of the Settlement Class, will extinguish all Released Claims and will constitute the final and complete resolution of all issues addressed herein.  None of the Parties will take the position that the doctrines of res judicata and collateral estoppel do not apply to the Parties or the Settlement Class with respect to the Released Claims.

5.     **Conditions Precedent**

The Parties agree that this Settlement Agreement will be conditioned upon, and will be effective only upon, the occurrence of each and every one of the following events:

(a)     The Settlement Agreement has been approved by the City Council.

(b)     The Settlement Agreement has been fully executed by the Parties.

(c)     In accordance with Section 6.2, Plaintiffs and the City have jointly moved for an order granting Preliminary Approval of the Settlement Agreement, and such motion has been fully granted by the District Court.

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

670919.3

010

1    (d)    In accordance with Section 6.7, Plaintiffs and the City have

2  jointly moved for Final Approval of the Settlement Agreement and entry of the

3  Judgment.

4    (e)    In accordance with Section 6.10, a Final Approval Hearing has

5  been conducted by the District Court, and the Judgment has been entered by the

6  District Court and has become Final.

7    Prior to the occurrence of each of the foregoing events described in this

8  Section 5, the Parties' only obligations under this Settlement Agreement will be

9  those set forth in Section 6.

10    6.    **Settlement Approval Process**

11        6.1.    **Court Approval**

12    This Settlement Agreement will be subject to approval by the District Court.

13  However, nothing in this Settlement Agreement will be deemed to authorize the

14  District Court to change or modify any of its terms.  The Parties agree that any

15  change, modification or rejection of any of the provisions of this Settlement

16  Agreement by the District Court or any other court will constitute a material

17  modification of this Settlement Agreement, will prevent the Judgment from

18  becoming Final, and will give any Party the right to terminate this Settlement

19  Agreement in its entirety.

20        6.2.    **Preliminary Approval by the District Court**

21    Within fifteen (15) days of circulating the fully executed Settlement

22  Agreement, the Plaintiffs and the City will jointly submit a request to the District

23  Court for Preliminary Approval of this Settlement Agreement in the *Ochoa* Action,

24  along with a request for an order from the District Court (substantially in the form

25  attached to this Settlement Agreement as Exhibit "A") (the "Preliminary Approval

26  Order"):  (i) preliminarily approving this Settlement Agreement; (ii) conditionally

27  certifying the Settlement Class; (iii) appointing the Plaintiffs as class

28  representatives for the Settlement Class; (iv) appointing Class Counsel to represent

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

670919.3

011

- 10 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

1 the Settlement Class; (v) directing notice to the Settlement Class as provided in this

2 Settlement Agreement; (vi) setting forth procedures and deadlines for comments

3 and objections as provided in this Settlement Agreement; (vii) scheduling a

4 Fairness Hearing; and (viii) enjoining Settlement Class members from asserting or

5 maintaining any claims to be released by this Settlement Agreement pending the

6 Fairness Hearing.

7       6.3.   **Conditional Certification of the Settlement Class**

8      The Parties acknowledge and agree that the Honorable Judge Dale Fischer

9 has certified a class in this case, and agree that the Settlement Class is materially

10 identical to the class previously certified by the Court. The Parties further agree

11 that the Settlement Class will be conditionally certified, in accordance with the

12 terms of this Settlement Agreement, solely for purposes of effectuating the

13 settlement embodied in this Settlement Agreement. The City does not consent, and

14 Class Counsel and Plaintiffs agree that the City will not be deemed to have

15 consented, to the certification of the Settlement Class for any purpose other than to

16 effectuate the settlement embodied in this Settlement Agreement. In the event the

17 Settlement Agreement is terminated pursuant to its terms, or if for any reason the

18 settlement embodied in this Settlement Agreement is not effectuated or the

19 Judgment does not become Final, the certification of the Settlement Class will be

20 vacated, the Court's September 15, 2015 Order granting Plaintiffs' Motion for

21 Class Certification will remain in effect, and the *Ochoa* Action will proceed with

22 the class previously certified by the Court.

23       6.4.   **No Opt-Out**

24      The Parties agree that the Settlement Class will be certified in accordance

25 with the standards applicable under Rule 23(b)(2) of the Federal Rules of Civil

26 Procedure and that, accordingly, no Settlement Class member may opt out of any of

27 the provisions of this Settlement Agreement. The Parties further agree that any

28 order, ruling, or determination by or of the District Court or any other court that

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles
012

670919.3

- 11 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

1  permits or allows any Settlement Class member to opt out of any of the provisions

2  of this Settlement Agreement will constitute a material modification of this

3  Settlement Agreement, will prevent the Judgment from becoming Final and will

4  give any Party the right to terminate this Settlement Agreement in its entirety.

5      6.5. **Notice to the Settlement Class**

6     The Parties will jointly request approval by the District Court of notice to the

7  Settlement Class as set forth in this Section 6.5.  Following the District Court's

8  issuance of the Preliminary Approval Order, the Parties will provide notice of the

9  proposed Settlement Agreement, advising the members of the Settlement Class of

10  the terms of the proposed Settlement Agreement and their right to object to the

11  proposed Settlement Agreement.  This notice will be published as follows:

12      6.5.1. Within thirty (30) days after the District Court has issued

13  the Preliminary Approval Order, the City will cause notice of the settlement to be

14  published for four (4) consecutive weeks in the following papers of general

15  circulation:  the *Long Beach Press-Telegram,* the *Long Beach Post,* and the *Los

16  Angeles Times* in English, *La Opinion* (in Spanish), and the *Khmer Post* (in

17  Khmer).  Such notice will include the terms required by the District Court, which

18  are anticipated to be as follows:  (i) a brief statement of the *Ochoa* Action, the

19  settlement embodied in this Settlement Agreement, and the claims released by the

20  Settlement Class; (ii) the date and time of the Fairness Hearing and/or Final

21  Approval Hearing of the proposed Settlement Agreement; (iii) the deadline for

22  submitting objections to the proposed Settlement Agreement; and (iv) the web

23  page, address, and telephone and fax numbers that may be used to obtain a copy of

24  the Notice of Settlement (substantially in the form attached to this Settlement

25  Agreement as Exhibit "B") in English, Spanish, Khmer, or alternative accessible

26  formats for individuals with visual impairments.  The City will pay the costs for the

27  publication of the notice described in this Section 6.5.1.

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

670919.3

013

- 12 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

1              6.5.2. Within twenty (20) days after the District Court has

2  issued the Preliminary Approval Order, the City will cause a copy of the Notice of

3  Settlement to be posted and remain posted on the City's official website

4  (www.longbeach.gov) for four (4) consecutive weeks.  The website will also make

5  a copy of the Notice of Settlement available in English, Spanish, and Khmer, and in

6  an accessible electronic format that can be recognized and read by software

7  commonly used by individuals with visual impairments to read web pages.  All

8  pages or content on these websites that are part of the process for accessing the

9  information in the Notice of Settlement will comply with WCAG.  The City will

10  pay the costs for the publication of the notice described in this Section 6.5.2.

11              6.5.3. Within ten (10) days after the District Court has issued the

12  Preliminary Approval Order, the City will cause a copy of the Notice of Settlement

13  to be provided to the organizations listed on Exhibit "C" to this Settlement

14  Agreement.  The City will pay the costs for the publication of the notice described

15  in this Section 6.5.3.

16              6.5.4. Within twenty (20) days after the District Court has

17  issued the Preliminary Approval Order, each firm making up Class Counsel will

18  post on its website a copy of the Notice of Settlement in English, Spanish, and

19  Khmer, and in an accessible electronic format that can be recognized and read by

20  software commonly used by individuals with visual impairments to read web pages.

21  In addition, the websites will provide information about how Settlement Class

22  Members may obtain a copy of the Settlement Agreement in Spanish or Khmer.

23  All pages or content on the websites that are part of the process for accessing the

24  information in the notice will comply with WCAG.  Class Counsel will pay the

25  reasonable costs for the publication of the Notice of Settlement described in this

26  Section 6.5.4, but Class Counsel will be entitled to seek reimbursement for all such

27  reasonably incurred costs as part of their motion for reasonable attorney's fees,

28  expenses and costs incurred in this action.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

- 13 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

670919.3

014

1    6.6.    **Media Communications Regarding Settlement**

2         The Parties agree that after the full execution of this Settlement Agreement,

3    they and their respective counsel may issue a press release and discuss the

4    settlement set forth in this Settlement Agreement with the media but will use their

5    best efforts to refrain from disparaging the other Parties or their counsel in

6    connection with the settlement and the matters set forth in this Settlement

7    Agreement.

8    6.7.    **Fairness Hearing**

9         The Parties will jointly request that the District Court schedule and conduct a

10   Fairness Hearing to decide whether Final Approval of the Settlement Agreement

11   will be granted.  At the Fairness Hearing, the Parties will jointly move for entry of

12   the Judgment (substantially in the form as attached to this Settlement Agreement as

13   Exhibit "D"), providing for:  (i) Final Approval of this Settlement Agreement as

14   fair, adequate, and reasonable; (ii) final certification of the Settlement Class for

15   settlement purposes only; (iii) final approval of the form and method of notice of

16   the Judgment to the Settlement Class; (iv) final approval of the appointment of

17   Class Counsel for the Settlement Class; (v) final approval of the appointment of

18   Plaintiffs as class representatives of the Settlement Class; (vi) final approval of the

19   release of the City and its Related Entities from the Released Claims; (vii) final

20   approval of an order that the Settlement Class members will be enjoined and barred

21   from asserting any of the Released Claims against the City and its Related Entities

22   following entry of Judgment and up to and including the completion of the Term;

23   (viii) the Parties and all members of the Settlement Class to be bound by the

24   Judgment; and (ix) the District Court's retention of jurisdiction over the Parties to

25   enforce the terms of the Judgment throughout the Term of this Settlement

26   Agreement.

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

670919.3

015

- 14 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

### 6.8. <u>Objections to the Settlement Agreement</u>

Members of the Settlement Class will have an opportunity to object to the proposed Settlement Agreement but may not opt-out.  The Parties will request that the District Court order the following procedures for assertion of objections, if any, to the Settlement Agreement:

6.8.1. Any Settlement Class member may object to this Settlement Agreement by filing, within forty-five (45) days of the commencement of the issuance of the notice to the Settlement Class required under Section 6.5, written objections with the District Court, with a copy of such objections served concurrently on Class Counsel by messenger delivery; FedEx or other overnight carrier delivery or by First Class U.S. Mail delivery and/or appearing at the Court's Fairness Hearing and speaking to the Court.

6.8.2. With respect to any and all objections to this Settlement Agreement received by Class Counsel, Class Counsel will provide a copy of each objection to counsel of record for the City, by messenger delivery or electronic-mail delivery, within two (2) court days after receipt of such objection.

6.8.3. Responses by Class Counsel and/or the City to any timely-filed objections will be filed with the District Court no less than five (5) days before the Fairness Hearing, or as otherwise ordered by the Court.

### 6.9. <u>Additional Steps</u>

The Parties will take all procedural steps regarding the Fairness Hearing that may be requested by the District Court and will otherwise use their respective best efforts to consummate the settlement embodied in this Settlement Agreement, and to obtain approval of this Settlement Agreement, and entry of the Judgment.

### 6.10. <u>Final Approval</u>

6.10.1.   The Parties agree that, upon Final Approval the District Court will enter the Judgment under Rule 54(b) of the Federal Rules of Civil Procedure (substantially in the form attached to this Settlement Agreement as

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

670919.3

016

- 15 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

1  Exhibit "D") dismissing the *Ochoa* Action with prejudice, subject to the District
2  Court retaining jurisdiction to resolve any Dispute regarding compliance with this
3  Settlement Agreement that cannot be resolved through the process described in
4  Section 21, and to rule on Plaintiffs' motion for reasonable attorneys' fees and
5  costs, as described in Sections 21 and 22.

6          6.10.2.    The City will not assert, after the Judgment has
7  become Final, that the District Court lacks jurisdiction to enforce the terms of this
8  Settlement Agreement, or raise any jurisdictional defense to any enforcement
9  proceedings permitted under the terms of this Settlement Agreement.

10          6.10.3.    Should the District Court deny the Parties' request to
11  enter the Judgment, should this Settlement Agreement not receive Final Approval
12  by the District Court for any reason, or should this Settlement Agreement not
13  become Final for any reason in accordance with its terms:  (i) this Settlement
14  Agreement will be null and void and of no force and effect; (ii) nothing in this
15  Settlement Agreement will be deemed to prejudice the position of any of the Parties
16  with respect to any matter; and (iii) neither the existence of this Settlement
17  Agreement, nor its contents, will be admissible in evidence, referred to for any
18  purpose in any litigation or proceeding, or be deemed an admission by the City of
19  any fault, wrongdoing or liability.

20          7.      **Effect of Final Approval Order**

21      This Settlement Agreement, upon Final Approval, will be binding upon the
22  City, Plaintiffs, and all Settlement Class members and, to the extent specifically set
23  forth in this Settlement Agreement, upon Class Counsel; will extinguish all
24  Released Claims and will constitute the final and complete resolution of all issues
25  addressed herein.  This Settlement Agreement is the complete and final disposition
26  and settlement of any and all Released Claims, as detailed in Section 9.

27
28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES
670919.3
017

- 16 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

8.      **Enforcement of Settlement Agreement**

The District Court will have continuing jurisdiction over this Settlement Agreement throughout the Term.  Nothing in this Section will bar either Party from moving for an extension of the Term to enforce any obligations herein.

9.      **Release of Claims**

9.1.    **Release of Claims through the Term**

Effective upon the entry of Judgment by the District Court, Plaintiffs and the Settlement Class members (and their respective heirs, assigns, successors, executors, administrators, agents and representatives) ("Releasing Parties"), in consideration of the relief set forth herein, the sufficiency of which is expressly acknowledged, do fully and finally release, acquit and discharge the City and its Related Entities from any and all claims, rights, demands, charges, complaints, actions, suits, and causes of action, whether known or unknown, suspected or unsuspected, accrued or unaccrued, for injunctive or declaratory relief, relating to allegations that persons with Mobility Disabilities are being denied access to, excluded from participation in, or denied the benefits of the City's Pedestrian Facilities, during the period starting on June 4, 2014 through the Term (the "Released Claims").  This release of claims will not apply to claims based on accessibility barriers in the City's Pedestrian Facilities that remain in existence after the expiration of the Term.

The Released Claims will not include any claims to enforce the terms of this Settlement Agreement.

The release of claims will apply and be binding upon the members of the Settlement Class throughout the Term.

9.2.    **Known or Unknown Claims**

With respect to the release of claims as provided in Section 9.1, Releasing Parties agree that the Settlement Agreement will cover all claims for injunctive or declaratory relief of every nature and kind whatsoever, known, or unknown,

SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

670919.3

018

1    suspected or unsuspected, past or present, which they may have against the City

2    relating to the accessibility of the City's Pedestrian Facilities for persons with

3    Mobility Disabilities, despite the fact that California Civil Code Section 1542

4    ("Section 1542") may provide otherwise.  Releasing Parties expressly waive any

5    right or benefit available to them in any capacity regarding claims for injunctive or

6    declaratory relief concerning the accessibility of the Pedestrian Facilities, except for

7    those that remain in existence after the expiration of the Term, under the provisions

8    of Section 1542, which provides:   "A general release does not extend to the claims

9    which the creditor does not know or suspect to exist in his or her favor at the time

10   of executing the release, which if known by him or her must have materially

11   affected his or her settlement with the debtor."  Releasing Parties knowingly accept

12   and assume the risk of the facts being different, agree that this Settlement

13   Agreement will be and remain in all aspects effective and not subject to termination

14   or rescission by virtue of any such difference in facts, understand and acknowledge

15   the significance and consequences of such specific waiver of Section 1542 of the

16   California Civil Code (and any other similar statute or rule of any state or

17   jurisdiction), and expressly assume full responsibility for any losses or

18   consequences that may be incurred by making such waiver.

19        The foregoing release is freely and voluntarily given by Releasing Parties,

20   who, in agreeing to the foregoing release, did not rely on any inducements,

21   promises or representations by the City or its representatives, other than as

22   expressly set forth in this Settlement Agreement.

23        10.    **Covenant Not to Sue**

24        10.1.  The Parties agree that during the Term, the Releasing Parties

25   will refrain and forbear from commencing, instituting, or prosecuting any lawsuit,

26   action, or other proceeding, in law, equity or otherwise, against the City and its

27   Related Entities arising out of or relating to any of the Released Claims, including,

28   without limitation, an action claiming that this Settlement Agreement was

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

019

670919.3

- 18 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

1    fraudulently induced.  The Parties agree that monetary damages alone are
2    inadequate to compensate for injury caused or threatened by a breach of this
3    covenant not to sue, and that preliminary and permanent injunctive relief restraining
4    and prohibiting the prosecution of any action or proceeding brought or instituted in
5    violation hereof is a necessary and appropriate remedy in the event of such a breach
6    or threatened breach.  An action or proceeding brought to enforce (but not to
7    rescind or reform) the terms of this Settlement Agreement is excepted from this
8    covenant not to sue.  An action seeking damages for violation of the Accessibility
9    Laws is also excepted from this covenant not to sue.

10           10.2.  With respect to any of the Parties' obligations set forth in this
11   Settlement Agreement, the Parties agree that no claim, action or proceeding
12   alleging any violation of or failure to perform any provision of this Settlement
13   Agreement will be filed, commenced or maintained unless and until the Parties
14   have complied with all of the procedures set forth in Section 21 below.

15        11.    **Self-Evaluation of the City's Pedestrian Facilities**

16               11.1.  **Accessibility Consultant**

17        The City will contract with a third-party accessibility consultant to prepare an
18   updated Self-Evaluation of its Pedestrian Facilities in order to identify Pedestrian
19   Facilities that do not comply with the Accessibility Standards in effect at the time
20   the Pedestrian Facility was installed, with the exception of those Pedestrian
21   Facilities installed prior to 1991, which will be assessed using the 1991
22   Accessibility Standards.

23               11.2.  **Applicable Accessibility Standards**

24        To the extent any of the regulations making up the Accessibility Standards
25   have conflicting technical specifications for the Pedestrian Facilities, the Self-
26   Evaluation will measure compliance with the technical specification that provides
27   the greatest degree of access to individuals with Mobility Disabilities.

28

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

020

670919.3

- 19 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

1               11.3.  **Scope of Self-Evaluation**

2            The Self-Evaluation will be limited to those locations over which the City

3 has control and will not include locations within the jurisdiction of Los Angeles

4 County or within the jurisdiction of the California State Department of

5 Transportation.  The Self-Evaluation will include identification of barriers to

6 accessibility in Pedestrian Facilities where the barriers are caused by another public

7 entity, including, but not limited, to utility poles and electric company boxes,

8 however, the Parties agree that the City has no obligation under this Settlement

9 Agreement to repair or correct such access barriers caused by another public entity.

10              11.4.  **Survey Tool**

11            The survey tool to be used by the third-party accessibility consultant will be

12 developed jointly by the Parties.  Any Dispute regarding the content of the survey

13 tool will be resolved by a mutually agreed upon access expert/specialist.

14              11.5.  **Curb Ramps**

15            As part of the updated Self-Evaluation, the City will identify all existing curb

16 ramps within the City's control and within the City's public right of way that are

17 not in compliance with the Accessibility Standards in effect on the date the curb

18 ramp was installed.  To the extent the City identifies curb ramps built prior to 1991,

19 those curb ramps will be assessed using the 1991 Accessibility Standards.  The City

20 will also identify those locations within the City's control and within the City's

21 public right of way where a curb ramp is required under the current Accessibility

22 Standards, but where one does not currently exist.  Those curb ramps that were not

23 in compliance with existing Accessibility Standards as of the date they were

24 installed, are not in compliance with the 1991 Accessibility Standards if built prior

25 to 1991, or are required by the Accessibility Standards but missing, will be

26 scheduled for installation, repair or replacement as a part of the Updated Transition

27 Plan (as described in Section 12).

28

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

021

670919.3

- 20 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

1    11.6.  **Sidewalks, Crosswalks, Pedestrian Walkways**

2    The City will identify the sidewalks, crosswalks, and other pedestrian

3    walkways within the City's control and within the City's public right of way that

4    are not in compliance with the Accessibility Standards that were in effect on the

5    date the sidewalk, crosswalk, or other pedestrian walkways was installed. To the

6    extent the City identifies sidewalks, crosswalks, and other pedestrian walkways

7    built prior to 1991, those sidewalks, crosswalks, and other pedestrian walkways will

8    be assessed using the 1991 Accessibility Standards.   Those sidewalks, crosswalks,

9    and other pedestrian walkways that were not in compliance with existing

10   Accessibility Standards as of the date they were installed, or are not in compliance

11   with the 1991 Accessibility Standards if built prior to 1991, will be scheduled for

12   repair or replacement as part of the Updated Transition Plan (as described in

13   Section 12).

14   11.7.  **Completion Date of Self-Evaluation**

15   The City will complete the updated Self-Evaluation within two years of Final

16   Approval.  If the dispute resolution process with respect to the development of the

17   survey tool discussed in Section 11.4 significantly delays the commencement of the

18   updated Self-Evaluation, the two year completion deadline for the updated Self-

19   Evaluation and Updated Transition Plan (as described in Section 12) will be

20   extended a reasonable period, consistent with the length of the delay.

21   12.   **Updated Transition Plan**

22   12.1.  **Accessibility Consultant**

23   The City will contract with a third-party accessibility consultant to prepare an

24   Updated Transition Plan to address installation, repair or replacement of Pedestrian

25   Facilities that were identified in the updated Self-Evaluation as not in compliance

26   with the existing Accessibility Standards as of the date they were installed or not in

27   compliance with the 1991 Accessibility Standards if built prior to 1991.  The

28   Updated Transition Plan will identify a schedule and annual targets for the

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

670919.3

022

- 21 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

1    installation, repair or replacement of such Pedestrian Facilities to bring them into

2    compliance with the Accessibility Standards in effect at the time the work is

3    performed.

4              **12.2.**    **Prioritization for Installation, Repair or Replacement**

5          The Updated Transition Plan will include publicly available prioritization

6    guidelines for installation, repair or replacement of the Pedestrian Facilities in

7    accordance with the priorities outlined in 28 C.F.R. § 35.150(d)(2). The schedule

8    set forth in the Updated Transition Plan will also include priorities for the

9    installation, repair or replacement of such Pedestrian Facilities based upon input

10    from Plaintiffs, Class Counsel and the Settlement Class.

11              **12.3.**    **New Construction and Alterations**

12          The Updated Transition Plan will identify areas of planned new construction

13    and Alterations, that are known at the time the Updated Transition Plan is being

14    prepared, and which will trigger installation, repair and replacement of Pedestrian

15    Facilities in the one-year period following the preparation of the Updated Transition

16    Plan.

17              **12.4.**    **Public Hearings and Public Input**

18          The City will hold at least two (2) public hearings within one (1) year of the

19    completion of the updated Self-Evaluation and before preparation of the Updated

20    Transition Plan to seek input from community members and the City of Long

21    Beach Citizen's Advisory Commission on Disabilities ("CACOD") regarding

22    barrier removal priorities for the Updated Transition Plan. The City will also

23    receive input from Class Counsel regarding barrier removal priorities prior to the

24    preparation of the Updated Transition Plan.

25              **12.5.**    **Plaintiff and Class Counsel Input**

26          Before the Updated Transition Plan is finalized, Class Counsel and Plaintiffs

27    will review the Updated Transition Plan and provide the City with their input

28    within thirty (30) days of receipt. The City will give good faith consideration to all

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

670919.3

023

1 comments provided by Class Counsel and Plaintiffs before finalizing the Updated

2 Transition Plan.

### 12.6. **Completion Date of Updated Transition Plan**

4 The City will complete the Updated Transition Plan within two years of Final

5 Approval. In the event the preparation of the Updated Transition Plan is delayed

6 due to the process of obtaining input from community members, CACOD,

7 Plaintiffs, the Settlement Class, or Class Counsel, the City will have a reasonable

8 extension of the deadline to complete the Updated Transition Plan, consistent with

9 the length of the delay.

### 13. **Installation, Repair or Replacement of Pedestrian Facilities**

### 13.1. **Repair or Replacement During Evaluation Period**

12 During the Evaluation Period, the City will continue to repair or replace

13 Pedestrian Facilities that were not in compliance with existing Accessibility

14 Standards as of the date they were installed, or are not in compliance with the 1991

15 Accessibility Standards if built prior to 1991, including those Pedestrian Facilities

16 identified in the Prior Transition Plan or that were identified through the City's

17 Access Request Program.

### 13.2. **Installation of Curb Ramps During Evaluation Period**

19 Commencing on the date of Final Approval and continuing through the

20 Evaluation Period, the City will install not less than 1000 curb ramps that are

21 required by the Accessibility Standards but are missing. The curb ramps to be

22 installed during the Evaluation Period will be identified by Plaintiffs. In the event

23 Plaintiffs identify fewer than 1000 curb ramps for installation, the City will install

24 missing curb ramps that were identified in the Previous Transition Plan or through

25 the City's Access Request Program.

26

27

28

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

024

670919.3

- 23 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

13.3. **Remediation of Curb Ramps During First 20 Years of the Term**

Within twenty (20) years of Final Approval, the City will complete the installation, repair or replacement of curb ramps that were not in compliance with existing Accessibility Standards as of the date they were installed, are not in compliance with the 1991 Accessibility Standards if built prior to 1991, or are required by the Accessibility Standards but missing. The City's obligation under this Section 13.3 will be limited to the installation of 4,500 missing curb ramps, which includes any curb ramps installed during the Evaluation Period under Section 13.2, and the repair or replacement of 16,000 curb ramps that were not in compliance with the relevant Accessibility Standards at the time they were installed.

13.3.1. **Years 1-5**

In years 1 through 5 of the Term, the City will install all curb ramps that are required by the Accessibility Standards but are missing, subject to the limits stated in Section 13.3. Plaintiffs may provide the City with a list for prioritizing the order in which the missing curb ramps are installed. In addition, the City will begin repair or replacement of existing curb ramps that were not in compliance with existing Accessibility Standards as of the date they were installed or are not in compliance with the 1991 Accessibility Standards if built prior to 1991.

13.3.2. **Years 6-20**

In years 6 through 20 of the Term, the City will repair or replace all curb ramps that were not in compliance with existing Accessibility Standards as of the date they were installed or are not in compliance with the 1991 Accessibility Standards if built prior to 1991, subject to the limits stated in Section 13.3 and subject to a funding cap of $50,000,000 in costs to the City, and pursuant to the priorities, schedule and annual targets set in the Updated Transition Plan.

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

025

670919.3

- 24 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

### 13.3.3. <u>New Construction and Alterations</u>

The City can meet its obligations under Section 13.3 by installing, repairing or replacing a curb ramp in connection with new construction and Alteration of streets, road, and sidewalks pursuant to the provisions of Sections 16.1.1 and 16.2.1. Such construction will not be paid from the $50,000,000 funding cap described in Section 13.3.2.

### 13.4. <u>Remediation of Other Pedestrian Facilities During the Term</u>

Before the expiration of the Term, and pursuant to the priorities, schedule and annual targets set in the Updated Transition Plan, the City will install, repair or replace Pedestrian Facilities, not including curb ramps, that were not in compliance with existing Accessibility Standards as of the date they were installed or are not in compliance with the 1991 Accessibility Standards if built prior to 1991, subject to a funding cap of $125,000,000 in costs to the City. Any amounts that the City may expend on installation of a new sidewalk will not count towards the funding cap set forth in this Section 13.4. Any sidewalk installation, repair or replacement performed by third-party contractors as a part of private construction will not count towards the funding cap set forth in this Section 13.4. However, if the City repairs or replaces an existing sidewalk to bring it into compliance with the current Accessibility Standards, the amounts expended for that repair or replacement will count toward the funding cap set forth in this Section 13.4.

### 13.5. <u>Funding of Access Request Program During the Term</u>

Installation, repairs and replacement of Pedestrian Facilities made in response to reports made through the City's Access Request Program will be funded as follows:

(a)     In years 1-5 of the Term, the City will allocate $500,000 per year to respond to requests made through its Access Request Program;

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles
670919.3
026

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

(b)     In years 6-10 of the Term, the City will allocate $550,000 per year to respond to requests made through its Access Request Program;

(c)     Any unused monies from one year can be rolled over into the next year to meet that year's monetary allocation;

(d)     The City has sole and exclusive authority and discretion to determine how much money it will allocate to respond to requests made through its Access Request Program for the remainder of the Term.

13.6.   **Tree Removal**

Any trees that cause a particular Pedestrian Facility to be out of compliance with existing Accessibility Standards as of the date they were installed or with the 1991 Accessibility Standards if built prior to 1991, will be preserved to the extent feasible, and protected trees may only be removed in accordance with all applicable City and/or State codes, rules, and policies regarding trees and tree removal.

13.7.   **Inflation Factor**

The City will apply an inflation factor to the funding caps in Section 13.3 and Section 13.4.  The index to be used is the "Bureau of Labor Statistics, Consumer Price Index (the "CPI") – All Urban Consumers for the Los Angeles-Riverside-Orange County, CA area."  This factor will be applied at the beginning of the City's fiscal year (October 1), using the published year-over-year change for September of that year (*e.g.*, the CPI factor comparing the difference between September of one year to September of the following year).  The inflation factor applied will not exceed five percent in a given year, and it will never adjust the limits downward. The inflation factor will be first applied to the maximum allocations in year two of the Term and annually as described, through the remaining Term (*e.g.*, annual CPI index applied year 2 – year 30).

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES
027

670919.3

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

14.    **Maintenance of Pedestrian Facilities**

    14.1.  The City will continue to make reasonably diligent efforts to maintain the accessible features of its Pedestrian Facilities so that persons with Mobility Disabilities will be able to use such routes safely and independently.

    14.2.  Any monies spent on improving accessibility of the City's Pedestrian Facilities for persons with Mobility Disabilities as a part of the City's maintenance obligations in this Section 14 will count towards the funding caps set forth in Section 13.

15.    **ADA Coordinator**

    15.1.  Throughout the Term, the City will employ an ADA Coordinator who will oversee tasks relating to the development and implementation of the updated Self-Evaluation and Updated Transition Plan, the City's policies and procedures regarding the accessibility of the City's Pedestrian Facilities, and the City's efforts to maintain the accessible features of its Pedestrian Facilities.

    15.2.  The ADA Coordinator will coordinate between relevant City departments regarding installation, repairs, and replacements to Pedestrian Facilities to ensure the enforcement of consistent standards and policies for such improvements throughout the City.

    15.3.  The ADA Coordinator will maintain the City's Access Request Program for access-related repairs and improvements to the City's Pedestrian Facilities as described in Section 19, and the ADA Coordinator will track and maintain a record of all work performed and completed under the Updated Transition Plan.

    15.4.  The ADA Coordinator will also initiate, coordinate and direct the implementation of the policies and procedures described in Section 16.

16.    **City Policies and Procedures for Pedestrian Facilities**

   The City will ensure that all new construction, alterations, and repairs to Pedestrian Facilities comply with the Accessibility Standards.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

670919.3

028

1  ## 16.1. __Installation of Curb Ramps__

2  16.1.1.   The City will prepare and implement written policies

3  and procedures to ensure that the City, and any entities acting on the City's behalf,

4  install curb ramps which meet the Accessibility Standards in effect at the time the

5  work is performed whenever it newly constructs or alters City Pedestrian Facilities.

6  16.1.2.   The City will prepare and implement written policies

7  and procedures to ensure that compliant curb ramps are provided at all corners of

8  intersections whenever the City performs new construction or Alterations to City

9  streets or roads, or alleys with pathways intended for pedestrian use, on one or more

10  of the blocks that make up the intersection.  The City will provide copies of the

11  applicable Accessibility Standards to all entities, including private developers,

12  performing new construction or Alterations involving Pedestrian Facilities.

13  ## 16.2. __Third Parties__

14  16.2.1.   The City will ensure that its permitting process

15  requires that all third parties who perform construction, Alterations, and

16  development projects that include new construction or Alteration of Pedestrian

17  Facilities ensure that they meet the Accessibility Standards in effect at the time the

18  work is performed.

19  16.2.2.   The City will draft and implement written policies and

20  procedures which enforce the City's current code requirements ensuring access to

21  Pedestrian Facilities that are used by third parties, including but not limited to

22  barriers caused by signage, tables and chairs, and other items installed or erected by

23  third-parties.

24  16.2.3.   The City will accept reports made by individual

25  members of the public relating to accessibility barriers to the Pedestrian Facilities

26  that are caused by public utilities or other non-City public entities.  The City will

27  communicate with the public utility or non-City public entity on the individual's

28  behalf to request removal of the barrier.  The Parties agree that the City has no

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

670919.3

029

1  obligation to guarantee removal of the barrier and is not responsible for enforcing

2  compliance by the public utility or non-City public entity with the Accessibility

3  Laws or Accessibility Standards.

4        16.3.  **City's Standard Plans**

5        The City will ensure that the Standard Plans for accessible curb ramp design

6  and accessible sidewalk design comply with the Accessibility Standards in effect at

7  the time the work is performed.  The City will continue to make available a copy of

8  the Standard Plans on the City's website and provide copies to all entities, including

9  private developers, performing new construction or Alterations involving

10  Pedestrian Facilities.

11        16.4.  **Access During Construction and Temporary Events**

12        The City will prepare and implement written policies and procedures to

13  provide alternate, accessible Pedestrian Facilities through and around areas where

14  construction or other temporary conditions, including Temporary Events, prohibit

15  full access to City Pedestrian Facilities.  The City will work with the third-party

16  contractor or producer for the Temporary Event to identify temporary accessible

17  alternative routes for the pendency of the construction or Temporary Event and will

18  post descriptions of such routes on the City's website (currently located at

19  www.longbeach.gov), prior to the start of the Temporary Event.  The City will also

20  provide signage in compliance with the Accessibility Standards in effect at the time

21  of the construction or Temporary Event directing persons with Mobility Disabilities

22  to such accessible temporary routes.  The City will prepare and implement

23  procedures for enforcing its temporary construction policies, including monetary

24  and/or other penalties for violation of such policies.  The City will also provide all

25  entities that perform construction work or conduct Temporary Events with

26  guidelines and instructions for providing alternate accessible routes and related

27  signage.

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

670919.3

030

- 29 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

1       16.5.  The City will update its existing policies or draft and implement

2  new policies as set forth in this Section 16 by no later than September 1, 2017.

3       17.    **Training of City Personnel**

4       17.1.  The City's ADA Coordinator will develop and provide training

5  for existing staff in the City's Public Works Department, new hires, and other City

6  employees involved in ensuring the accessibility of the City's Pedestrian Facilities

7  to people with Mobility Disabilities.  The training will discuss applicable federal

8  and state requirements regarding the accessibility of pedestrian routes. The City

9  will include this training in its new hire orientation for employees involved in

10  ensuring the accessibility of the City's Pedestrian Facilities.

11       17.2.  The City will provide staff in the City's Public Works

12  Department with accessibility training, utilizing the materials developed or made

13  available pursuant to this Section 17, on at least an annual basis. This training will

14  be open to additional departments, including but not limited to: Human Resources;

15  Water Department; Long Beach Gas and Oil Department; Parks, Recreation and

16  Marine Department; and Harbor Department.

17       17.3.  The City will provide the administrative officers in charge of

18  each of the City's Departments with periodic training on accessibility of Pedestrian

19  Facilities to individuals with Mobility Disabilities.

20       17.4.  The City will provide training to applicable Departments when

21  there is a change in the law related to accessibility of Pedestrian Facilities to

22  individuals with Mobility Disabilities, as determined by the ADA Coordinator.

23       17.5.  The City may, at its option, utilize third-party vendors to

24  provide the training described in this Section 17 on its behalf.

25       18.    **Reporting of Progress Under Updated Transition Plan**

26       18.1.  Upon its completion, the City will post the Updated Transition

27  Plan on the City's website, currently located at www.longbeach.gov.

28

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

- 30 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

670919.3

031

18.2.   The ADA Coordinator, in coordination with the City's Public Works Department, will maintain a record of all work performed and completed under the Updated Transition Plan.

18.3.   On a quarterly basis throughout the Term (based upon the City's fiscal year (October 1 through September 30)), the City will post on its website a report related to the Access Request Program and a report of progress under the Updated Transition Plan.  On an annual basis throughout the Term (on or before September 30), the City will post on its website an end-of-year report.  The information to be contained in these three reports is contained in Exhibit "E."

19.   **Access Request Program**

19.1.   **Scope and Procedure**

The City will maintain a procedure for residents to request installation, repairs, and replacements to Pedestrian Facilities.  All requests will be recorded and tracked by the ADA Coordinator.  Any requests received by City personnel other than the ADA Coordinator will be forwarded to the ADA Coordinator.  All requests will be addressed on a first-come, first-served basis, however requests related to the correction or removal of dangerous conditions will be addressed first.

19.2.   **Submission of Requests**

Residents may submit requests to the Access Request Program in-person or via phone, email, letter, and/or online.  The City will provide request forms in electronic formats that are accessible to people with disabilities in accordance with WCAG.

19.3.   **Timing of Response to Access Request**

19.3.1.   The City will acknowledge receipt of the request and provide an estimated completion date for the request within thirty (30) days from the receipt of the request by the City.

19.3.2.   The City will complete all requests for installation, repair or replacement of Pedestrian Facilities that cost less than $10,000 within 180

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

670919.3

032

1   days of the request, provided that the completion of such projects will not exceed

2   the funding caps identified in Section 13.5.  Any requests that exceed the funding

3   caps identified in Section 13.5 and which are not completed within 180 days of the

4   request, will be completed as soon as practicable within the City's next fiscal year.

5   In no event will the City's funding caps identified in Section 13.5 be exceeded in

6   any fiscal year.

7               19.4.  **New Construction and Alterations**

8        The ADA Coordinator will coordinate personnel to ensure that planned new

9   construction and Alterations address existing requests reported through the Access

10   Request Program.

11         20.    **Monitoring of Progress Under the Updated Transition Plan**

12            20.1.  **Access to Information**

13        Plaintiffs and Class Counsel will have regular and consistent access to

14   information about the City's progress toward completion and compliance with the

15   Updated Transition Plan as set forth in Section 18.  Upon reasonable notice, the

16   City will provide Plaintiffs and Class Counsel with drawings and designs prepared

17   for or by the City related to installation, repair or replacement of Pedestrian

18   Facilities.

19            20.2.  **Inspections**

20              20.2.1.  **Quarterly Inspections in Year 1**

21        In the first year of the Term, Class Counsel may conduct quarterly

22   inspections of the City's compliance with the Settlement Agreement regarding

23   installation, repair and replacements to Pedestrian Facilities.

24              20.2.2.  **Semi-Annual Inspections in Years 2-5**

25        In years 2-5 of the Term, Class Counsel may conduct semi-annual

26   inspections of the City's compliance with the Settlement Agreement regarding

27   installation, repair and replacements to Pedestrian Facilities.

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

033

670919.3

- 32 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

1   20.2.3.   **Annual Inspections in Years 6-30**

2   In years 6-30 of the Term, Class Counsel may conduct annual inspections of

3   the City's compliance with the Settlement Agreement regarding installation, repair

4   and replacements to Pedestrian Facilities.

5   20.3.   **Notice of Non-Compliance**

6   To the extent Plaintiffs and/or Class Counsel believes that the City is not in

7   compliance with the Updated Transition Plan, they will advise the City and identify

8   how they believe the City's compliance is deficient.  The City and Class Counsel

9   will attempt to reach a resolution of any Dispute regarding the City's compliance

10  with the Updated Transition Plan.  In the event a resolution cannot be reached, the

11  City will retain the services of an outside consultant to review and assess the City's

12  compliance with the Updated Transition Plan.  To the extent a dispute arises as to

13  the outside consultant's assessment of the City's compliance with the Updated

14  Transition Plan, the Parties shall utilize the Dispute Resolution Procedure described

15  in Section 21 below.

16  20.4.   **Monitoring Fees and Expenses**

17  Any reasonable and necessary monitoring fees and expenses incurred by

18  Class Counsel shall be paid by the City.  Any such payments shall count against the

19  funding caps in Section 13.  Such monitoring fees and costs shall be capped at a

20  maximum of $100,000 per year for years 1-5 of the Term and $100,000 every two-

21  year period for years 6-30 of the Term.

22  20.5.   **Accounting of Monitoring Fees and Expenses**

23  Upon reasonable notice, Class Counsel will provide to the City an accounting

24  of all monitoring fees and expenses incurred under this Section 20.  Any Dispute as

25  to the reasonableness or necessity of such fees and expenses, will be resolved using

26  the Dispute Resolution Procedure outlined in Section 21 below.

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

670919.3

034

- 33 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

21.     **Dispute Resolution Procedure**

All disputes concerning the interpretation, implementation, monitoring, compliance and modification of the settlement agreement shall be resolved as follows:

21.1.   **Notification in Writing**

Disputes shall be brought in writing to the attention of the other Party as soon as practicable. Plaintiffs will notify the ADA coordinator of any Disputes with a copy to the City Attorney.

21.2.   **Meet and Confer**

Unless otherwise agreed to by the Parties, with respect to any particular Dispute concerning this Settlement Agreement, the Parties agree to meet and confer in good faith, within thirty (30) City business days after a Dispute is raised in writing by one of the Parties to discuss and try to resolve such Dispute.

21.3.   **Optional Mediation**

Failing a resolution by the Parties or upon a failure to timely meet and confer, any Party may request to submit the Dispute to an agreed-upon mediator or magistrate judge for resolution.  The Parties may then submit the Dispute to the selected mediator within thirty (30) days of meeting and conferring, who shall have the authority to assist the Parties in resolving the Dispute but who shall not have the authority to direct any Party to take or refrain from taking any action or to render decisions.  The mediation shall be held and completed within forty-five (45) calendar days of submission unless the assigned mediator's calendar will not allow for such scheduling.  In such an instance, the mediation shall be scheduled as soon as practicable.

21.4.   **Submission to Court**

Failing resolution of a Dispute through the procedures identified in sections 21.1 through 21.3, any Party may submit the issue to the District Court for decision.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

670919.3

035

- 34 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

21.5.   **Attorneys' Fees and Costs for Dispute Resolution**

The City will pay all reasonable and necessary attorneys' fees and costs incurred by Class Counsel as a result of informal negotiations under Section 21.2 and/or optional mediation under Section 21.3.  The amount of any fees and costs paid by the City will be part of the negotiation and resolution of the applicable Dispute.  Any amounts agreed upon by the Parties under Sections 21.2 and/or 21.3 will be limited to a maximum of $100,000 per year for years 1-5 following the completion of the Transition Plan and $120,000 per two-year period for years 6-30. Any reasonable and necessary attorneys' fees and costs incurred by Class Counsel and paid by the City as a result of the Dispute Resolution Procedure set forth under this Section 21 will count against the funding caps set forth in Section 13.

21.6.   **Attorneys' Fees and Costs for Dispute Resolution by Court**

If the Parties are unable to resolve a Dispute through the mediation process described in Section 21.3, any Party may make a motion to the District Court to enforce the Settlement Agreement in order to resolve the Dispute.  In the event that a Dispute is submitted to the District Court for decision pursuant to Section 21.4, and the Plaintiffs prevail, the District Court may, in its discretion, award all reasonable and necessary attorneys' fees and costs incurred by Class Counsel in accordance with applicable law.

21.7.   **Accounting of Attorneys' Fees and Costs**

Upon reasonable notice, Class Counsel will provide to the City an accounting of all attorneys' fees and costs incurred under this Section 21.  Any Dispute as to the reasonableness or necessity of such fees and costs, will be resolved using the Dispute Resolution Procedure in this Section 21.

22.   **Attorneys' Fees and Costs through Final Approval**

With respect to attorneys' fees and costs that Plaintiffs incurred from the inception of this matter to Final Approval (excluding those fees and costs arising as a result of Monitoring and Inspections under Section 20 or the Dispute Resolution

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 35 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

670919.3

036

1    Procedure in Section 21), and the payment thereof by the City, the Parties agree to

2    the following as a complete resolution of the issue.

3        22.1.  **Plaintiffs Are Prevailing Parties**

4            The City agrees that, conditioned upon the District Court granting Final

5    Approval of this Settlement Agreement, and the Judgment becoming Final,

6    Plaintiffs are prevailing parties for purposes of awarding reasonable attorneys' fees,

7    expenses, and costs.

8        22.2.  **Motion for Attorneys' Fees, Expenses, and Costs**

9            Plaintiffs will move or apply for approval by the District Court of the

10   reasonable attorneys' fees, expenses, and costs incurred by Class Counsel, pursuant

11   to Rule 23(h) of the Federal Rules of Civil Procedure.  The City reserves the right

12   to oppose the amount of reasonable attorneys' fees, expenses, and costs to be

13   awarded to Plaintiffs for work performed up to Final Approval.

14       22.3.  **Payment of Attorneys' Fees, Expenses, and Costs**

15           22.3.1.   The City will pay the amounts awarded by the District

16   Court after:  (i) the District Court has issued a written order granting Final

17   Approval of this Settlement Agreement; (ii) the Judgment has become Final; and

18   (iii) the District Court has approved an award of attorneys' fees, expenses, and costs

19   in response to Plaintiffs' motion or application for reasonable attorneys' fees,

20   expenses, and costs.  Both Parties reserve the right to appeal the District Court's

21   order on attorneys' fees, expenses, and costs.

22           22.3.2.   The City's payment of the amounts awarded by the

23   District Court for reasonable attorneys' fees, expenses, and costs is in full and

24   complete satisfaction of any and all claims for attorneys' fees, expenses, and costs

25   incurred by Plaintiffs and Class Counsel in the *Ochoa* Action, and Plaintiffs (on

26   behalf of themselves and the Settlement Class) and Class Counsel expressly waive

27   any right to recover any additional attorneys' fees, expenses, and costs of any kind

28   in connection with the *Ochoa* Action or this Settlement Agreement, except for

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

037

- 36 -

670919.3

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

1    attorneys' fees, expenses, and costs recoverable by Plaintiffs and Class Counsel as

2    expressly provided in this Agreement.

3         23.   **Enforcement**

4         Nothing in this Settlement Agreement, express or implied, is intended to or

5    will confer upon any person or entity not a Party to this Settlement Agreement any

6    right, benefit or remedy of any nature whatsoever under or by reason of this

7    Settlement Agreement.  Only the Class Representatives and Class Counsel may

8    seek to enforce the terms of this Settlement Agreement through the Dispute

9    Resolution Procedure provided for in Section 21, up to and including a motion

10   before the District Court.  To the extent individual members of the Settlement Class

11   have complaints regarding the City's compliance with the terms of this Settlement

12   Agreement, they must either bring them to the attention of Class Counsel directly,

13   or to the City, which will timely forward any such complaints to Class Counsel.

14   Class Counsel will have the sole and complete discretion to seek to enforce any

15   right, benefit or remedy under or by reason of this Settlement Agreement.

16        24.   **Entire Agreement**

17        This Settlement Agreement, and the documents attached to or expressly

18   referred to in this Settlement Agreement, constitute the final and complete written

19   expression and exclusive statement of all the agreements, conditions, promises,

20   representations, and covenants between the Parties with respect to the matters

21   referenced in this Settlement Agreement, and supersede all prior or

22   contemporaneous negotiations, promises, covenants, agreements or representations

23   of any nature whatsoever with respect to such matters.  Each of the Parties

24   understands and agrees that in the event of any subsequent litigation, controversy,

25   or dispute concerning any of the terms, conditions or provisions of this Settlement

26   Agreement, no Party will be permitted to offer or introduce any oral evidence

27   concerning any oral promises or oral agreements between the Parties relating to the

28   subject matters of this Settlement Agreement not included or referred to in this

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

038

670919.3

- 37 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

Settlement Agreement and not reflected in a writing.  This Settlement Agreement cannot be amended, modified or supplemented except by a written document signed by all of the Parties and approved by the District Court.

25.    **No Other Representations**

Each of the Parties represents, warrants and agrees that, in executing this Settlement Agreement, he, she or it has relied solely on the statements expressly set forth in this Settlement Agreement, and has placed no reliance whatsoever on any statement, representation, or promise of any other Party, or any other person or entity, not expressly set forth in this Settlement Agreement, or upon the failure of the other Party, or any other person or entity, to make any statement, representation or disclosure of anything whatsoever.  The Parties have included this provision:  (i) to preclude any claim that any Party was in any way fraudulently induced to execute this Settlement Agreement; and (ii) to preclude the introduction of parol evidence to vary, interpret, supplement, or contradict the terms of this Settlement Agreement.

26.    **Notice**

Any notice to be provided between or among the Parties in accordance with the terms of this Settlement Agreement will be given by electronic mail or First Class U.S. mail to the following addresses:

**To Plaintiffs:**
Linda M. Dardarian, Esq.
Goldstein, Borgen, Dardarian & Ho
300 Lakeside Drive, Suite 1000
Oakland, CA 94612

Meredith J. Weaver, Esq.
Disability Rights Advocates
2001 Center Street, 4th Floor
Berkeley, CA 94704

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

670919.3

039

- 38 -

SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

Legal Director
Disability Rights Legal Center
350 South Grand Avenue, Suite 1520
Los Angeles, CA 90071

**To the City:**
City Attorney
City of Long Beach
333 W. Ocean Blvd.
Long Beach, CA 90802

ADA Coordinator
City of Long Beach
333 W. Ocean Blvd.
Long Beach, CA 90802

**with a copy to:**
Cheryl Johnson-Hartwell
Burke, Williams & Sorensen LLP
444 South Flower Street, Suite 2400
Los Angeles, CA 90071-2953

Any Party may subsequently designate other individuals or entities for receipt of notice, provided that 10 days' written notice of such designation is provided to all other Parties in accordance with the terms of this Section 26.

27.    **Drafting of this Agreement**

The Parties acknowledge and agree that this Settlement Agreement will for all purposes be deemed jointly drafted and fully negotiated, and as a result, will not in any manner be interpreted in favor of, or as against, any particular Party by reason of being the drafting Party.  Any rule of law, including, without limitation, Section 1654 of the California Civil Code, or any other statute, legal decision or principle of common law that would require interpretation of any ambiguities or uncertainties in this Settlement Agreement against one of the Parties, will have no application and is hereby expressly waived.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES
670919.3
040

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

28. **Voluntary Agreement**

Each of the Parties represents, warrants and agrees that he, she or it has read this Settlement Agreement carefully, and knows and understands its contents, that this Settlement Agreement has been voluntarily entered into, that he, she or it has received independent legal advice from his, her or its attorneys with respect to the advisability of executing this Settlement Agreement, and that any and all investigation and analysis of the facts deemed necessary or desirable have been conducted prior to the execution of this Settlement Agreement.

29. **Binding Effect**

All of the terms and provisions of this Settlement Agreement will be binding upon and will inure to the benefit of the Parties, their heirs, successors and assigns.

30. **Authority**

Each of the Parties represents, warrants and agrees that he, she or it has the full right and authority to enter into this Settlement Agreement, and that the person executing this Settlement Agreement has the full right and authority to commit and bind such Party.

31. **Governing Law**

This Agreement will be governed by and construed in accordance with the laws of the State of California with respect to principles of common law contract interpretation.

32. **Paragraph Headings**

The headings, or lack thereof, preceding each of the paragraphs in this Settlement Agreement are for convenience only, and will not be considered in the construction or interpretation of this Settlement Agreement.

33. **Execution by Facsimile and in Counterparts**

This Settlement Agreement may be executed by the Parties in separate counterparts, and all such counterparts taken together will be deemed to constitute one and the same agreement.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

670919.3

041

- 40 -

SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

1    IN WITNESS WHEREOF, the Parties hereto have approved and executed

2    this Settlement Agreement on the dates set forth opposite their respective

3    signatures.

4

5    EXECUTED by the Parties as follows:

6

7    Dated: March 9, 2017          THE CITY OF LONG BEACH

8
                                   By: P West
9
                                   Title: City Manager
10

11

12   Dated: _____, 2017       By: _____

13                                 Hector Ochoa, individually and as
                                   representative of the Settlement Class
14

15   Dated: _____, 2017       By: _____

16                                 Cynde Soto, individually and as
                                   representative of the Settlement Class
17

18

19   Dated: _____, 2017       By: _____

20                                 Cathy Shimozono, individually and as
                                   representative of the Settlement Class
21

22   Dated: _____, 2017       By: _____

23                                 Ben Rockwell, individually and as
                                   representative of the Settlement Class
24

25
     Dated: _____, 2017       By: _____
26
                                   Sharon Parker, individually and as
27                                 representative of the Settlement Class

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES         6/0919.2

- 41 -                              SETTLEMENT AGREEMENT AND
                                    RELEASE OF CLAIMS

042

1   IN WITNESS WHEREOF, the Parties hereto have approved and executed

2   this Settlement Agreement on the dates set forth opposite their respective

3   signatures.

4

5   EXECUTED by the Parties as follows:

6

7   Dated: _____, 2017        THE CITY OF LONG BEACH

8                                        By: _____

9                                        Title: _____

10

11  Dated: MARCH 07, 2017        By: _____

12                                       Hector Ochoa, individually and as

13                                       representative of the Settlement Class

14

15  Dated: March 07, 2017        By: _____

16                                       Cynde Soto, individually and as

17                                       representative of the Settlement Class

18  Dated: _____, 2017        By: _____

19                                       Cathy Shimozono, individually and as

20                                       representative of the Settlement Class

21  Dated: March 07, 2017        By: _____

22                                       Ben Rockwell, individually and as

23                                       representative of the Settlement Class

24

25  Dated: _____, 2017        By: _____

26                                       Sharon Parker, individually and as

27                                       representative of the Settlement Class

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES
670919.1

- 41 -                SETTLEMENT AGREEMENT AND
                      RELEASE OF CLAIMS

043

1    IN WITNESS WHEREOF, the Parties hereto have approved and executed

2    this Settlement Agreement on the dates set forth opposite their respective

3    signatures.

4

5    EXECUTED by the Parties as follows:

6

7    Dated: _____, 2017        THE CITY OF LONG BEACH

8

9                                       By: _____

10                                      Title: _____

11

12   Dated: _____, 2017        By: _____

13                                      Hector Ochoa, individually and as
                                        representative of the Settlement Class
14

15   Dated: _____, 2017        By: _____

16                                      Cynde Soto, individually and as
                                        representative of the Settlement Class
17

18

19   Dated: ___3/8_____, 2017          By: _____

20                                      Cathy Shimozono, individually and as
                                        representative of the Settlement Class
21

22   Dated: _____, 2017        By: _____

23                                      Ben Rockwell, individually and as
                                        representative of the Settlement Class
24

25   Dated: _____, 2017        By: _____

26                                      Sharon Parker, individually and as
                                        representative of the Settlement Class
27

28

Burke, Williams &
Sorensen, LLP
ATTORNEYS AT LAW
Los Angeles

670919.2

- 41 -                                  SETTLEMENT AGREEMENT AND
                                        RELEASE OF CLAIMS

044

1    IN WITNESS WHEREOF, the Parties hereto have approved and executed

2    this Settlement Agreement on the dates set forth opposite their respective

3    signatures.

4

5    EXECUTED by the Parties as follows:

6

7    Dated: _____, 2017          THE CITY OF LONG BEACH

8

9                                         By: _____

                                          Title: _____
10

11

12   Dated: _____, 2017          By: _____

13                                        Hector Ochoa, individually and as
                                          representative of the Settlement Class
14

15   Dated: _____, 2017          By: _____

16                                        Cynde Soto, individually and as
                                          representative of the Settlement Class
17

18

19   Dated: _____, 2017          By: _____

20                                        Cathy Shimozono, individually and as
                                          representative of the Settlement Class
21

22   Dated: _____, 2017          By: _____

23                                        Ben Rockwell, individually and as
                                          representative of the Settlement Class
24

25   Dated: _March 10_, 2017              By: _~Smparker~_____

26                                        Sharon Parker, individually and as
                                          representative of the Settlement Class
27

28

BURKE, WILLIAMS &              - 41 -                    SETTLEMENT AGREEMENT AND
SORENSEN, LLP                                               RELEASE OF CLAIMS
ATTORNEYS AT LAW
LOS ANGELES      670919.2

045

1    **APPROVED AS TO FORM:**

2    Dated: _3|10_____, 2017     OFFICE OF THE CITY ATTORNEY

3

4                                 By: _____

5                                     Monte Machit, Assistant City Attorney

6                                     City of Long Beach

7    Dated: _March 10_____, 2017    BURKE WILLIAMS & SORENSON LLP

8

9                                   By: _____

10                                  Cheryl Johnson-Hartwell

11                                  Attorneys for Defendant
                                    City of Long Beach

12   Dated: _March 10_, 2017    GOLDSTEIN BORGEN DARDARIAN &

13                                  HO

14                                   By: _____

15                                  Linda M. Dardarian

16                                  Attorneys for Plaintiffs

17   Dated: _____, 2017    DISABILITY RIGHTS LEGAL CENTER

18

19                                  By: _____

20                                  Maronel Barajas

21                                  Attorneys for Plaintiffs

22   Dated: _____, 2017    DISABILITY RIGHTS ADVOCATES

23

24                                  By: _____

25                                  Meredith J. Weaver

26                                  Attorneys for Plaintiffs

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES
670919.2

- 42 -                   SETTLEMENT AGREEMENT AND
                              RELEASE OF CLAIMS

1  **APPROVED AS TO FORM:**

2

3  Dated: _____, 2017  BURKE WILLIAMS & SORENSON LLP

4

5           By: _____

6            Cheryl Johnson-Hartwell
          Attorneys for Defendant

7            City of Long Beach

8  Dated: _____, 2017  GOLDSTEIN BORGEN DARDARIAN &

9            HO

10           By: _____

11            Linda M. Dardarian
          Attorneys for Plaintiffs

12  Dated: 3-10-17 , 2017  DISABILITY RIGHTS LEGAL CENTER

13

14

15           By: _____
          Maronel Barajas

16            Attorneys for Plaintiffs

17  Dated: March 10 , 2017  DISABILITY RIGHTS ADVOCATES

18

19           By: _____

20            Meredith J. Weaver

21            Attorneys for Plaintiffs

22

23

24

25

26

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

670919.2

- 42 -    SETTLEMENT AGREEMENT AND
RELEASE OF CLAIMS

047