1  William Leiner, State Bar No. 255528
   william.leiner@disabilityrightsca.org
2  Elissa Gershon, State Bar No. 169741
   elissa.gershon@disabilityrightsca.org
3  DISABILITY RIGHTS CALIFORNIA
   1330 Broadway, Suite 500
4  Oakland, CA  94612
   Tel.: (510) 267-1200
5  Fax: (510) 267-1201

6  Sarah Somers, State Bar No.170118
   somers@healthlaw.org
7  Martha Jane Perkins, State Bar No. 104784
   perkins@healthlaw.org
8  NATIONAL HEALTH LAW PROGRAM
   200 N. Greensboro Street, Ste. D-13
9  Carrboro, NC  27510
   Tel.: (919) 968-6308
10 Fax: (919) 968-8855
   *Attorneys for Plaintiffs*

   *(Counsel continued on next page)*

XAVIER BECERRA
Attorney General of California
SUSAN M. CARSON
Supervising Deputy Attorney General
JENNIFER C. ADDAMS
Deputy Attorney General
CAROLYN O. TSAI
Deputy Attorney General
State Bar No. 239631
HAMSA M. MURTHY
Deputy Attorney General
State Bar No. 274745
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
Telephone: (415) 510-3539
Fax: (415) 703-5480
E-mail: Carolyn.Tsai@doj.ca.gov
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I. N., a minor, by and through her mother and *Guardian ad Litem*, Zarinah F.; J. B., a minor by and through his mother and *Guardian ad Litem*, Alisa B., <br><br> Plaintiffs, <br><br> v. <br><br> JENNIFER KENT, Director of the Department of Health Care Services; State of California DEPARTMENT OF HEALTH CARE SERVICES, <br><br> Defendants. | Case No.:  3:18-cv-3099-WHA <br><br> CLASS ACTION <br><br> **JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Date:    August 8, 2019 <br> Time:    11:00 a.m. <br> Place:   Courtroom 12, 19th Floor <br>        Hon. William Alsup <br><br> Action Filed:  May 24, 2018 |

Maria del Pilar Gonzalez Morales, State Bar No. 308550
pilar.gonzalez@disabilityrightsca.org
Maria Iriarte, State Bar No. 150704
maria.iriarte@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
1111 Sixth Avenue, Suite 200
San Diego, CA  92104
Tel.:  (619) 239-7861
Fax:  (619) 239-7906

Allen L. Lanstra, State Bar No. 251510
allen.lanstra@probonolaw.com
Rachael Schiffman, State Bar No. 292005
rachael.schiffman@probonolaw.com
300 S. Grand Avenue, Suite 3400
Los Angeles, CA 90071
Tel.: (213) 687-5000
Fax: (213) 687-5600

Robert D. Newman, State Bar No. 86534
rnewman@wclp.org
WESTERN CENTER ON LAW AND POVERTY
3701 Wilshire Boulevard, Suite 208
Los Angeles, CA  90010-2826
Tel.:  (213) 487-7211
Fax:  (213) 487-0242

Richard A. Schwartz, State Bar No. 267469
rschwartz@bgrfirm.com
BROWNE GEORGE ROSS LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
Tel:  (310) 274-7100
Fax: (310) 275-5697

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ..................................................................6

MEMORANDUM OF POINTS AND AUTHORITIES ......................................7

I.    INTRODUCTION ................................................................................7

II.   FACTUAL AND PROCEDURAL BACKGROUND ...........................8

    A.   The Parties and Nature of the Case .........................................8

    B.   Pre-Litigation Investigation and Procedural History.................9

    C.   Summary of the Settlement Agreement ...................................11

III.  NOTICE HAS BEEN PROVIDED TO THE CLASS ..........................14

IV.   NO CLASS MEMBERS FILED OBJECTIONS TO THE SETTLEMENT .........15

V.    LEGAL ANALYSIS ..........................................................................15

    A.   Legal Standards for Approval of Class Action Settlement .........15

    B.   The Settlement Agreement is Fair, Adequate, and Reasonable .................17

        1.   The Strength of Plaintiffs' Case and Risk and Expense of Continued Litigation.......................................................17

        2.   The Settlement is Fair, Adequate, and Reasonable in Light of the Discovery Completed and the Stage of the Proceedings............18

        3.   Experienced Class Counsel Endorse the Settlement .........................19

        4.   No Class Members Objected to the Settlement................................19

        5.   The Settlement is the Product of Arms-Length Negotiations ..........20

VI.   CONCLUSION.................................................................................21

*I. N. v. Kent;* Case No.: 3:18-cv-3099-WHA; Joint Motion for Final Approval of Class Action Settlement

# TABLE OF AUTHORITIES

**Cases**

*Chun-Hoon v. McKee Foods Corp.*,
  716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................................................. 18

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ............................................................................. 16

*Garner v. State Farm Mutual Automobile Ins. Co.*,
  2010 WL 1687832 (N.D. Cal 2010) .................................................................... 17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................... 16, 17, 20

*Harris v. Vector Mktg. Corp.*, No. C-08–5198 EMC,
  2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .................................................... 16

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................................. 20

*In re Oracle Sec. Litig.*,
  829 F. Supp.1176 (N.D. Cal. 1993) ..................................................................... 16

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ............................................................................. 15

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) ........................................... 16

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................ 17

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ............................................................................... 16

**Statutes**

29 U.S.C. § 794 *et seq.* ............................................................................................. 10

42 C.F.R. § 440.169(d) .............................................................................................. 9

42 C.F.R. § 440.80 ..................................................................................................... 8

42 U.S.C. § 12131 *et. seq.* ....................................................................................... 10

42 U.S.C. § 1396a(a)(10)(A) .................................................................................... 10

42 U.S.C. § 1396a(a)(43)(C) ................................................................................. 8, 10

42 U.S.C. § 1396a(a)(8) ............................................................................................ 10

42 U.S.C. § 1396d(a)(19) ........................................................................................... 9

42 U.S.C. § 1396d(a)(4)(B) ................................................................................... 10

42 U.S.C. § 1396d(a)(8) ......................................................................................... 8

42 U.S.C. § 1396d(r) .............................................................................................. 8

Cal. Welf. & Inst. Code § 14100.1 ..................................................................... 8, 9

Cal. Welf. & Inst. Code § 14154(d) ...................................................................... 9

**Rules**

Federal Rules of Civil Procedure, Rule 23(e) ................................................... 6, 11

Federal Rules of Civil Procedure, Rule 23(e)(2) ................................................. 16

*I. N. v. Kent;* Case No.: 3:18-cv-3099-WHA; Joint Motion for Final Approval of Class Action Settlement

## <u>NOTICE OF MOTION AND MOTION</u>

PLEASE TAKE NOTICE THAT on August 8, 2019, at 11:00 a.m., or as soon thereafter as the matter may be heard, Plaintiffs, I.N. and J.B. (hereafter "Plaintiffs") and Defendants California Department of Health Care Services and Jennifer Kent, (hereafter "Defendants"), will jointly move the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure for an Order granting final approval of the settlement agreement entered into by the parties.

This motion is made on the grounds that the settlement agreement is fair, reasonable, and adequate. This motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the supporting declarations of William Leiner ("Leiner Decl.") and Michele Vasquez ("Vasquez Decl.") , the exhibits attached thereto, and the complete files and records in this action.

DATED: July 25, 2019            By:     */s/ William Leiner*
                                                  William Leiner
                                                Attorneys for Plaintiffs

                                          By:     */s/ Carolyn O. Tsai*
                                                  Carolyn O. Tsai
                                                  Attorneys for Defendants

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3    The class-wide settlement agreement ("Settlement") presented for this Court's final

4 approval achieves substantial and lasting benefits to Medi-Cal beneficiaries under the age

5 of 21 who have been approved to receive Private Duty Nursing.  These benefits include:

6 (1) the designation of a Medi-Cal program or contracted entity with primary responsibility

7 to provide case management for approved Private Duty Nursing hours; (2) the ability for

8 class members to contact Defendants directly with questions or concerns about their

9 Private Duty Nursing or the case management services they are receiving; and (3)

10 oversight and monitoring by Class Counsel.  In addition, the Settlement provides for

11 continuing jurisdiction by the Court to oversee enforcement of the Settlement for nine

12 months after Defendants issue directives to Medi-Cal programs and contracted

13 organizations, and a dispute resolution process overseen by Magistrate Judge Corley.

14    On April 7, 2019, this Court certified the settlement class, preliminarily approved

15 the Settlement, and directed notice to the settlement class.  Order re (1) Motion for Class

16 Certification, and (2) Motion for Preliminary Approval of Class Settlement, ECF No. 107.

17 The Court found that "the proposed settlement appears to be the product of serious,

18 informed, non-collusive negotiations, has no obvious deficiencies, does not improperly

19 grant preferential treatment to class representatives or segments of the class, and falls

20 within the range of possible approval." *Id.*

21    Defendants distributed notice to approximately 4,127 class members in accordance

22 with the Court's order.  *To date, not a single member of the class has filed objections to*

23 *the Settlement.*  Moreover, the only comment filed with the Court was a letter from a class

24 member supporting the Settlement, including the amount allocated for attorneys' fees and

25 costs.  ECF No. 109.

26    In light of these facts and as discussed below, the parties respectfully request that

27 the Court find the Settlement to be fair, adequate, and reasonable, and grant final approval

28 of the Settlement.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Parties and Nature of the Case

Plaintiffs I.N., age 8, and J.B., age 6, are Medi-Cal beneficiaries who are eligible for Early and Periodic Screening, Diagnosis and Treatment ("EPSDT") services.  EPSDT provides comprehensive, preventative, diagnostic, and treatment services to Medi-Cal eligible children under the age of 21.  42 U.S.C. §§ 1396a(a)(43)(C), 1396d(r).  One such treatment available under EPSDT is Private Duty Nursing services – nursing services provided in a child's home by a registered nurse or licensed vocational nurse for beneficiaries who require more individual and continuous care than is available from a visiting nurse or routinely provided by the nursing staff of the hospital or skilled nursing facility.  42 U.S.C. § 1396d(a)(8); 42 C.F.R. § 440.80.

Both Plaintiffs have significant medical needs and require these services to live safely at home with their families.  Decl. of Zarinah F. ("Zarinah F. Decl.") in Supp. of Joint Motion for Preliminary Approval of Class Action Settlement ¶ 15, ECF No. 103-2; Decl. of Alisa B. ("Alisa B. Decl.") in Supp. of Joint Motion for Preliminary Approval of Class Action Settlement ¶ 15, ECF No. 103-3.  Plaintiffs allege that they have rarely received all of the nursing hours for which they are approved, have not received the assistance they need from Defendants to secure all of their approved hours, and that Defendants have placed the burden on them to navigate a complex system with little to no support to obtain the benefits their children are entitled to receive.  Zarinah F. Decl. ¶¶ 7, 15-19; Alisa B. Decl. ¶¶ 7, 14-17.

Defendant Department of Health Care Services (hereafter "DHCS") is the single state agency responsible for administering California's Medicaid program, called Medi-Cal.  Cal. Welf. & Inst. Code § 14100.1; *see also* First Amended Complaint ("FAC") ¶ 36. Medi-Cal does not itself provide health care services to beneficiaries, nor does Medi-Cal provide those beneficiaries with money to purchase health care services directly.  *Id*. at ¶ 37.  Rather, Medi-Cal is a vendor payment program, wherein DHCS, either directly through its fee-for-service delivery system, or through Medi-Cal managed care plan

8

organizations with which DHCS contracts, reimburses participating providers for the services they provide to Medi-Cal beneficiaries.  FAC at ¶ 37.  These services include Private Duty Nursing services, as well as case management services, which include developing plans of care, referral services, appointment scheduling, and monitoring and follow up.  42 U.S.C. § 1396d(a)(19); 42 C.F.R. § 440.169(d);  *Id*. at ¶¶ 40-45.

Defendant Jennifer Kent is DHCS' current Director and is responsible for directing DHCS' medical programs and contractual arrangements.  Cal. Welf. & Inst. Code § 14100.1; Cal. Welf. & Inst. Code § 14154(d); FAC at ¶ 36.  Her responsibilities in this role include ensuring DHCS' compliance with federal and state laws.  *Id*.

Defendants deny any liability under all causes of action, and they assert that their current policies, practices, and procedures meet all their obligations under applicable laws.

## B.      Pre-Litigation Investigation and Procedural History

In November 2016, after receiving complaints from families of children with disabilities about the lack of access to Private Duty Nursing, Disability Rights California ("DRC") distributed a flyer to community partners and other organizations.  Leiner Decl. ¶ 10.  These flyers included DRC's contact information and stated that DRC was interested in speaking with families of Medi-Cal beneficiaries under the age of 21 who were unable to access all of their approved Private Duty Nursing hours.  *Id*.

From December 2016 through the filing of this lawsuit, DRC attorneys interviewed more than 100 families who responded to the flyer or otherwise reached out to DRC about their concerns over lack of access to authorized Private Duty Nursing services.  *Id*. at ¶ 11.  Many families explained how they were unable to obtain all of their approved Private Duty Nursing hours and that there was no system in place to help them actually secure these services.  *Id*.  DRC staff also reviewed tens of thousands of pages of individual medical records to evaluate and assess complaints about families' inability to access their approved Private Duty Nursing hours.  *Id*.

In November 2016, DRC submitted a Public Records Act request to Defendants asking for information access to Private Duty Nursing.  *Id*. at ¶ 12.  In response, DHCS

9

1    produced, *inter alia*, a December 26, 2016 study, *Access to Private Duty Nursing*. *Id.* The

2    study identified a 29 percent statewide gap, involving nearly 3,600 Medi-Cal beneficiaries

3    under the age of 21, between the number of Private Duty Nursing hours that have been

4    approved and the number of hours that were actually rendered. Leiner Decl. at ¶ 12.

5    After extensive factual and legal investigation, and months of attempts at informal

6    resolution with DHCS, Plaintiffs brought this action on May 24, 2018, alleging that

7    Defendants failed to comply with the Medicaid Act, 42 U.S.C. §§ 1396a(a)(10)(A),

8    1396d(a)(4)(B), 1396a(a)(43)(C), and 1396a(a)(8), the Americans with Disabilities Act, 42

9    U.S.C. § 12131 *et. seq*. and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq*.

10    *Id*. at ¶¶ 13-14. Plaintiffs sought injunctive relief requiring Defendants to arrange for their

11    Private Duty Nursing services — either directly, or through referral to appropriate

12    agencies, organizations, or individuals. FAC ¶¶ 156-159. Plaintiffs did not seek damages.

13    *Id*. Plaintiffs further engaged in motion practice, overcoming Defendants' Motion to

14    Dismiss, and propounded and responded to significant discovery, including successfully

15    moving to compel discovery, resulting in the granting of two additional depositions by this

16    Court. Leiner Decl. ¶¶ 14-16.

17    Following several in-person settlement conferences with Magistrate Judge Corley

18    and exchanges of information and settlement proposals between August 2018 and

19    February 2019, the parties reached a final Settlement Agreement. *Id*. at ¶ 17. On April 7,

20    2019, this Court preliminarily approved the Settlement and directed notice to the

21    settlement class. ECF No. 107. The Court set a hearing for final approval of the

22    Settlement and for Plaintiffs' motion for attorneys' fees and costs on August 8, 2019. *Id*.

23    Plaintiffs filed their Motion on June 13, 2019. ECF No. 110. Defendants subsequently

24    filed a Statement of Non-Opposition to the aggregate amount of fees sought by plaintiffs.

25    ECF No. 111.

26    ///

27    ///

28    ///

10

C.     **Summary of the Settlement Agreement**

Through implementation of the following terms[1], the Settlement will provide relief to Plaintiffs and the settlement class, defined as "all Medi-Cal beneficiaries who are EPSDT eligible and for whom Medi-Cal Private Duty Nursing services have been approved." Settlement at ¶ 20.

1.     **Case Management to Secure Approved Private Duty Nursing**

Defendant DHCS will issue directives to managed care plans, county CCS programs, Medi-Cal providers, and Waiver Agencies, all of which provide services to Medi-Cal beneficiaries. Settlement at ¶¶ 21-23. The directives will require these Medi-Cal programs and contracted organizations to 1) provide case management services to class members to help class members secure all approved Private Duty Nursing hours; 2) revise their policies and procedures to implement the requirements under the Settlement; and 3) provide a notice to class members, separate and apart from the notice to class required by Rule 23(e), with information about the services available to them under the Settlement. *Id*.

2.     **Designation of Primary Case Management Agency**

The Settlement sets forth a framework to determine which of the Medi-Cal delivery systems (managed care plans, CCS, fee-for-service, or a Waiver Agency) will have the primary responsibility to arrange for class members' approved Private Duty Nursing. Settlement at ¶ 24. However, the Settlement also sets forth a "no wrong door" model. *Id*. at ¶ 25. As part of this model, regardless of which Medi-Cal program has primary responsibility for arranging for class members' approved Private Duty Nursing, the class member and/or the class member's personal representative may contact any Medi-Cal program or contracted organization that the class member is enrolled in to request case management for Private Duty Nursing services. *Id*. The delivery system must then provide the case management services to the class member as set forth in the

---

[1] A detailed summary of the Settlement is included in the Parties' Joint Motion for Preliminary Approval of Class Settlement. ECF. No. 102, pp. 8-13

1  Settlement and work collaboratively with the delivery system primarily responsible for

2  case management of approved Private Duty Nursing services for that class member.

3  Settlement at ¶ 25.

4          **3.     Obtaining Assistance from DHCS**

5          Defendant DHCS will maintain an email address that class members can contact

6  with questions or concerns about Private Duty Nursing services or the case management

7  services they are receiving from their designated service delivery system.  Settlement at

8  ¶ 26.  When contacted by a class member through this email address, DHCS has agreed to

9  1) forward the message to the appropriate delivery system program; and 2) respond to the

10 sender, acknowledging receipt of the message, providing the contact information for the

11 appropriate delivery system program, describing any action taken in response to the

12 inquiry, and notifying the sender that, if the issue is not resolved, that the sender should

13 notify DHCS.  *Id.*  If the sender notifies DHCS that the issue is not resolved, DHCS has

14 agreed to take other actions DHCS deems appropriate to assist the sender to resolve the

15 issue.  *Id.*

16         **4.     Monitoring by Class Counsel**

17         Class Counsel will have the opportunity to review drafts of the directives

18 Defendants will send to the Medi-Cal delivery systems responsible for arranging for class

19 members' Private Duty Nursing.  Settlement at ¶ 27.  Class Counsel will also receive

20 copies of all approved policies and procedures that result from these directives.  *Id.*  In

21 addition, Defendants have agreed to: 1) make publicly available the final results of DHCS

22 audits of managed care plans for compliance with the Settlement; 2) provide Class

23 Counsel with aggregate data regarding email communications that concern Private Duty

24 Nursing, including the number of inquiries received, the number of class members those

25 inquiries concern, an assessment of the nature of the inquiries by categories to be

26 developed by DHCS, and the delivery systems to which the inquiries are referred; and 3)

27 meet with Class Counsel at least three times during the term of the Settlement.  *Id.*

28

### 5.    Specific Relief for Named Plaintiffs

DHCS has agreed to expedite the assumption of responsibility by named Plaintiffs' respective delivery systems for case management of their approved Private Duty Nursing services.  Until the appropriate entity assumes responsibility, DHCS has designated a point of contact who will be responsible for working with Plaintiffs to resolve issues and questions related to the authorization and/or staffing of their Private Duty Nursing services.  Settlement at ¶ 27.

### 6.    Attorneys' Fees and Costs

Plaintiffs will seek Court approval for up to $435,000 in attorneys' fees and costs incurred in litigating this lawsuit.  Settlement at ¶ 28.  Defendants have agreed not to oppose this amount.  *Id.*  Plaintiffs filed their Motion for Reasonable Attorneys' Fees, Expenses, and Costs on June 13, 2019.  ECF No. 110.  Defendants subsequently filed a Statement of Non-Opposition to the aggregate amount of fees sought by plaintiffs.  ECF No. 111.

### 7.    Dismissal and Continued Jurisdiction

No later than 61 days from final approval of the Settlement, the parties will jointly ask the Court to dismiss this action and retain jurisdiction over this matter for the purpose of ensuring compliance with the terms of the Settlement.  Settlement at ¶ 36.  The Court's jurisdiction to ensure compliance with the Settlement will end nine months after Defendants send the directives to Medi-Cal Managed Care Plans, county CCS programs, fee-for-service providers, and Waiver Agencies as required by the Settlement.  *Id*. However, the parties may agree, or the Court may order, continued performance by Defendants beyond this date.  *Id.*

### 8.    Dispute Resolution Process

The parties have agreed to a three-step dispute resolution process.  First, the parties have agreed to contact the opposing party before filing any motion or lawsuit to enforce the Settlement.  Settlement at ¶ 37.  Second, if the parties cannot successfully resolve the issue, the parties will complete at least one conference with Magistrate Judge Corley, her

13

1  designee, or another mutually agreeable mediator.  Settlement at ¶ 37.  Third, if the

2  conference is not successful, then either party may file a motion to enforce the Settlement

3  after 30 days from the date of the conference.  *Id.*  However, if either party believes that

4  irreparable harm will occur to it by pursuing the process set forth above, the party must

5  contact Magistrate Judge Corley and confer with her or her designee before filing any

6  motion or lawsuit to enforce the terms of the Settlement.  *Id.*

7  ### 9.    Release of Claims

8  Upon final approval, class members will release all claims set forth in the

9  Complaint and First Amended Complaint.  Settlement at ¶¶ 30-32.  Individual named

10  plaintiffs I.N. and J.B. have agreed to fully release "any and all claims, damages,

11  liabilities, rights, and complaints as set forth or asserted in the Notice of Intent to Sue

12  dated November 9, 2017, the Complaint, and the First Amended Complaint, against

13  Defendants Jennifer Kent, in her official capacity as director of DHCS, and DHCS, up to

14  and including the execution date of this Settlement Agreement."  *Id.*

15  ## III.    NOTICE HAS BEEN PROVIDED TO THE CLASS

16  In accordance with the Settlement, the notice distribution plan in the Parties' Joint

17  Motion for Preliminary Approval of Class Action Settlement, and the Court's April 7,

18  2019 order directing notice to the class, DHCS identified 4,127 Medi-Cal beneficiaries

19  who are class members.  DHCS directed its Medi-Cal enrollment broker, MAXIMUS,

20  Inc., to translate as appropriate, copy, and send the court-approved class notices to the

21  identified class members by regular mail at their address of record with the Medi-Cal

22  program.  4,125 notices were mailed on May 30, 2019.  On or around July 18, 2019,

23  DHCS discovered that notices had not been mailed out to two class members because their

24  Medi-Cal records contained a code that blocked the processing and mailing of the class

25  notice to those class members.  However, MAXIMUS sent out copies of the court-

26  approved class notices to those two class members on July 23, 2019, by regular mail, to

27  their addresses of record with the Medi-Cal program.  Vasquez Decl. ¶¶ 3-5.

28  On July 23, 2019, a representative from MAXIMUS also informed DHCS that 191

14

1    of the class notices that were mailed to class members at their address of record with the

2    Medi-Cal program were returned to MAXIMUS as undeliverable.  DHCS has confirmed

3    with MAXIMUS that the 191 returned notices were sent to those class members at their

4    address of record with the Medi-Cal program.  Vasquez Decl. ¶ 6.

5        In addition to the mailings, Class Counsel DRC established a website to provide

6    class members with information about the case, the full text of the Settlement, the class

7    notice, Plaintiffs' motion for reasonable attorneys' fees, expenses, and costs, and other

8    case-related documents.  Leiner Decl. ¶ 26.

9    **IV.    NO CLASS MEMBERS FILED OBJECTIONS TO THE SETTLEMENT**

10       The deadline to file objections was July 11, 2019.  ECF No. 107.  To date, no class

11   member has filed an objection to the Settlement with the Court.  The only formal comment

12   filed with the Court was from a class member *in support* of the Settlement, including the

13   amount allocated for attorneys' fees and costs.  ECF No. 109.

14       Class Counsel DRC also established a dedicated phone line for class member

15   inquiries regarding the lawsuit or Settlement.  Leiner Decl. ¶ 27.  This phone number was

16   included on the class notice.  *Id*.  Between June 3, 2019 and June 17, 2019, DRC received

17   inquiries from twenty-two class members in response to the class notice.  *Id*. at ¶ 28.  The

18   vast majority of these calls were not related to the substance of the Settlement.  *Id*.  Rather,

19   class members called with questions about the class notice, the nature of the lawsuit, and

20   to report problems with accessing approved nursing hours.  *Id*. at ¶ 29.  One class member

21   acknowledged that the enhanced case management will help, but believed that the

22   Settlement did not go far enough because it did not include provisions related to the rates

23   that nurses are paid.  *Id*.  Another class member expressed optimism that the Settlement

24   would improve services for her son.  *Id*.

25   **V.    LEGAL ANALYSIS**

26       **A.    Legal Standards for Approval of Class Action Settlement**

27       The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of

28   class actions.  *In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008); *Class*

15

1  *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Courts must give "proper

2  deference to the private consensual decision of the parties."  *Hanlon v. Chrysler Corp.*,

3  150 F.3d 1011, 1027 (9th Cir. 1998).  "[S]ettlement [is] the preferred means of dispute

4  resolution" and that "is especially true in complex class action litigation."  *Officers for*

5  *Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

6      The Court may approve a proposed class settlement "after a hearing and on finding

7  that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  "Although Rule 23

8  imposes strict procedural requirements on the approval of a class settlement, a district

9  court's only role in reviewing the substance of that settlement is to ensure that it is 'fair,

10  adequate, and free from collusion.'"  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir.

11  2012) (citation omitted).  In reviewing proposed class-action settlement agreements, there

12  is an initial presumption of fairness when a proposed class settlement was negotiated at

13  arm's length by counsel for the class.  *Harris v. Vector Mktg. Corp.*, No. C-08–5198 EMC,

14  2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).

15      A district court considers several factors in determining whether a class action

16  settlement is "fair, reasonable, and adequate."  *Hanlon*, 150 F.3d at 1026 (citation

17  omitted).  The factors include: "[1] the strength of the plaintiffs' case; [2] the risk,

18  expense, complexity, and likely duration of further litigation; [3] the risk of maintaining

19  class action status throughout the trial; [4] the amount offered in settlement; [5] the extent

20  of discovery completed and the stage of the proceedings; [6] the experience and views of

21  counsel; [7] the presence of a governmental participant; and [8] the reaction of the class

22  members to the proposed settlement."  *Id.*; *see also In re Oracle Sec. Litig.*, 829 F.

23  Supp.1176, 1179 (N.D. Cal. 1993).

24      The "relative degree of importance to be attached to any particular factor will

25  depend upon and be dictated by the nature of the claim(s) advanced, the type of relief

26  sought, and the unique facts and circumstances presented by each individual case."

27  *Officers for Justice*, 688 F.2d at 625.  "Under certain circumstances, one factor alone may

28

16

1   prove determinative in finding sufficient grounds for Court approval."  *Garner v. State*

2   *Farm Mutual Automobile Ins. Co.*, 2010 WL 1687832 at *7 (N.D. Cal 2010).

3       **B.**    **The Settlement Agreement is Fair, Adequate, and Reasonable**

4       In this case, the settlement should receive final approval because it was achieved

5   after extensive arm's length negotiations, and the *Hanlon* factors demonstrate its fairness.[2]

6   As set forth below, an analysis of these factors establishes that the proposed settlement is

7   fair, adequate, and reasonable, and should be approved by the Court.

8
9           **1.**    **The Strength of Plaintiffs' Case and Risk and Expense of Continued Litigation**

10      When analyzing the fairness of a settlement, "[t]he Court shall consider the vagaries

11  of litigation and compare the significance of immediate recovery by way of the

12  compromise to the mere possibility of relief in the future, after protracted and expensive

13  litigation."  *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D.

14  Cal. 2004).  This factor weighs heavily in favor of approving the settlement.

15      Here, the Settlement provides substantial and lasting benefits to Medi-Cal

16  beneficiaries under the age of 21 who require Private Duty Nursing to live safely at home

17  with their families.  One such benefit is the designation of a Medi-Cal program or

18  contracted entity as having primary responsibility to provide case management in order to

19  secure class members' approved Private Duty Nursing services.  Settlement at ¶¶ 21-23.  A

20  second benefit is the oversight and monitoring of the Medi-Cal program or contracted

21  organization by Defendants and Class Counsel to ensure compliance with the Settlement.

22  *Id*. at ¶ 27.  A third benefit is the ability for class members to contact Defendants directly

23  with questions or concerns about their Private Duty Nursing or the case management

24  services they are receiving.  *Id*. at ¶ 26.  In addition, the Settlement provides for continuing

25  jurisdiction by the Court to oversee enforcement of the Settlement for nine months after

26

27  [2] While the presence of a governmental participant is a factor under *Hanlon*, this factor does not apply to the case at bar. No federal agency participated in this lawsuit.  While

28  DHCS and its Director did participate in the case, the participation was as defendants herein.

1    Defendants issue directives to Medi-Cal programs and contracted organizations requiring

2    them to provide case management services to arrange for all approved Private Duty

3    Nursing services, and a dispute resolution process overseen by Magistrate Judge Corley.

4    Settlement at ¶¶ 36-37.

5        Although Plaintiffs maintain that they have a strong case, Defendants have

6    vigorously defended this action, and Plaintiffs acknowledge the risk that they may not

7    prevail on a contested motion for class certification, on all issues at trial, or otherwise

8    obtain the scope of relief obtained through the Settlement.  *Id*. at ¶¶ 14, 25.  Moreover, had

9    the parties not settled, substantial time, effort, and resources would be expended by all

10   parties in litigating class certification and preparing for and conducting the trial.  *Id*. at ¶

11   25.  Lastly, Plaintiffs cannot deny the importance of the speed of relief and certainty

12   provided for by the Settlement, and continued litigation would unquestionably delay the

13   significant class relief obtained as a result of the Settlement.  *Id*.

14
15              **2.      The Settlement is Fair, Adequate, and Reasonable in Light of the
                          Discovery Completed and the Stage of the Proceedings**

16       Class Counsel had a strong grasp of the merits of their case before reaching

17   agreement on the Settlement.  When Class Counsel, as in this case, "possess a sufficient

18   understanding of the issues involved and the strengths and weaknesses of the case," this

19   factor weighs in favor of settlement approval.  *See Chun-Hoon v. McKee Foods Corp*., 716

20   F. Supp. 2d 848, 852 (N.D. Cal. 2010).

21       As set forth in Section II.B, *supra*, the Settlement negotiated by the parties was

22   preceded by a multi-year investigation and adversarial litigation that involved discovery

23   and motion practice, including: Plaintiffs' successful defense of Defendants' Motion to

24   Dismiss, initiation and completion of important and time-sensitive discovery in

25   preparation for class certification, including production and review of more than 15,000

26   pages of documents, propounding and responding to dozens of discovery requests, a

27   successful effort to compel discovery resulting in the granting of two additional

28   depositions, four in-person settlement conferences with Magistrate Judge Corley, and

1  independent research for the purposes of litigation and settlement.  As a result of these

2  actions, Class Counsel has been able to form an accurate assessment of the relative

3  strength of the claims and defenses.  This factor therefore supports approval of the

4  Settlement.

5  ### 3.    Experienced Class Counsel Endorse the Settlement

6      Class Counsel in this case, William Leiner and Elissa Gershon from DRC, Sarah

7  Somers and Jane Perkins from the National Health Law Program, Robert Newman from

8  the Western Center on Law and Poverty, and Richard Schwartz of Brown George Ross

9  LLP, brings extensive experience with class action litigation, settlement, and disability

10  rights law.  Leiner Decl. ¶¶ 3-9; Declaration of Robert Newman ("Newman Decl.") In

11  Support of Joint Motion for Preliminary Approval of Class Action Settlement ¶¶ 2-12,

12  ECF No. 102-5; Declaration of Sarah Somers ("Somers Decl.") In Support of Joint Motion

13  for Preliminary Approval of Class Action Settlement ¶¶ 2-12, ECF No. 102-4; Declaration

14  of Richard Schwartz ("Schwartz Decl.") In Support of Joint Motion for Preliminary

15  Approval of Class Action Settlement ¶¶ 2-12, ECF No. 102-6.  Class Counsel have

16  extensive experience in Medicaid and ADA class action litigation (as well as many other

17  types of class action lawsuits).  *Id*.  Likewise, Class Counsel have considerable collective

18  expertise in monitoring and enforcing complex post-judgment remedial policies and

19  procedures concerning the rights of Medicaid beneficiaries.  *Id*.

20      Class Counsel brought this experience to bear on developing strategy, assessing the

21  viability of Plaintiffs' claims and pursuit of a class action, and negotiating and drafting the

22  Settlement in this case.  Class Counsel further believe the proposed settlement is fair,

23  adequate, and reasonable, confers significant advantages to the class, and is in the best

24  interest of the class.  Leiner Decl. ¶¶ 20, 25; Newman Decl. ¶ 15; Somers Decl. ¶ 15;

25  Schwartz Decl. ¶ 7.

26  ### 4.    No Class Members Objected to the Settlement

27      Despite class notice reaching approximately 3,930 class members, no class member

28  has filed an objection to the Settlement with the Court.  One class member filed a letter in

1  support of the Settlement, including the amount allocated for attorneys' fees and costs.

2  ECF No. 109.  "[T]he absence of a large number of objections to a proposed class action

3  settlement raises a strong presumption that the terms of a proposed class settlement action

4  are favorable to the class members."  *In re Omnivision Techs*., *Inc.,* 559 F. Supp. 2d 1036,

5  1043 (N.D. Cal. 2008) (quotation omitted).

6        Although one class member contacted Class Counsel DRC to express concerns that

7  the Settlement did not go far enough because it did not include provisions related to the

8  rates that nurses are paid, no formal objection was ever filed.  Leiner Decl. ¶ 29.  Even if it

9  were, the suggestion by one class member that the settlement does not go far enough is not

10 a basis for rejecting it. "Settlement is the offspring of compromise; the question we

11 address is not whether the final product could be prettier, smarter or snazzier, but whether

12 it is fair, adequate and free from collusion."  *Hanlon*, 150 F.3d at 1027.  Moreover, the

13 class release in the Settlement only releases claims actually asserted in this action.

14 Settlement at ¶ 30.  No rate claims were ever asserted in the Complaint and First Amended

15 Complaint, so the class release has no preclusive effect on potential rate claims in the

16 future.

17        **5.      The Settlement is the Product of Arms-Length Negotiations**

18        The Settlement negotiated by the parties was the result of arm's length negotiations

19 by experienced counsel on both sides, each with a comprehensive understanding of the

20 strengths and weaknesses of each party's respective claims and defenses.  Leiner Decl.

21 ¶¶ 17-20, 25.  The Settlement was preceded by a multi-year investigation and adversarial

22 litigation that involved discovery and motion practice.  *Id*. at ¶¶ 10-20.  The parties

23 engaged in settlement efforts before the lawsuit was filed, and settlement efforts continued

24 after the filing of the lawsuit where the parties participated in settlement conferences

25 before the Honorable Jacqueline Corley, United States Magistrate Judge, on November 2,

26 2018, November 30, 2018, December 21, 2018, January 22, 2019, February 20, 2019 and

27 February 27, 2019.  *Id*. at ¶ 17.  During that time, the parties exchanged additional

28 information used to further evaluate settlement offers, including Defendants' contracts

1   with managed care plans, policies and procedures related to the provision of case

2   management services, policy directives issued by Defendants to agencies that provide

3   services to class members, and information about the provider enrollment process.  Leiner

4   Decl. ¶ 20.  Accounting for this information, the parties made multiple revisions to the

5   settlement agreements, and concluded that the Settlement executed on February 28, 2019

6   will provide effective relief to the class while efficiently and expeditiously resolving

7   disputed issues.  *Id*.  Lastly, attorneys' fees and costs were resolved with the assistance of

8   Judge Corley only after the parties finalized class relief.  *Id*. at ¶ 19.  There is no evidence

9   of collusion; this Settlement is fair.

10  **VI.    CONCLUSION**

11          The proposed settlement will benefit thousands of children who have been

12  approved for Medi-Cal funded Private Duty Nursing services to obtain the services they

13  need.  Given the relief achieved, the risks and costs involved in further litigation, and the

14  absence of class member objections, the negotiated settlement represents a fundamentally

15  "fair, reasonable and adequate" resolution of the disputed issues.  The parties therefore

16  request that the Court approve the Settlement.

17  DATED:  July 25, 2019              By:  ___*/s/  William Leiner*___
                                                William Leiner
18                                              Attorneys for Plaintiffs

19
                                           By:  ___*/s/  Carolyn O. Tsai*___
20                                              Carolyn O. Tsai
                                                Attorneys for Defendants
21

22
                        **FILER'S ATTESTATION**
23
            I hereby attest, pursuant to Local Rule 5-1(i)(3), that concurrence in the filing of
24
    this document has been obtained from each of its signatories.
25

26  DATED:  July 25, 2019              By:  ___*/s/  William Leiner*___
                                                William Leiner
27                                              Attorneys for Plaintiffs

28

*I. N. v. Kent;* Case No.: 3:18-cv-3099-WHA; Joint Motion for Final Approval of Class Action Settlement